UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

JAENON LIGON, et al.,

            Plaintiffs,

    v.

CITY OF NEW YORK, et al.,

          Defendants.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/21/12

**OPINION AND ORDER**

12 Civ. 2274 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       This putative class action challenges the New York City Police Department's implementation of Operation Clean Halls, a program allowing police officers to patrol inside and around thousands of private residential apartment buildings throughout New York City. Plaintiffs allege that they and their minor children have been unlawfully stopped, questioned, frisked, and/or arrested in or around their homes or their family members' homes.

       Plaintiffs have informed defendants and the Court of their intention to move for a preliminary injunction to prevent police officers from "stopping people outside of Clean Halls buildings because of their proximity to a Clean Halls building (whether by virtue of their having exited, trying to enter, or simply being

1

near the building)."[1]  Defendants believe that "the Court should use its equitable

powers to deny plaintiffs' application" summarily, prior to the holding of an

evidentiary hearing.[2]  Because plaintiffs allege an ongoing and egregious violation

of their constitutional rights, I decline to deny them the opportunity to seek a

preliminary remedy.

       Preliminary injunctions, a traditional tool of courts sitting in equity,

are governed by Federal Rule of Civil Procedure 65.  The Second Circuit has

explained that "[w]hen seeking a preliminary injunction that will affect

government action taken in the public interest pursuant to a statutory or regulatory

scheme, the moving party must show: (1) it will suffer irreparable harm absent the

injunction and (2) a likelihood of success on the merits."[3]

       Plaintiffs' Complaint alleges that

---

[1]    8/16/12 Letter to Court from Christopher Dunn, plaintiffs' counsel, at 1 ("Dunn Letter").

[2]    8/14/12 Letter to Court from Mark Zuckerman, defendants' counsel, at 1 ("Zuckerman Letter").

[3]    *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999) (quotation marks omitted).  In other instances, injunctions may be granted if the movant shows "a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party."  *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 923 (2d Cir. 1997).  The parties have not yet addressed whether Operation Clean Halls is conducted "pursuant to a statutory or regulatory scheme."

[f]or residents of Clean Halls Buildings and their visitors, merely exiting a Clean Halls Building frequently leads to being stopped, searched, and interrogated by NYPD officers on public sidewalks and in exterior courtyards. These stops typically involve full searches and questioning as to the person's reason for having been inside the building, and frequently result in arrest or the issuance of a summons if the person cannot affirmatively justify his presence to the police officer's satisfaction. . . .

Residents of some Clean Halls Buildings are stopped, questioned, and searched by NYPD officers on a regular basis – sometimes multiple times a week.  For many young men of color in particular, being searched and seized by NYPD officers in and around their homes has become normalized and is simply a routine part of their lives. . . .

[The NYPD] has ignored the problems of suspicionless stops, searches, citations, and arrests in and around Clean Halls Buildings. . . .

The NYPD's abusive practices of stopping, questioning, searching, citing, and arresting residents of Clean Halls Buildings and their visitors without adequate cause violate the United States and New York Constitutions, the Fair Housing Act, and New York common law.[4]

These are grave allegations.  Plaintiffs believe that they are at risk of repeatedly being stopped in the absence of reasonable suspicion and being arrested in the absence of probable cause; that is, they are at risk of suffering a violation of their Fourth Amendment right to be free from unreasonable search and seizure. The Supreme Court has explained that this "inestimable right of  personal security

---

[4]      Complaint ¶¶ 3, 6, 7, 10.

3

belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs."[5]  The violation of a constitutional right, particularly on an ongoing basis, constitutes irreparable harm for the purpose of a preliminary injunction.[6]

To establish their right to a preliminary injunction, plaintiffs intend to rely on the testimony of individuals who claim they have been unlawfully stopped and the testimony and findings of Jeffrey Fagan, a criminologist with expertise in statistics.[7]  According to plaintiffs' representations, Fagan's testimony will show that, taking the NYPD's stop and frisk records at face value, there have been hundreds of unlawful stops on suspicion of no crime other than "trespass" made

---

[5]    *Terry v. Ohio*, 392 U.S. 1, 9 (1968).  *Accord Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891) ("No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.").

[6]    *See Johnson v. Miles*, 355 Fed. App'x 444, 446 (2d Cir. 2009) ("an alleged violation of a constitutional right 'triggers a finding of irreparable harm'") (quoting *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996)).  *See also Hardy v. Fischer*, 701 F. Supp. 2d 614, 619 (S.D.N.Y. 2010) (ongoing violations cause "quintessential" irreparable harm).

