UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JAENEAN LIGON, et al.,

                                              Plaintiffs,

          -against-

CITY OF NEW YORK, et al.,

                                              Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE***

12 Civ. 2274 (SAS)(HBP)

## PRELIMINARY STATEMENT

Defendants hereby respectfully submit their Memorandum of Law in Opposition to plaintiffs' Motion *in limine*. For the reasons set forth herein, plaintiffs' application must be denied in its entirety.

## POINT I

### PLAINTIFFS' EXTRAORDINARY ARREST HISTORIES SHOULD BE ADMITTED

Certain of the plaintiffs' arrest histories are extraordinary:

\*The plaintiff Roshea Johnson admits to being arrested 21 times. (Declaration of Mark D. Zuckerman, Exhibit A, Roshea Johnson Declaration of July 12, 2012). His convictions include a conviction for robbery in the early 1990s for which he served 6 months in prison. (Ex. A, Johnson Declaration). He was also convicted of assault/robbery sometime in the mid-1990s for which he served approximately five years in prison. (Ex. A, Johnson Dep., 11:6-25; 12:1-15; 15:6-22). Mr. Johnson admitted during his deposition that he provided the police with the alias "Andre Jackson" in connection with this arrest, stating, "I was already in trouble and I was trying to get out of it, so I gave a fake name, hoping they didn't find out who I really was." (Ex. A,

Johnson Dep., 11:20-25; 12:2-4).[1] In July, 2003, Mr. Johnson was convicted for "evading the cigarette tax." (Ex. A, Johnson Declaration). Defendants contend that this conviction, within the last 10 years, is evidence of dishonesty and should be admitted for impeachment purposes. See F.R.E. 609(a)(2). Additionally, according to his deposition testimony, Mr. Johnson was also more recently convicted of possession of a controlled substance (cocaine) in 2011 and menacing in 2012. (Ex. A, Johnson Dep., 31:24-36:25).

*The plaintiff Letitia Ledan (Roshea Johnson's sister) has been arrested approximately 15 times. (Zuckerman Decl., Exhibit B, Letitia Ledan Declaration of June 15, 2012). In the early 1990s, Ms. Ledan pled guilty to "attempted sale of narcotics," which was crack cocaine. (Ex. B, Ledan Deposition, 138:10-142:23). Ms. Ledan was also convicted in the late 1990s for narcotics possession. (Ex. B, Ledan Deposition, 145:5-25). In 2000, Ms. Ledan pled guilty to loitering for prostitution, and used the alias "Gladys Johnson" in connection with this arrest.[2] (Ex. B, Ledan Deposition, 13:7-25; 151:13-15). In the early 2000s, Ms. Ledan pled guilty to criminal possession of a weapon. (Ex. B, Ledan Deposition, 129:6-7). On December 10, 2003, Ms. Ledan pled guilty to possession of burglar's tools (N.Y. Penal Law § 140.35)(Ex. B, Criminal Court Disposition), which defendants also contend by itself should be allowed as an attack on Ms. Ledan's credibility. See United States v. Estrada, 430 F.3d 606, 618 (2d Cir.

---

[1] Mr. Johnson's use of an alias is also directly relevant to the question of his credibility pursuant to Federal Rule of Evidence 608(b). In Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *9-10 (Oct. 25, 2007), Your Honor addressed this exact issue and permitted defendant City of New York to admit evidence of a plaintiff's use of an alias. See, e.g., Fletcher v. City of New York, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999)(admitting evidence of plaintiff's use of aliases under Rule 608(b)); Hernandez v. Kelly, 09 CV 1576 (TLM)(LB), 2011 U.S. Dist. LEXIS 57114 at *12 (E.D.N.Y. May 27, 2011)(admitting evidence of plaintiff's use of an alias since "[t]he use of an alias goes to credibility and truthfulness."); Jean-Laurent v. Wilkinson, 05 Civ. 0583 (VM), 2009 U.S. Dist. LEXIS 20472, at *8-9 (S.D.N.Y. Mar. 13, 2009).

[2] Ms. Ledan's use of an alias is also relevant to her credibility pursuant to Federal Rule of Evidence 608(b). See Williams, 2007 U.S. Dist. LEXIS 79151, at *9-10.

