UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JAENEAN LIGON, et al.                              :
                                                   :
                                                   :
                    Plaintiffs,                    :
                                                   :          12 Civ. 2274 (SAS)(HBP)
        -versus-                                   :
                                                   :
CITY OF NEW YORK, et al.                           :
                                                   :
                                                   :
                    Defendants.                    :
-------------------------------------------------------------X


**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION</u>**

                            Alexis Karteron
                            Christopher Dunn
                            Taylor Pendergrass
                            Daniel Mullkoff
                            New York Civil Liberties Union Foundation
                            125 Broad Street, 19th Floor
                            New York, New York 10004

                            J. McGregor Smyth, Jr.
                            Mariana Kovel
                            The Bronx Defenders
                            860 Courtlandt Avenue
                            Bronx, New York 10451

                            Juan Cartagena
                            Foster Maer
                            Roberto Concepcion, Jr.
                            LatinoJustice PRLDEF
                            99 Hudson Street, 14th Floor
                            New York, New York 10013

                            John A. Nathanson
                            Tiana Peterson
                            Mayer Grashin
                            Sarah Lustbader
                            Shearman & Sterling LLP
                            599 Lexington Avenue
                            New York, New York 10022

Dated: November 9, 2012

## PRELIMINARY STATEMENT

In connection with their Motion for a Preliminary Injunction, the plaintiffs seek certification of a class comprised of individuals who have been or are at risk of being subjected to the New York City Police Department's practice of stopping individuals outside of buildings enrolled in Operation Clean Halls in the Bronx on suspicion of trespassing inside those buildings.[1]  This application rests on the extensive factual record adduced at the preliminary injunction hearing in this matter, and that evidence readily establishes that the plaintiffs meet Federal Rule of Civil Procedure 23's requirements for class certification.

As the Court is aware, the evidence revealed that the NYPD has a discrete program involving thousands of private buildings in the Bronx where police officers are given special authority to enter the premises and engage in law-enforcement activity and in fact are doing so. Pursuant to that program, police officers are unjustifiably stopping hundreds if not thousands of people outside of Clean Halls buildings on suspicion of having trespassed inside the buildings, and eight of the named plaintiffs had that exact experience.  It is this common and typical experience that defines the proposed class.  Given this commonality and typicality, given the large number of putative class members, and given that the named plaintiffs and their counsel are adequate to represent the class, the Court should grant the motion and certify the proposed class.

---

[1]At a later date, the plaintiffs will move to certify the full class identified in the complaint, which encompasses Clean Halls buildings across the City and stops taking place both inside and outside Clean Halls buildings.  Certification of a narrower class now limited to outdoors stops at Clean Halls buildings in the Bronx will ensure that any relief ordered in connection with the preliminary injunction motion will benefit all persons at risk of being subjected to the challenged practice.  As the Court recently noted, certification of a class in connection with a motion for a preliminary injunction is appropriate.  *See Strouchler v. Shah*, No. 12 Civ. 3216 (SAS), 2012 WL 4762095, at *1 & n.1 (S.D.N.Y.  Oct. 5, 2012).

## ARGUMENT

For purposes of their Motion for a Preliminary Injunction, the plaintiffs seek certification of the following class:

> All individuals who have been or are at risk of being stopped outdoors without legal justification by NYPD officers on suspicion of trespassing in Bronx apartment buildings enrolled in the NYPD's Trespass Affidavit Program (commonly referred to as "Operation Clean Halls").

As the class meets all of the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2), the plaintiffs respectfully submit that the Court should certify it.

### I.    The Proposed Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) sets forth four prerequisites to maintaining a class action: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted).  Class certification "is proper only if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Floyd v. City of New York*, 283 F.R.D. 153, 160 (S.D.N.Y. 2012) (citing *Wal-Mart*, 131 S. Ct. at 2551).  This rigorous analysis requires examining the facts of the dispute, not merely the pleadings, and it will frequently "entail some overlap with the merits of the plaintiff's underlying claim."  *Id.* (citing *Wal-Mart*, 131 S. Ct. at 2551).  The district court should apply the "preponderance of the evidence" standard in "resolving factual disputes relevant to each of the Rule 23 requirements" and "should not assess any aspect of the merits unrelated to a Rule 23 requirement."  *Id.* at 160-61.  Moreover, "Rule 23

is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility . . . ." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

The plaintiffs here challenge a narrow type of unlawful stop, and the class readily meets the Rule 23(a) requirements.

