UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JAENEAN LIGON, individually and on
behalf of her minor son, J.G.; FAWN
BRACY, individually and on behalf of her
minor son, W.B.; JACQUELINE YATES;
LETITIA LEDAN; ROSHEA JOHNSON;
KIERON JOHNSON; JOVAN
JEFFERSON; A.O., by his parent DINAH
ADAMES; ABDULLAH TURNER;
FERNANDO MORONTA; and CHARLES
BRADLEY, individually and on behalf of a
class of all others similarly situated,

                 Plaintiffs,

          - against -

CITY OF NEW YORK; RAYMOND W.
KELLY, COMMISSIONER OF THE NEW
YORK CITY POLICE DEPARTMENT;
POLICE OFFICER JOHNNY BLASINI;
POLICE OFFICER GREGORY
LOMANGINO; POLICE OFFICER
JOSEPH KOCH; POLICE OFFICER
KIERON RAMDEEN; POLICE OFFICER
JOSEPH BERMUDEZ; POLICE OFFICER
MIGUEL SANTIAGO; and POLICE
OFFICERS JOHN DOE 1–12,

----------------------------------------------------------X

**OPINION AND ORDER**

12 Civ. 2274 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Plaintiffs, all of whom are African-American or Latino residents of

New York, allege that the New York Police Department ("NYPD") has a

widespread practice of making unlawful trespass stops outside buildings in the

Bronx that are enrolled in the Trespass Affidavit Program ("TAP"), which was formerly known as "Operation Clean Halls."[1]  This program allows "police officers to patrol inside and around thousands of private residential apartment buildings throughout New York City."[2]  Plaintiffs argue that the NYPD's trespass stops outside TAP buildings are often made without reasonable suspicion and, thus, violate the Fourth Amendment.[3]

On September 24, 2012, plaintiffs filed a motion for a preliminary injunction.  Plaintiffs sought an order requiring the NYPD to create and implement new policies, training programs, and monitoring and supervisory procedures that specifically address the problem of unconstitutional trespass stops outside TAP buildings.[4]  Plaintiffs' application for a preliminary injunction was granted but

---

[1]        *See Ligon v. City of New York*, No. 12 Civ. 2274, 2012 WL 3597066, at *1 (S.D.N.Y. Aug. 21, 2012) (allowing preliminary injunction hearing to proceed).   Plaintiffs' Complaint concerns stops *in and around* TAP buildings throughout New York City, but plaintiffs' motion for preliminary injunction focused solely on *outside* stops made in the Bronx.  *See id.* at *3–4; Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Pl. Class Mem.") at 1 n.1.

[2]        *See Ligon*, 2012 WL 3597066, at *1.

[3]        As the Supreme Court held in *Terry v. Ohio*, 392 U.S. 1, 25 (1968), even limited stops and searches must be based on reasonable suspicion.

[4]        *See* Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction at 21.

consideration of the appropriate remedies was deferred pending the remedies portion of the *Floyd* trial.[5]  However, as for "immediate relief," the NYPD was "ordered immediately to cease performing trespass stops outside TAP buildings in the Bronx without reasonable suspicion of trespass."[6]  Defendants requested an immediate stay pending appeal of the January 8, 2013 Opinion.[7]  Defendants' request for a stay of the immediate relief was granted on January 22, 2013.[8]

Eight out of the eleven plaintiffs – Jacqueline Yates, Letitia Ledan, Roshea Johnson, Kieron Johnson, Jovan Jefferson, Abdullah Turner, Fernando Moronta and Charles Bradley (collectively, "plaintiffs" or "named plaintiffs") – have sued on behalf of themselves and a class of all others similarly situated. Plaintiffs now move for certification of the following class:

> All individuals who have been or are at risk of being stopped outdoors without legal justification by

---

[5]      *Floyd v. City of New York*, 08 Civ. 1034 (SAS), is a companion case which challenges the NYPD's stop and frisk program more broadly as it involves all persons who have been, or may be, subjected to a *Terry* stop without the pre-requisite finding of reasonable suspicion.  The trial in *Floyd* is scheduled to begin on March 18, 2013.