[7]    *See Floyd v. City of New York*, --- F. Supp. 2d ----, 2012 WL 1344514 (S.D.N.Y. Apr. 16, 2012) (evaluating Fagan's qualifications and methodology in a related lawsuit under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993)).

directly outside of Operation Clean Halls buildings in the Bronx.[8]

      In response to plaintiffs' allegations, the City makes three arguments: *First*, because the allegedly unlawful stops at issue in this case are also the subject of the related – and broader – litigation in *Floyd v. City of New York*,[9] and because any plaintiffs in this case who were stopped unlawfully are members of the class in *Floyd*, a preliminary injunction hearing in this case would create "a risk of additional inconsistent adjudications when [*Floyd*] is decided on the merits."[10] *Second*, plaintiffs' desired injunction would do nothing more than instruct police officers to follow the law, which the City argues is improper under Federal Rule of Civil Procedure 65(d). *Finally*, a focus on the Bronx to the exclusion of other boroughs "could lead to a vastly different outcome later when the whole City is analyzed."[11]  None of these arguments convince me that plaintiffs' motion for a preliminary injunction should be denied without the opportunity to present evidence.

      The City's primary concern is that "the stops that plaintiffs are

---

[8]     *See* 8/9/12 Dunn Letter to the Court at 2-3.

[9]     No. 08 Civ. 1034 (S.D.N.Y.).

[10]     Zuckerman Letter at 2.

[11]     *Id.* at 1.

challenging are indeed a subset of [the stops] in *Floyd*," that a preliminary

injunction constitutes "an 'end-run' around the *Floyd* class certification appeal

which remains to be decided," and that the Court should deny or defer plaintiffs'

application because it would "prevent the inordinate amount of resources being

spent by both sides on this matter from being wasted."[12]

      Defendants cite to *Gillespie v. Crawford*, in which the Fifth Circuit

prohibited individual prisoner suits regarding conditions of confinement in Texas

prisons because other prisoners in a class action lawsuit had already obtained a

favorable judgment and the district court, with the help of a special master, was

overseeing compliance with its decrees.[13]  The court explained that "[t]o allow

individual suits would interfere with the orderly administration of the class action

and risk inconsistent adjudications."[14]  Judge John Elfvin of the Western District of

New York later relied on *Gillespie* to support his decision to dismiss the claims of

inmates at the Attica Correctional Facility who were confined to the special

housing unit because he determined that the claims were subsumed by a

---

[12]    8/7/12 Zuckerman Letter to the Court.

[13]    858 F.2d 1101 (5th Cir. 1988).

[14]    *Id*. at 1103.  The Fifth Circuit made clear that although they may not bring new suits, "prisoners may assert any equitable or declaratory claims they have, but they must do so by urging further action through the class representative and attorney, including contempt proceedings, or by intervention in the class action."  *Id.*

previously-filed lawsuit in which a class had been certified.[15]

Neither of these opinions is binding upon this Court and both are distinguishable. *Gillespie* stands for the proposition that if a district court judge and special master are overseeing a complex remedial decree, it does not make sense for other courts to simultaneously address similar issues through new proceedings. That situation is different from the present one in at least two important respects: *first*, there has been no finding of liability in the *Floyd* class action and there is therefore no decree with which a *Ligon* injunction could conflict. *Second*, both matters are assigned to me, which reduces the likelihood of inconsistent remedial orders in the future. If it becomes necessary, I could amend any injunction in *Ligon* as a result of determinations made by the jury in *Floyd*. The *Young* decision is not particularly useful to defendants here because the court dismissed the claims *after* a trial on the merits.[16]

---

[15]     *Young v. Kelly*, No. 88 Civ. 511, 1993 U.S. Dist. LEXIS 331 (W.D.N.Y. Jan. 15, 1993).

[16]     A complex settlement of the related class action was being negotiated in the months before and after Judge Elfvin's January 15, 1993 decision. *See Eng v. Coughlin*, No. 80 Civ. 385 (W.D.N.Y.). Docket entries beginning on June 18, 1992 depict the ongoing negotiations and piecemeal settlement agreement in that case. Settlement of the class members' prison library claim, which was the primary claim at issue in *Young*, was reached on December 21, 1992. Furthermore, unlike in these cases, the Attica class action was not before Judge Elfvin at the time. Finally, Judge Elfvin did permit the individual plaintiffs to present their case at trial; he dismissed the claims, after hearing the evidence, because he found that they were "couched entirely in blanket denouncements of the

I understand the City's concern that preparing for and holding a preliminary injunction hearing is costly and time-consuming.  But *Floyd* was filed four and a half years ago and the trial may be indefinitely postponed as a result of the City's decision to appeal this Court's class certification order.  Plaintiffs in *Ligon* allege persistent and ongoing violations of their most cherished constitutional rights; they claim that their daily lives are being severely disrupted by the NYPD's unconstitutional harassment.  If their allegations are true, plaintiffs should not be forced to endure years of continued indignity while this litigation is effectively stayed pending the outcome in *Floyd*.  And if the allegations are not proven, then the NYPD will be vindicated by a judicial system that permits the City – and all litigants – a full and fair hearing.