2005) (asserting that "Congress anticipated that crimes of stealth (e.g., smuggling, burglary), while not quite crimes of dishonesty or false statement, do reflect lack of credibility and should be admitted unless significantly prejudicial")(internal citations and quotations omitted). In 2007, Ms. Ledan was convicted of criminal facilitation in the 4th Degree, N.Y. Penal Law 115.00. (Ex. B, Criminal Court Disposition).

*Non-party witness Antoine Ledan has between "10-20" criminal convictions in the last 15 years. (Zuckerman Decl., Exhibit C, A. Ledan Deposition, 73:22-24). He admitted at this deposition to being convicted of petit larceny "three or four times." (Ex. C, A. Ledan Dep. 84:20-21). This testimony should be the basis for a legitimate attack on this plaintiff's credibility. United States v. Estrada, 430 F.3d 606, 614 (2d Cir. 2005); see also, See Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *4 (Oct. 25, 2007)("stealing is sufficiently related to veracity"). Mr. Ledan also admits to two convictions for "possession of a controlled substance." (Ex. C, A. Ledan Dep., 82:13-23; 83:7-9).

*The plaintiff Fernando Moronta has been arrested 10 times. (Exhibit D, Declaration of Fernando Moronta of July 10, 2012). This includes an admitted conviction in Florida in the mid 1990s for "burglary." (Ex. D, Moronta Dep., 13:14-25; 14:1). Mr. Moronta's burglary conviction should be admissible because of the particular importance of Mr. Moronta's credibility in this matter, as Mr. Moronta provides *no* other documentary or supporting evidence regarding his allegations apart from his own self-serving testimony, and defendants' success at the hearing "hinges on [Mr. Moronta's] credibility." See Jones v. City of New York, 98 Civ. 6493 (LBS), 2002 U.S. Dist. LEXIS 2052, *7-9 (S.D.N.Y. Feb. 11, 2002)(noting that "the Second Circuit ha[s] held that convictions for burglary or possession of stolen property is appropriate to evaluate a witness' truthfulness"). As such, Mr. Moronta's burglary conviction

should be admitted pursuant to Fed. R. Evid. 609(a)(1). See United States v. Hawley, 554 F.2d 50, 53 (2d Cir. 1977) (under Rule 609(a)(1), allowing evidence of burglary conviction). Additionally, Mr. Moronta was also convicted for the unlawful possession of marijuana in 2009. (Exhibit D, Criminal Court Disposition).

*The plaintiff Jovan Jefferson has been arrested 7 times between 2007 and the present. (Exhibit E, Jefferson Declaration of August 3, 2012). This includes a conviction for trespass from 2009 (Ex. E) and an adjournment in contemplation of dismissal arising out of a sale of marijuana arrest that occurred on April, 11, 2012. (Ex. E, Jefferson Dep., 9:25-10:1).

Aside from the individual convictions that defendants should be able to use for impeachment purposes under F.R.E. 609(a)(2) and/or for attacks on plaintiffs' credibility as set forth above, defendants also submit that they should be able to introduce the extraordinary arrest histories of the foregoing plaintiffs in accordance with F.R.E. 404(b)(2), to show the "motives" or biases of plaintiffs in connection with the testimony that they plan to give at the upcoming hearing. Similarly, their extraordinary arrest histories go to the credibility of their respective testimonies, which go to interactions with the police, out of which, of course, the arrests/convictions referenced herein also arise. With respect to each of these plaintiffs, they will be giving testimony as to incidents for which no police officers have been able to be identified based on the information plaintiffs have provided in this lawsuit. Plaintiffs will argue that these witnesses' testimonies are credible and wish to exclude their extensive arrest histories. However, without some (and defendants submit it will be short) presentations of these plaintiffs' extraordinary arrest histories, the Court will be left with just one side of the important issue of whether these witnesses are credible and should be believed, and whether they should be entitled to injunctive relief.

**POINT II**

**THE PHYSICAL ALTERCATIONS BETWEEN PLAINTIFF CHARLES BRADLEY AND LISA RAPPA ARE RELEVANT TO WHETHER MR. BRADLEY TRESPASSED ON MAY 3, 2011**

Plaintiffs intend to introduce evidence of an incident involving the plaintiff Charles Bradley at the upcoming preliminary injunction hearing arising out of his arrest of May 3, 2011 for trespassing that took place at and outside of 1527 Taylor Ave. in the Bronx in support of their application for injunctive relief. Defendants contend that there was reasonable suspicion for Mr. Bradley's stop and probable cause for his arrest. Defendants contend that acts of domestic violence to which Mr. Bradley admitted to at his deposition are relevant to the determination that the Court must make with respect to this incident.