### A.  The Class is Sufficiently Numerous that Joinder is Impracticable

Numerosity requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requirement "does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."  *Floyd*, 283 F.R.D. at 161 (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. MerckMedco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007)).  In the Second Circuit, there is a presumption that the numerosity element is satisfied if there are at least forty class members.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Floyd*, 283 F.R.D. at 172 (finding numerosity requirement met because "[t]he preponderance of the evidence indicates that the proposed class and subclass easily exceed forty members"); *Stinson v. City of New York*, 282 F.R.D. 360, 369 (S.D.N.Y. 2012) (finding numerosity requirement met because "the proposed class like[ly] exceeds forty members").

The proposed class for purposes of the preliminary injunction includes thousands of people.  According to a July 2012 survey conducted by the NYPD, there are over 3,200 Clean Halls buildings in the Bronx.  Tr. at 775 (Chief Brian McCarthy testimony).[2]  In 2011 alone, NYPD officers completed 1,857 UF-250 forms documenting stops of people on suspicion of trespass only outside of 700 different Clean Halls buildings in the Bronx, and in more than 1,000

---

[2] All references to exhibits and transcripts in this memorandum refer to testimony and exhibits admitted into evidence at the preliminary injunction hearing held in this matter.

of those stops the forms indicated that no legal justification existed for the stop. *See* Ex. 4 at 2, 7-8, 10, 15 (table 8) (Expert Report of Dr. Jeffrey Fagan); Ex. 64 (Appendix L to the Fagan Report). Beyond these thousands of stops recorded on UF-250 forms, there is every reason to believe there were many more similar stops where police officers never completed a UF-250, as evidenced by the fact that not a single UF-250 was completed for any of the stops of the named plaintiffs, and as evidenced by the CCRB's findings in its 2010 and 2011 annual reports of "major failures" in the NYPD's completion of UF-250 forms. *See* Ex. 78 at 13 (CCRB 2010 Annual Report); Ex. 79 at 14 (CCRB 2011 Annual Report).[3] Given this evidence, Rule 23(a)'s numerosity requirement is easily satisfied.

### B. There are Questions of Law and Fact Common to the Proposed Class

"Commonality requires plaintiffs 'to demonstrate that the class members have suffered the same injury, and that the claims depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Floyd*, 283 F.R.D. at 161 (quoting *Wal-Mart*, 131 S. Ct. at 2551, internal quotation marks and citation omitted). Where "a plaintiff alleges injury from a common policy, the commonality requirement is met." *Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 444 (S.D.N.Y. 2007); *see also Brown v. Kelly*, 609 F.3d 467, 468 (2d Cir. 2010) ("[W]here plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm,

---

[3] The breadth of the problem was also underscored by the testimony of Jeannette Rucker, Chief of the Complaint Room and Arraignments Bureau at the Bronx County Office of the District Attorney. Ms. Rucker testified that, in her position at the Bronx District Attorney's Office, she has been concerned since 2007 about cases throughout the Bronx where people were being stopped—and sometimes ultimately arrested—simply because they had entered or entered and exited a Clean Halls building. *See* Tr. at 174-175.

this is precisely the type of situation for which the class action device is suited." (internal

quotation marks and citation omitted)).

The commonality requirement is readily met here because the class members all

challenge a specific NYPD practice—outdoor stops made on suspicion of trespassing inside

Clean Halls buildings—that is linked to a formal and discrete NYPD program.[4]  *See Floyd*, 283

F.R.D. at 172-75 (finding commonality because challenged stops and frisks were part of NYPD's

single stop and frisk program and department-wide policies); *Stinson*, 282 F.R.D. at 370 (finding

commonality because challenged summonses allegedly resulted from single NYPD "practice by

which NYPD officers issue summonses without probable cause in order to meet a summons

quota").  The entire purpose of Operation Clean Halls is to target enforcement activity, including

stops, at buildings enrolled in the program.

All of the class members here have precisely the same factual and legal claims: 1) that the

NYPD has a custom or practice of conducting stops of individuals outdoors without justification

on suspicion of criminal trespassing inside of Clean Halls buildings in the Bronx; and 2) that the

class members have been subjected to such stops or are at risk of being subjected to such stops in

---

[4] As NYPD officials testified at the hearing, Operation Clean Halls began over twenty years ago.
Tr. at 655 (Inspector Kerry Sweet testimony).  Although the NYPD released two new interim
orders governing the program in May 2012, the fundamentals of the program are undisputed.
(Interim Order 22 of 2012 is part of the NYPD Patrol Guide and addresses the proper execution
of vertical patrols inside apartment buildings.  *See* Ex. A.  Interim Order 23 of 2012 is part of the
NYPD Administrative Guide and concerns administration of the program.  *See* Ex. B.)  Owners
or managing agents of private apartment buildings enroll in the program by signing affidavits
granting NYPD officers authority to enter the buildings in order to prevent crimes such as drug
sales and trespassing.  *See* Ex. B (Interim Order 23, May 21, 2012); Ex. G (Owner's Affidavit).