[6]      *Ligon v. City of New York*, No. 12 Civ. 2274, 2013 WL 71800, at *41 (S.D.N.Y. Jan. 8, 2013) (the "January 8, 2013 Opinion").

[7]      *See Ligon v. City of New York*, No. 12 Civ. 2274, 2013 WL 227654 (S.D.N.Y. Jan. 22, 2013).

[8]      *See id.* at *1.

> NYPD officers on suspicion of trespassing in Bronx apartment buildings enrolled in the NYPD's Trespass Affidavit Program (commonly referred to as "Operation Clean Halls").[9]

Plaintiffs seek certification of this more limited preliminary injunction class to "ensure that any relief ordered in connection with the preliminary injunction motion will benefit all persons at risk of being subjected to the challenged practice."[10]  Because plaintiffs have satisfied the legal prerequisites for class certification, their motion is granted.

## II.   FACTUAL BACKGROUND

At the class certification stage, district courts must engage in a rigorous analysis of the underlying facts in order to determine whether plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)").  Unless otherwise noted, the following findings are taken from the Court's January 8, 2013 Opinion,[11] familiarity with which is assumed, but which will not

---

[9]     Pl. Class Mem. at 2.

[10]     *Id.* at 1 n.1.

[11]     Defendants concede that "the Court has a full record from the Preliminary Injunction hearing that was recently held in this case from which to make a determination as to whether plaintiffs have met their burden with respect to the commonality and typicality prongs of Rule 23(a) in this case."  Defendants' Memorandum of Law in Opposition to Motion for Class Certification ("Opp. Mem.") at 5.  Defendants did not have the benefit of this Court's preliminary injunction rulings when they prepared their opposition brief, the vast majority of

be binding on the jury at trial.[12]

## A.     The NYPD's Stop and Frisk Program

The NYPD's overall stop and frisk program, of which the challenged stop and frisk program is a narrow subset, is described in great detail in the class certification ruling in *Floyd v. City of New York*.[13]  For purposes of this motion, suffice it to say that "plaintiffs have shown a clear likelihood of proving that defendants have displayed deliberate indifference toward a widespread practice of unconstitutional trespass stops by the NYPD outside TAP buildings in the Bronx."[14]

## B.     Evidence of Unlawful Stops

The Court's conclusion that plaintiffs will likely prove at trial that the NYPD has a practice of making unlawful trespass stops outside of TAP buildings in the Bronx was based on five categories of evidence presented at the preliminary

---

which was spent rearguing the merits of the preliminary injunction motion.  But this is not a motion for reconsideration and this Court's prior factual determinations are not subject to review.  Accordingly, much of defendants' opposition to the instant motion has been mooted by the January 8, 2013 Opinion.

[12]     *See Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)* ("*IPO*"), 471 F.3d 24, 42 (2d Cir. 2006).

[13]     *See* 283 F.R.D. 153, 162-67 (S.D.N.Y. 2012).

[14]     *Ligon*, 2013 WL 71800, at *2.  *See id.* at *23, *28.

injunction hearing.  Although each category of evidence is discussed at length in

the January 8, 2013 Opinion, the relevant evidence is summarized as follows:

> (1) the testimony of Bronx Assistant District Attorney
> Jeannette Rucker ("ADA Rucker"), who concluded that the
> NYPD frequently made trespass stops outside TAP
> buildings in the Bronx for no reason other than that the
> officer had seen someone enter and exit or exit the building;
> (2) a sample of "decline to prosecute" forms prepared by
> the Bronx District Attorneys' Office, which revealed the
> alarming frequency of unlawful trespass stops in the
> vicinity of TAP buildings in the Bronx; (3) the testimony of
> eight plaintiffs and a non-party witness, who described
> remarkably similar encounters with the police when
> stopped in the vicinity of TAP buildings in the Bronx; (4)
> the analysis by Dr. Jeffrey Fagan, plaintiffs' expert, of an
> NYPD database of recorded stops, which provided further
> evidence of the frequency of apparently unlawful trespass
> stops outside TAP buildings in the Bronx; and (5) NYPD
> training materials that continue to misstate the minimal
> constitutional standards for making stops.[15]