If defendants wish to minimize duplication, they may agree to preliminary injunctive relief with the plaintiffs in *Ligon*.  Alternatively, they are free to withdraw their appeal of the class certification decision and permit a trial in *Floyd* without delay.  But the City cannot have it both ways.  Having pursued an interlocutory appeal of the *Floyd* class certification decision, the City may not now prevent other litigants from even *requesting* that the Court use its equitable power

---

administrative policies without any showing of specific" harm to the individuals. *Young*, 1993 U.S. Dist. LEXIS 331, at *4.  Plaintiffs here claim that they have suffered individual harm.

to protect their fundamental rights.

The City's second concern is that "[t]he injunction that plaintiffs seek merely would have the City follow the law"[17] and that such an injunction is improper because under Federal Rule of Civil Procedure 65(d)(1), "an injunction must be more specific than a simple command that the defendant obey the law."[18] But the City misapprehends the purpose of Rule 65.  The Second Circuit has recently fully explained this issue:

> Rule 65(d) provides that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  We have interpreted Rule 65(d) as requiring that "an injunction . . . be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001) (internal quotation marks omitted).  The Supreme Court has explained: "[T]he specificity provisions of Rule 65(d) are no mere technical requirements.  The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.  Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (footnotes and citations omitted).  Rule 65(d) is satisfied "only if the enjoined party can ascertain from the four

---

[17]   Zuckerman Letter at 2.

[18]   *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001).

corners of the order precisely what acts are forbidden or required." *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008) (internal quotation marks omitted).[19]

The purpose of Rule 65(d) is to ensure specificity, not breadth.   The Rule requires that an injunction state specifically what defendants are and are not to do.  In any event, plaintiffs intend to seek changes in supervision, training, and monitoring that will go "far beyond a simple command to obey the law."[20]  If the evidence produced by plaintiffs warrants relief, the Court will be sure to craft an injunction that gives defendants "explicit notice of precisely what conduct is outlawed."[21]

Finally, the City argues that "the decision to focus solely on the Bronx may lead to inconsistent adjudications later."[22]  It is indeed possible that plaintiffs will present sufficient evidence to warrant a preliminary injunction in that borough and insufficient evidence regarding unconstitutional behavior in other parts of New York City to justify a broader injunction.  Tailoring injunctions narrowly is a classic judicial function:

---

[19]     *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143-44 (2d Cir. 2011).

[20]     Dunn Letter at 2.

[21]     *Schmidt*, 414 U.S. at 476.

[22]     Zuckerman Letter at 1.

Although a district court has "a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct," it is nonetheless "the essence of equity jurisdiction" that a court is only empowered "to grant relief no broader than necessary to cure the effects of the harm caused by the violation." *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 406 (2d Cir. 1997) (internal quotation marks omitted). We have instructed that injunctive relief should be "narrowly tailored to fit specific legal violations" *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 50 (2d Cir. 1996) (internal quotation marks omitted), and that the court must "mould each decree to the necessities of the particular case," *Forschner Grp.*, 124 F.3d at 406 (internal quotation marks omitted).[23]

I do not know precisely what evidence the parties will present at the preliminary injunction hearing. The evidence may warrant no injunction, a City-wide injunction, or a Bronx-specific injunction. In principle, however, there is nothing improper about the last option.

For the reasons stated above, defendants' request to summarily reject plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      August 21, 2012
            New York, New York

---

[23]      *Mickalis Pawn Shop*, 645 F.3d at 144.

**- Appearances -**

**For Plaintiffs**:

Alexis Karteron, Esq.
Christopher Dunn, Esq.
Daniel Mullkoff, Esq.
Taylor Pendergrass, Esq.
New York Civil Liberties Union
125 Broad Street, 17th floor
New York, NY 10004
(212) 607-3300

Foster Maer, Esq.
Roberto Concepcion, Esq.
Latinojustice Prldef
99 Hudson Street
New York, NY 10013
(212) 739-7507

J. McGregor Smyth, Jr., Esq.
Mariana Kovel, Esq.
The Bronx Defenders
860 Courtlandt Ave.
Bronx, NY 10451
(718) 838-7885

John Nathanson, Esq.
Mayer Grashin, Esq.
Paige Berges, Esq.
Tiana Peterson, Esq.
Shearman & Sterling LLP (NY)
599 Lexington Avenue
New York, NY 10022
(212) 848-8611

Juan Cartagena, Esq.
Community Service Society
105 E. 22nd St., 8th Floor
New York, NY 10010
(212) 254-8900

**For Defendants:**

Mark Zuckerman
Heidi Grossman
Joseph Marutollo
Richard Weingarten
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 442-8248