The pertinent facts are as follows: Mr. Bradley contends that Lisa Rappa was his fiancé and that they lived together for a period of time in an apartment at 1527 Taylor Ave. On June 13, 2010, Mr. Bradley moved out of Ms. Rappa's apartment because they "were having differences." (Exhibit F, Bradley Dep., 35:6-7). Between June 13, 2010 and the date of the incident on May 3, 2011, Mr. Bradley was provided keys to Ms. Rappa's apartment "off and on." (Ex. F, 53: 2-8). Mr. Bradley testified that whether or not he had keys to Ms. Rappa's apartment "would depend on if [Mr. Bradley and Ms. Rappa] had an argument or not" (Ex. F, 53: 2-13) or whether they "disagreed upon something." (Ex. F, 61:25; 62:1-4). Mr. Bradley described some of these disagreements at his deposition, which included physical altercations. (Ex. F, 62:5-7). Prior to the May 3, 2011 incident, Mr. Bradley testified that he was involved in physical altercations with Ms. Rappa "once or twice." (Ex. F, 58:17-19). With respect to the first physical altercation with Ms. Rappa, Mr. Bradley testified that he "grabbed her . . . around her body, around her top." (Ex. F, 59:16-18). Mr. Bradley "put [his] hands on" Ms. Rappa during

this time period. (Ex. F, 57:7-8). With respect to the second physical altercation, Mr. Bradley can only remember striking Ms. Rappa on an unidentified date. (Ex. F, 59:19-25; 60:1-10).[3]

On May 3, 2011, Mr. Bradley contends that he went to visit Ms. Rappa when he was arrested for trespass. He did not have a key to Ms. Rappa's apartment on that day (Ex. F, 72: 25; 73: 1-2; 76: 22-23)[4] and testified that Ms. Rappa would take her keys back from Mr. Bradley when he and Ms. Rappa were arguing. (Ex. F, 72:11-21). The foregoing casts doubt on Mr. Bradley's version of events that he was an invited guest of Ms. Rappa that day.

On May 3, 2011, defendant Police Officer Miguel Santiago observed Mr. Bradley pacing "back and forth" outside of 1527 Taylor Avenue, a location in which Officer Santiago had previously observed criminal activity prior to May 3, 2011. (Ex. G, 39:4-9; 52:17-25; 53:1-6). Shortly thereafter, P.O. Santiago observed Mr. Bradley inside the building, alternating between the vestibule and lobby. (Ex. G, 52:17-25; 53:1-6). P.O. Santiago observed Mr. Bradley pace back and forth in the lobby for a couple of seconds. (Ex. G, 71:18-25; 72:2-7). P.O. Santiago continued to see Mr. Bradley "disappear[] for a second, c[o]me back, disappear[] for another second, [and] c[o]me back." (Ex. G, 70: 20-24). Mr. Bradley subsequently exited the building. (Ex. G, 70: 20-24). P.O. Santiago immediately approached Mr. Bradley and asked him what he was doing in the building. (Ex. G, 75: 21-25). P.O. Santiago testified that Mr. Bradley indicated that he was visiting his girlfriend in the building, but when asked what apartment or floor his girlfriend lived in, Mr. Bradley stated, "I don't know." (Ex. G, 75: 21-25; 2-7). P.O. Santiago testified that when Mr. Bradley was asked whether he knew *anyone* in the

---

[3] Mr. Bradley testified that Ms. Rappa subsequently filed a criminal complaint against him on September 20, 2011. (Ex. F, 37:7-11).

[4] Indeed, Mr. Bradley concedes that Ms. Rappa was not home at the time of his arrest on May 3, 2011, and further alleges that May 3, 2011 was the only time he can recall visiting her when she was not home. (Ex. F, 70:11-19).

building, Mr. Bradley responded, "I don't know. I'm sorry." (Ex. G, 75: 21-25; 2-7). Mr. Bradley also could not provide Mr. Santiago with any identification. (Ex. G, 75: 21-25; 2-7). Mr. Bradley was arrested for trespass.