Prior to the issuance of Interim Orders 22 and 23 in May 2012, Clean Halls buildings throughout
the Bronx used a uniform owner's affidavit granting the NYPD authority to enter the buildings
"into perpetuity."  *See* Ex. 76 (enrollment affidavits from Plaintiffs' buildings).  Once a building
is enrolled, signs are posted outside the building, and often in the vestibule or lobby, prominently
announcing that the building is enrolled in Operation Clean Halls and that trespassers are subject
to arrest.  *See* Ex. 36 (example of Clean Halls sign).

the future.  This targeted focus on one particular custom or practice is akin to the class this Court

certified in *Brown v. Kelly*, which consisted of individuals who had been or would be arrested,

charged, or prosecuted for loitering in violation of New York Penal Law section 240.35 after that

provision had been ruled unconstitutional.  244 F.R.D. 222, 229 (S.D.N.Y. 2007), *aff'd in*

*relevant part,* 609 F.3d 467 (2d Cir. 2010).  There, the Court found the commonality requirement

met because "the named plaintiffs' complained-of injuries arose from the same practice/policy

which now gives rise to the claims of absent class members, and thus proves the existence of

common factual and legal issues."  *Id.* at 231.[5]  Because the class members in this case challenge

one targeted type of unlawful *Terry* stop, the class members "have suffered the same injury" and

have "common contention[s]" such that the Court can "resolve . . . issue[s] that [are] central to

the validity of each one of the claims in one stroke."  *Wal-Mart*, 131 S. Ct. at 2551.  The

plaintiffs are therefore able to establish the commonality of the class members' claims

### C.  The Class Representatives' Claims are Typical of the Claims of the Class

Typicality "requires that the claims of the class representatives be typical of those of the

class, and is satisfied when each class member's claim arises from the same course of events, and

each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*,

126 F.3d at 376 (internal quotation marks omitted).  "The purpose of typicality is to ensure that

class representatives have the incentive to prove all elements of the cause of action which would

be presented by the individual members of the class were they initiating individualized actions."

*Floyd*, 283 F.R.D. at 175 (internal quotation marks and citation omitted).  It is a "well-

---

[5] Those common questions of law and fact, comparable to those here, included "the existence of
a widespread pattern, policy or practice of enforcement" of section 240.35, and "whether liability
against the City is appropriate pursuant to controlling precedent on the basis of . . . defendants'
custom, pattern and practice."  *Id.*

established principle" that "[t]ypicality is determined by the nature of the claims brought by the class representatives, not by the particular fact patterns from which they arose," and this "is 'particularly true with respect to . . . (b)(2) certification.'"  *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 232 (S.D.N.Y. 2010) (quoting *Brown*, 244 F.R.D. at 232).  "This is because 'where plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them . . . [there is] no need for *individualized* determinations of the propriety of injunctive relief.'"  *Id.* (quoting *Brown*, 244 F.R.D. at 232) (emphasis in original); *see also Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold.").

The claims of the named plaintiffs are typical of those of all class members.  Eight of the plaintiffs testified at the hearing about being subjected to unjustified outdoor stops on suspicion of criminal trespassing in Clean Halls buildings in the Bronx, and another witnessed one of those stops.  Plaintiff J.G. was stopped outside his own building on his way home after buying ketchup for dinner at the corner store.  Tr. at 439-42 (J.G. testimony); 428-32 (Jaenean Ligon testimony).  Plaintiff Abdullah Turner was stopped and arrested for trespassing outside of a Clean Halls building he never even entered, Tr. at 477-83, and was stopped outside of his own building, which is enrolled in Operation Clean Halls, while talking to his brother and two friends.  Tr. at 486-91.  Plaintiff Letitia Ledan was stopped in 2009 while walking past the supermarket at the exit of the River Park Towers complex, and again in 2011 while walking up to her own apartment building, which is enrolled in the program.  Tr. at 301-02, 306-09.  Plaintiff Roshea Johnson, Ms. Ledan's brother, was stopped and arrested outside of Ms. Ledan's building after exiting her apartment building.  Tr. at 396-401.  Plaintiff Charles Bradley was stopped and arrested for trespassing outside his fiancée's Clean Halls building after he came to visit her but

she was not home.  Tr. at 261-66.  Plaintiff Fernando Moronta was stopped as he exited his

brother's Clean Halls building and forced to accompany police officers back to his brother's

apartment to prove he was allowed to be there.  Tr. at 342-47.  Plaintiff Jovan Jefferson was

stopped as he exited a Clean Halls building with a friend who lived in the building.  Tr. at 361-