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 23(a)

Rule 23(a) permits individuals to sue as representatives of an

aggrieved class.  To be certified, a putative class must first meet all four

prerequisites set forth in Rule 23(a), generally referred to as numerosity,

---

[15]    *Id.* at *2.

commonality, typicality, and adequacy.[16]  District courts have broad discretion in deciding whether to certify a proposed class under Rule 23.[17]  Furthermore, the Second Circuit has directed that Rule 23 "'should be given a liberal rather than a restrictive interpretation' in order to vindicate small federal claims."[18]

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule – that is, [it] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[19]  Plaintiffs seeking class certification bear the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in Rule 23(a).[20]

---

[16]    *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008) ("*Teamsters*").  In full, Rule 23(a) reads: "Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

[17]    *See Parker v. Time Warner Entm't Co. L.P.,* 331 F.3d 13, 28 (2d Cir. 2003).

[18]    *Zahn v. International Paper Co.*, 469 F.2d 1033, 1035 (2d Cir. 1972) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968)).

[19]    *Wal-Mart Stores, Inc. v. Dukes* ("*Wal-Mart*"), 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

[20]    *See Teamsters*, 546 F.3d at 202.

When assessing whether plaintiffs have met this burden, courts must take into account "all of the relevant evidence admitted at the class certification stage."[21]   A court may certify a class only after determining that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established."[22]   This rigorous analysis requires examining the facts of the dispute, not merely the pleadings, and it will frequently "entail some overlap with the merits of the plaintiff's underlying claim."[23]

Even before the Supreme Court articulated this standard in the *Wal-Mart* decision, the Second Circuit had "required district courts 'to assess all of the relevant evidence admitted at the class certification stage'" and to apply "the preponderance of the evidence standard" when resolving factual disputes relevant to each of the Rule 23 requirements.[24]   At the class certification stage, "a district judge should not assess any aspect of the merits unrelated to a Rule 23

---

[21]     *IPO*, 471 F.3d at 42.

[22]     *Id.* at 41.

[23]     *Wal-Mart*, 131 S. Ct. at 2551.  "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation."  *Id.* at 2552.

[24]     *Teamsters*, 546 F.3d at 202 (quoting *IPO*, 471 F.3d at 42).

requirement."[25]  The court's "determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge."[26]

### 1.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  In the Second Circuit, sufficient numerosity can be presumed at a level of forty members or more.[27]  "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible – only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."[28]  Courts do not require "evidence of exact class size or identity of class members to satisfy the numerosity requirement."[29]

---

[25]    *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quotation marks and citation omitted).  Courts must ensure "that a class certification motion does not become a pretext for a partial trial of the merits." *IPO*, 471 F.3d at 41.

[26]    *IPO*, 471 F.3d at 41.

[27]    *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (holding that "numerosity is presumed at a level of 40 members").

[28]    *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).

[29]    *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

9

### 2.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Commonality thus requires plaintiffs "to demonstrate that the class members 'have suffered the same injury.'"[30]  Commonality further requires that the claims asserted "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[31]

In *Wal-Mart*, plaintiffs sought to certify a class of approximately a million and a half female employees of the retail giant, alleging that "the discretion exercised by their local supervisors over pay and promotion violates Title VII by discriminating against women."[32]  The Supreme Court found that the plaintiffs had failed to satisfy commonality because the putative class members were subjected to an enormous array of *different* employment practices:

> Pay and promotion decisions at Wal-Mart are generally committed to local managers' broad discretion . . . .  Local store managers may [make

---

[30]    *Wal-Mart*, 131 S. Ct. at 2551 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

[31]    *Id.*

[32]    *Id.* at 2547.

wage decisions] with only limited corporate oversight . . . . Wal-Mart has no testing procedure or other companywide evaluation method that can be charged with bias. The whole point of permitting discretionary decisionmaking is to avoid evaluating employees under a common standard . . . . Other than the bare existence of delegated discretion, respondents have identified no 'specific employment practice' – much less one that ties all their 1.5 million claims together.[33]

### 3.     Typicality

"Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events[] and each class member makes similar legal arguments to prove the defendant's liability.'"[34]  Rather than focusing on the precise nature of plaintiffs' injuries, the typicality requirement may be satisfied where "injuries derive from a unitary course of conduct by a single system."[35]

The purpose of typicality is to ensure that class representatives "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating

---

[33]     *Id.* at 2547, 2553, 2555.