The physical altercations with Mr. Rappa lend support to defendant Officer Santiago's testimony and casts doubt on Mr. Bradley's testimony that he was not trespassing on May 3, 2011 and was an invited guest of Ms. Rappa at the time of the incident.[5] Further, it would explain Mr. Bradley's reticence in identifying Ms. Rappa's apartment number on May 3, 2011 and whether plaintiff belonged in the building at the time of the incident when he talked to P.O. Santiago. (Ex. G, 81:7-11). In fact, during the interaction with P.O. Santiago, Mr. Bradley never explicitly mentioned Ms. Rappa's name to the officers and instead allegedly said he was visiting his "young lady." (Ex. F, 83:4-17). Indeed, Officer Santiago testified that Mr. Bradley never used the name Lisa Rappa during their interaction. (Ex. G, 245: 17-19). P.O. Santiago indicated that when he asked Mr. Bradley what apartment he was visiting, or what his girlfriend's name was, Mr. Bradley "said I don't know and that was it." (Ex. G, 145:2-7).

Simply, plaintiffs wish to preclude the evidence of Mr. Bradley's admitted acts of domestic violence that occurred before May 3, 2011 because they bear directly on Mr. Bradley's testimony that he was an invited guest of Ms. Rappa that day. It is evidence that Mr. Bradley was not an invited guest that day and casts doubt on his version of events. This evidence is made even more important by the fact that Ms. Rappa will not be testifying for plaintiffs in this matter and that all attempts by defendants to subpoena her for a deposition have failed. Thus, plaintiffs' motion *in limine* on this point must be denied.

---

[5] The notarized letter of Lisa Rappa that plaintiffs reference that supposedly supports Mr. Bradley's contention that he was an invited guest is blatant hearsay.

**POINT III**

**DEFENDANTS SHOULD BE ABLE TO ELICIT PLAINTIFF ABDULLAH TURNER'S KNOWLEDGE OF ANGINETTE TRINIDAD'S DRUG USE PRIOR TO HIS ARREST ON MARCH 26, 2011**

Given the issue of fact arising out of the March 26, 2011 arrest of plaintiff Abdullah Turner, defendants should be permitted to elicit testimony about the prior drug use of Ms. Anginette Trinidad that Mr. Turner[6] was aware of prior to the incident. Mr. Turner's knowledge of Ms. Turner's drug use bears on whether he knew that Ms. Trinidad went to buy marijuana at 2020 Davidson Avenue on March 26, 2011 and hence, whether he was trespassing at the time of his arrest while accompanying Ms. Trinidad.

According to the criminal court affidavit of defendant P.O. Ramdeen, Mr. Turner made the following statement to the police just prior to his arrest: "I'm not gonna lie officer. I went to drop off my friend who I think was gonna buy weed. I don't know anyone in the building. Just waiting for my friend." (Exhibit D to Mullkoff Declaration in support of plaintiffs' motion *in limine*).

At Mr. Turner's deposition, counsel for plaintiffs would not allow questioning into this area, and the dispute went to U.S. Magistrate Judge Henry B. Pitman for resolution. Magistrate Judge Pitman ruled that defendants were permitted to ask Mr. Turner "whether he was aware of Ms. Trinidad using marijuana within three years preceding the arrest," (Exhibit H, 88:16-25), upon the argument of defendants' counsel that Mr. Turner's knowledge of Ms. Trinidad's prior drug use was relevant to whether he made the foregoing statement to defendant P.O. Ramdeen, which he denies making. Mr. Turner subsequently testified that he was indeed

---

[6] Mr. Turner was convicted of criminal possession of a controlled substance on January 17, 2008, which defendants also submit is proper F.R.E. 404(b) evidence, as well as evidence as to Mr. Turner's credibility. (Exhibit H, Criminal Court Disposition).

aware of Ms. Trinidad using marijuana within three years of his March 26, 2011 arrest. (Ex. H, 92:24-25; 93:1). Mr. Turner testified that within three years of his March 26, 2011 arrest, he saw Ms. Trinidad using marijuana "no less than five times." (Ex. H, 93:10-12).