66.  Plaintiff Kieron Johnson was stopped outside of Mr. Jefferson's Clean Halls building while

waiting for Mr. Jefferson to come downstairs.  Tr. at 380-84.

Because these experiences of the named plaintiffs are identical to those of the proposed

class, the typicality requirement of Rule 23(a) is readily met.  *See Floyd*, 283 F.R.D. at 175

(finding typicality requirement met where "plaintiffs' stops ar[ose] from the same course of

conduct . . . and their legal arguments [we]re precisely the typical ones that are made by others

who bring or could bring claims for Fourth and Fourteenth Amendment violations by

defendants"); *Stinson*, 282 F.R.D. at 371 (finding typicality requirement met where named

plaintiffs' and class members' claims all stemmed from a "sole theory of liability" regarding a

single NYPD practice).

### D.  The Class Representatives Will Fairly and Adequately Protect the Class

The adequacy requirement entails two inquiries.  First, courts assess whether "plaintiff's

interests are antagonistic to the interest of other members of the class."  *Floyd*, 283 F.R.D. at 161

(quoting *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

This assessment "serves to uncover conflicts of interest between named parties and the class they

seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  "A conflict or

potential conflict alone will not, however, necessarily defeat class certification-the conflict must

be 'fundamental.'"  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citation

omitted).  Second, courts assess whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Floyd*, 283 F.R.D. at 161 (quoting *Baffa*, 222 F.3d at 60).

The plaintiffs and their counsel readily satisfy the adequacy requirement.  As noted above, eight of the named plaintiffs have been subjected to precisely the same type of stop as the other class members, and, like other class members, remain at risk of being subjected to the same type of stop again at their own buildings or while visiting family and friends in Clean Halls buildings in the Bronx.  *See Stinson*, 282 F.R.D. at 371 (finding named plaintiffs met adequacy requirement because "Plaintiffs' interests are identical to those of the putative class, as all plaintiffs have been allegedly injured by the same unconstitutional actions on the part of Defendants").  By vigorously challenging those stops the named plaintiffs will fully protect the interests of the entire class.

Further, the plaintiffs' counsel will adequately represent the class.  Plaintiffs' counsel have extensive experience litigating class actions and civil rights cases.[6]

## II.    The Proposed Class Action is Maintainable Under Rule 23 (b)(2)

A class action is maintainable pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Notably, not all class members need be aggrieved by, or desire to challenge, a defendant's conduct in order for one or more of them to seek relief under (b)(2); rather what is necessary is that the challenged conduct be premised on a ground that is applicable to the entire class and that the proposed relief would benefit the entire class.  *See Marisol A.*, 126 F.3d at 378

---

[6] The declarations of Christopher Dunn and J. McGregor Smyth, Jr. submitted in support of this motion detail the experience of attorneys at the New York Civil Liberties Union and The Bronx Defenders in litigating civil rights class actions.

(affirming class certification because the alleged harms "stem[med] from central and systemic failures"); *see also Baby Neal*, 43 F.3d at 58 (the Rule 23(b)(2) "requirement is almost automatically satisfied in actions primarily seeking injunctive relief").

This is precisely the type of class for which certification under Rule 23(b)(2) is appropriate.  The defendants' custom or practice of unlawful outdoor trespass stops at Clean Halls buildings harms the entire class, as does the defendants' refusal to take the steps necessary to eradicate the unlawful practice.  A preliminary injunction that mandates detailed policies and procedures, robust training, supervision, reporting, and oversight specific to outdoor trespass stops is necessary and appropriate to protect the Fourth Amendment rights of both the named plaintiffs and the class as a whole.  As this Court has noted, because "[t]he vast majority of New Yorkers who are unlawfully stopped will never bring suit to vindicate their rights[,] [i]t is precisely for cases such as this that Rule 23(b)(2) was designed."  *Floyd*, 283 F.R.D. at 177.

## <u>CONCLUSION</u>

For the foregoing reasons, the plaintiffs request that the Court certify the proposed class.