[34]     *Central States*, 504 F.3d at 245 (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

[35]     *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

individualized actions."[36]  A lack of typicality may be found in cases where the

named plaintiff "was not harmed by the [conduct] he alleges to have injured the

class"[37] or the named plaintiff's claim is subject to "specific factual defenses"

atypical of the class.[38]

### 4.    Adequacy

"Adequacy is twofold: the proposed class representative must have an

interest in vigorously pursuing the claims of the class, and must have no interests

antagonistic to the interests of other class members."[39]  Thus, the question of

adequacy "entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to

the interest of other members of the class and 2) plaintiffs' attorneys are qualified,

experienced and able to conduct the litigation."[40]  In order to defeat a motion for

certification, any conflicts between the class representative and members of the

---

[36]     *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996).

[37]     *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. 2006).

[38]     *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

[39]     *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

[40]     *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

putative class must be "fundamental."[41]

### 5.   Implied Requirement of Ascertainability

Some courts have added an "implied requirement of ascertainability"[42] to the express requirements of Rule 23(a).  These courts have refused to certify a class "unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."[43]  However, where the primary relief sought is injunctive rather than compensatory, as here, "it is not clear that the implied requirement of definiteness should apply to Rule 23(b)(2) class actions at all."[44]

### B.   Federal Rule of Civil Procedure 23(b)(2)

If the requirements of Rule 23(a) are met, the court "must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)."[45]  Plaintiffs seek certification under Federal Rule of

---

[41]   *In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

[42]   *IPO*, 471 F.3d at 30.

[43]   *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009).

[44]   William B. Rubenstein *et al.*, *Newberg on Class Actions* § 3:7 at 1-172 (2011).

[45]   *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).

13

Civil Procedure 23(b)(2) ("Rule 23(b)(2)").  To certify a class under Rule 23(b)(2), plaintiffs must show that defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  As the Supreme Court explained in *Wal-Mart*, Rule 23(b)(2) is intended to cover cases such as this one:

> When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident.[46]

## IV.  DISCUSSION

### A.  Plaintiffs Have Standing to Seek Injunctive Relief

Article III of the Constitution requires that a federal court entertain a lawsuit only if the plaintiffs have standing to pursue the relief that they seek. Concrete injury is a prerequisite to standing and a "plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."[47]

---

[46]    131 S. Ct. at 2558.  *Accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) class actions).

[47]    *Deshawn v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)).

The Supreme Court emphasized this requirement in *City of Los Angeles v. Lyons*, when it held that Lyons, who had been subjected to a dangerous chokehold by a Los Angeles police officer, did not have standing to pursue an injunction against the police department's practice of using chokeholds because his past injury "does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."[48]

Defendants argue that plaintiffs lack standing because "no plaintiff can demonstrate more than one past improper stop of the type raised by plaintiffs upon this motion and only two plaintiffs, Abdullah Turner and Letitia Ledan, even testified to two incidents. . . . [N]either of these plaintiffs can demonstrate the requisite two or more improper stops of the type raised by plaintiffs upon their motion."[49]  The issue of standing was addressed in the January 8, 2013 Opinion, which states in relevant part:

> Abdullah Turner . . . testified to two specific unlawful trespass stops outside TAP buildings in the Bronx, and J.G. and Jovan Jefferson both referred to having been stopped multiple times outside TAP buildings. . . .  Turner has lived

---

[48]     *Lyons*, 461 U.S. at 105.