Ms. Trinidad was deposed in this matter and invoked her Fifth Amendment rights on multiple occasions in response to questions related to her use of marijuana. When Ms. Trinidad was asked whether, on March 26, 2011, she told Mr. Turner while en route to 2020 Davidson Avenue that she intended to purchase marijuana from her friend Carlos at the location, Ms. Trinidad invoked her Fifth Amendment rights and refused to answer the question.[7] (Ex. I, 38:18-23). Similarly, when asked if she was purchasing marijuana from Carlos's friend, her cousin Luis, at 2020 Davidson on March 26, 2011, Ms. Trinidad invoked her Fifth Amendment rights and refused to answer the question. (Ex. I, 26:14-18). When asked if she was in possession of marijuana on March 26, 2011, Ms. Trinidad again invoked her Fifth Amendment rights and refused to answer the question. (Ex. I, 50:14-19). Ms. Trinidad also invoked her Fifth Amendment rights in response to a question regarding *when* she obtained the marijuana that was found on her person on March 26, 2011. (Ex. I, 51:6-11). Further, Ms. Trinidad invoked her Fifth Amendment rights and refused to explain what happened after the police officers asked her whether she had any marijuana on her person on March 26, 2011. (Ex. I, 52:13-21).

Officer Kieron Ramdeen testified that Mr. Turner informed the officer "in sum and substance," that, "I'm not going to lie officer, I don't know anybody here I just came here with my friend. I think they came to buy weed. I don't know what floor she's on. I don't know what apartment she's in." (Ex. J, 39:11-25). Officer Ramdeen further indicated that Mr. Turner

---

[7] Ms. Trinidad also invoked her Fifth Amendment rights when asked if she *ever* obtained marijuana from Carlos. (Ex. I, 60: 2-6). Defendants also note that Ms. Trinidad did not know Carlos's last name. (Ex. I, 26:1-21).

stated that "[h]e just came to get some weed and then he's going to be on his way." (Ex. J, 39:11-25). Similarly, Officer Michael Pomerantz testified that Mr. Turner told the officers that "he was waiting for a friend [Ms. Trinidad] who was purchasing marijuana upstairs." (Deposition transcript of Michael Pomerantz, dated August 14, 2012, Zuckerman Decl., Exhibit K (hereinafter "Ex. K"), 28:5-9). Moreover, Officer Pomerantz testified that while speaking with Mr. Turner, Ms. Trinidad "came out from the building or down from the stairs" and "produced a small quantity of marijuana and a knife and she was arrested as well." (Ex. K, 35: 20-25; 36:2-4). Indeed, Ms. Trinidad was convicted in connection with her March 26, 2011 arrest of disorderly conduct. (Ex. I, 8:13-15).[8]

As was found by Magistrate Judge Pitman at Mr. Turner's deposition, this evidence bears on whether Mr. Turner was inside of 2020 Davidson Avenue with Ms. Trinidad in order to return a sweater, as they now contend, or whether they were there for Ms. Trinidad to purchase narcotics. His prior knowledge of Ms. Trinidad's drug use makes it more likely that it was the latter and that he made the foregoing incriminating statement to P.O. Ramdeen that he now denies. As such, the evidence should be admitted.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion *in limine* must be denied.

---

[8] Defendants also intend to introduce evidence regarding Ms. Trinidad's conviction for shoplifting (Ex. I, 8:13-15) for purposes of impeachment. See Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *4 (Oct. 25, 2007)(Admitting a witness's larceny convictions under F.R.E. 609 as "stealing is sufficiently related to veracity"); Hernandez v. Kelly, 09 CV 1576 (TLM)(LB), 2011 U.S. Dist. LEXIS 57114, at *6 (May 27, 2011)(Permitting the introduction of a witness's shoplifting conviction because "[a] conviction for shoplifting involves dishonesty").

Dated: New York, New York
       October 5, 2012

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                               City of New York
                              Attorney for Defendants
                              100 Church Street, Room 3-133b
                              New York, New York 10007
                              (212) 442-8248


                              By:           /s/
                                  Mark Zuckerman
                                  Heidi Grossman
                                  Joseph Marutollo
                                  Brenda Cooke
                                  Richard Weingarten
                                  Judson Vickers


cc:     Alexis Karteron, Esq. (By E.C.F.)
        *Attorney for Plaintiffs*
        NYCLU
        125 Broad St., 19th Floor
        New York, NY 10004