[49]     Opp. Mem. at 25.

since 2008 in a TAP building, where, based on the evidence presented at the hearing, he will likely be the target of future unlawful stops – if such stops continue to take place as they have in the past.  This is sufficient to confer standing on plaintiffs.[50]

"The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented."[51]  Furthermore, the frequency of alleged injuries inflicted by the practice at issue here creates a likelihood of future injury sufficient to address any standing concerns.[52]  In the face of the NYPD's widespread practices outside of TAP buildings, Turner's risk of future injury is "'real and immediate,' not 'conjectural' or 'hypothetical.'"[53]  Because Turner satisfies the

---

[50]    *Ligon*, 2013 WL 71800, at *27 (footnotes omitted).  *See also Ligon*, 2013 WL 227654, at *3 n.24 (reaffirming that Turner's second police encounter rose to the level of a *Terry* stop).

[51]    *Nicacio v. United States Immigration & Naturalization Serv.*, 768 F.2d 1133, 1136 (9th Cir. 1985).  *Accord Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011) (finding standing in a case where one set of plaintiffs had allegedly been subject to two unlawful searches and other plaintiffs feared repeat injury because the searches were part of defendants' "condoned, widespread, and ongoing" practice).

[52]    *See Ligon*, 2013 WL 71800, at *27 n.317 (stating that "in light of the frequency of unlawful trespass stops outside TAP buildings in the Bronx, even those plaintiffs who have only been subjected to such a stop one time would likely have standing, provided that they continue to live in or visit TAP buildings"); *National Cong. for Puerto Rican Rights by Perez v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1999) (later renamed "*Daniels*").

[53]    *Lyons*, 461 U.S. at 102.

16

Article III standing requirements, I need not consider the standing of the other plaintiffs.[54]

**B.    Plaintiffs Satisfy the Four Prerequisites of Rule 23(a)**

**1.    Commonality and Typicality**

In practice, the "commonality and typicality requirements of Rule 23(a) tend to merge."[55]  Accordingly, defendants address the commonality and typicality requirements together.[56]  Defendants' sole argument is that plaintiffs do not meet the commonality and typicality requirements because they have not proven that an "unconstitutional custom or practice of the City actually exists with respect to stops outdoors of [TAP] enrolled buildings where trespass is the suspected crime."[57]  In the January 8, 2013 Opinion, I ruled that "plaintiffs offered

---

[54]    *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006) (noting that "[t]he Court of Appeals did not determine whether the other plaintiffs have standing because the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

[55]    *Wal–Mart*, 131 S. Ct. at 2551 n.5.  *Accord Marisol A.*, 126 F.3d at 376 (stating that commonality and typicality "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)").

[56]    Defendants did not have the advantage of this Court's rulings with regard to the preliminary injunction motion when they filed their opposition brief.

[57]    *See* Opp. Mem. at 5 ("Defendants assert that based on the following evidence adduced at the PI hearing, plaintiffs have not met their burden with respect to the existence of an unconstitutional practice, therefore . . .  their motion for class certification must be denied since there is no 'glue' to unify the claims of

more than enough evidence at the hearing to support the conclusion that they have shown a clear likelihood of proving at trial that the NYPD has a practice of making unlawful trespass stops outside of TAP buildings in the Bronx[.]"[58]  For purposes of class certification, therefore, plaintiffs have adequately established the likelihood of an unconstitutional stop and frisk practice on the part of the NYPD.[59]

In sum, plaintiffs and the putative class members were allegedly subjected to the same unlawful conduct by NYPD officers under the auspices of a single NYPD program: unjustified *Terry* stops, not supported by reasonable suspicion, occurring outdoors in the vicinity of TAP buildings in the Bronx on suspicion of trespass.  Thus, plaintiffs readily meet the commonality requirement

---

the named plaintiffs with the putative class, as well as the claims of the class representatives themselves[.]").

[58]     *Ligon*, 2013 Wl 71800, at *28.

[59]     Plaintiffs do not have the burden of proving the existence of an unconstitutional practice or custom at the class certification stage.  They do, however, have the burden of proving the existence of common factual and legal issues.  *See Mitchell v. County of Clinton*, No. 8:06-CV-00254, 2007 WL 1988716, at *2 (N.D.N.Y. July 5, 2007) ("Plaintiff has shown the existence of legal and factual issues common to all proposed members of the proposed class, *i.e.*, what strip search policy and practice existed, whether the policy and/or practice were unconstitutional, and whether some or all of the defendants are liable."); *Barnes v. District of Columbia*, 242 F.R.D. 113, 122 (D.D.C. 2007) ("The same common questions . . . are present in this case and satisfy the commonality requirement, such as whether the overdetention and strip search practices were municipal policies and whether either violated the Constitution.").

as described in *Wal-Mart – i.e.*, the plaintiffs' claims and the class member claims

"depend upon a common contention . . . of such a nature that it is capable of

classwide resolution – which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one

stroke."[60]  Furthermore, because the experiences of the named plaintiffs are

identical to those of the proposed class, the typicality requirement is also met.[61]

---

[60]     *Wal-Mart*, 131 S. Ct. at 2551.  Since *Wal-Mart*, at least three district courts have granted class certification in cases alleging constitutional violations due to a police department's policy and/or practice of making unlawful stops and arrests.  *See Stinson v. City of New York*, 282 F.R.D. 360, 363 (S.D.N.Y. 2012) ("Plaintiffs allege that the NYPD is engaged in a widespread pattern and practice of issuing summonses to individuals without probable cause and that NYPD officers are explicitly instructed to issue summonses regardless of whether any crime or violation has occurred in order to meet a minimum quota requirement set forth by the NYPD.");  *Ortega-Melendres v. Arpaio*, No. 07 Civ. 2513, 2011 WL 6740711, at *19 (D. Ariz. Dec. 23, 2011) (certifying class of Latino motorists alleging racial profiling and finding that differences in subjective motivations of officers do not defeat commonality or typicality when there is evidence of a departmental policy of violating constitutional rights);  *Morrow v. City of Tenaha*, No. 08 Civ. 288, 2011 WL 3847985, at *192-94 (E.D. Tex. Aug. 29, 2011) (certifying class of Latinos who were stopped for alleged traffic violations and finding commonality in light of statistical evidence showing significant increases in the number of minorities stopped after the adoption of a new police policy).

[61]     *See Stinson*, 282 F.R.D. at 371 (finding typicality requirement met where claims of named plaintiffs and class members stemmed from a "sole theory of liability" regarding a particular NYPD practice).

### 2. Numerosity

In conclusory fashion, defendants argue that "[i]n the absence of commonality and typicality, plaintiffs cannot establish numerosity either."[62]  As Dr. Fagan's testimony clearly establishes, the number of class members will run into the hundreds, if not thousands.  Plaintiffs have therefore satisfied numerosity.

### 3. Adequacy

Defendants argue that plaintiffs fail to meet the adequacy requirement because "[t]here are several unique defenses to the named plaintiffs' claims that defendants submit will defeat said claims and will subsume this litigation concerning said claims, i.e., the failure to specify the dates of incident and identify the officers involved, as well as in some cases whether the purported stop was even for trespass or outside of the premises of TAP enrolled buildings."[63]  Defendants' argument is unavailing for several reasons.  *First*, "courts and juries must *always* consider defendants' individual defenses before determining liability.  That is no bar at the certification stage."[64]  "In practice, courts in this Circuit . . . [refuse] certification only when confronted with a sufficiently clear showing" that a defense

---

[62]   Opp. Mem. at 23.

[63]   *Id.* at 24.

[64]   *Floyd*, 283 F.R.D. at 175-76.

20

unique to the representative plaintiff's claims will in fact defeat those claims.[65]

        *Second*, the doctrine of unique defenses is intended to protect absent members of the plaintiff class by ensuring the presence of a typical plaintiff.[66]  The doctrine is not meant to protect defendants by permitting them to defeat class certification because the facts raised by the claims of the named plaintiffs are not *identical* to the facts raised by the claims of all putative class members.  Because the named plaintiffs' claims arise from the same practice and same general set of facts as do the claims of the putative class members, the adequacy prong is satisfied.[67]

---

[65]    *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483, 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007) (explaining that the court "need not deny certification merely because of the presence of a colorable unique defense").

[66]    "'The unique defense rule, however, is not rigidly applied in this Circuit,' and is 'intended to protect [the] plaintiff class – not to shield defendants from a potentially meritorious suit.'" *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y. 2010) (quoting *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 71 (S.D.N.Y. 2009) (alteration in original)).  *Accord Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) ("If . . . defendants were arguing that a district court must determine whether the named plaintiffs have a meritorious claim before they can be certified as class representatives, they would plainly be wrong.").

[67]    *See Central States*, 504 F.3d at 245; *Daniels*, 198 F.R.D. at 419.

### 4.      Ascertainability

Rule 23 does not demand ascertainability.  The requirement is a judicial creation meant to ensure that class definitions are workable when members of the class will be entitled to damages or require notice for another reason.[68] Defendants oppose class certification on the basis of ascertainability for three reasons: "first, plaintiffs' definition is so vague, particularly the portion that reads, 'all individuals who have been or are at risk of being stopped outdoors without legal justification . . .,' that it can never be determined who is a class member. Second, should the Court determine that the size of the class affects the relief sought, the proposed definition could be important.  Third, mini-trials would be required to determine who is properly a class member."[69]

I agree that the class definition, as proposed, is too vague to enable a proper determination of who is a class member.  In certifying the class, the class definition must be amended as follows:

> All individuals who have been or are at risk of being stopped outdoors *within the vicinity of* Bronx apartment buildings enrolled in the NYPD's Trespass Affidavit Program (commonly referred to as "Operation Clean Halls") without legal justification by NYPD officers on

---

[68]      *See IPO*, 471 F.3d at 30.

[69]      Opp. Mem. at 25.

suspicion of trespassing in *said* buildings.[70]

While this Court need not tarry long with the question of ascertainability, the general demarcations of the proposed class – those people unlawfully stopped or who may be stopped by the NYPD outside of TAP buildings in the Bronx – are clear enough to make the proposed class sufficiently ascertainable for purpose of Rule 23(b)(2).

### C.   Rule 23(b)(2)

Defendants oppose certification under Rule 23(b)(2) on the same ground raised with regard to commonality and typicality, namely, "[b]ecause plaintiffs have not met their burden of demonstrating an unlawful custom or practice as alleged, they cannot demonstrate that the City 'has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"[71] Because this argument failed with respect to commonality and typicality, it cannot bar certification under Rule 23(b)(2).  In any event, as noted above, the Supreme Court explained in *Wal-Mart* that Rule 23(b)(2) is intended to cover cases such as this one:

---

[70]   *See* Pl. Class Mem. at 2 (emphasis added).

[71]   Opp. Mem. at 24 (quoting Fed. R. Civ. P. 23(b)(2)).

> When a class seeks an indivisible injunction benefitting all
> its members at once, there is no reason to undertake a
> case-specific inquiry into whether class issues predominate
> or whether class action is a superior method of adjudicating
> the dispute. Predominance and superiority are
> self-evident.[72]

In sum, because plaintiffs have met the requirements of Rule 23(a) and (b)(2), I

hereby certify the proposed class, as modified above.

## V.   CONCLUSION

Because plaintiffs have satisfied the requirements of Rule 23, their

motion for class certification solely for the purpose of preliminary injunctive relief

is granted.  The Clerk of the Court is directed to close this motion [Docket Entry #

67].


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 11, 2013

---

[72]     *Wal-Mart*, 131 S. Ct. at 2558.  *Accord Amchem Prods.*, 521 U.S. at
614 ("Civil rights cases against parties charged with unlawful, class-based
discrimination are prime examples" of Rule 23(b)(2) class actions).

24

**No Appearance Sheet Needed - ECF will send Opinion automatically to all attorneys**