UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JAENEAN LIGON, et al.                        :
                                             :
                        Plaintiffs,          :
                                             :        12 Civ. 2274 (SAS)(HBP)
        -versus-                             :
                                             :
CITY OF NEW YORK, et al.                     :
                                             :
                        Defendants.          :
--------------------------------------------------------------X

## PLAINTIFFS' POST-HEARING BRIEF ON PROPOSED REMEDIAL RELIEF

Alexis Karteron
Christopher Dunn
Daniel Mullkoff
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, New York 10004

Mariana Kovel
The Bronx Defenders
860 Courtlandt Avenue
Bronx, New York 10451

Juan Cartagena
Foster Maer
Roberto Concepcion, Jr.
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, New York 10013

J. McGregor Smyth, Jr.
New York Lawyers for the Public Interest
151 West 30th Street, 11th Floor
New York, New York 10001

John A. Nathanson
Tiana Peterson
Michael Grunfeld
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

Dated: March 4, 2013
        New York, New York

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................. 3

I.   POLICIES AND PROCEDURES ........................................................ 5

II.  TRAINING ........................................................................................... 6

   A.   Distribution of New Formal Written Policy on Trespass Stops Outside TAP Buildings .... 7

   B.   Revisions to Stop, Question, Frisk Training at Rodman's Neck ......................................... 8

   C.   Revisions to Chief of Patrol's Field Training Unit Guide .................................. 9

   D.   Rescission and Replacement of SQF Training Video No. 5................................................ 10

III. SUPERVISION ....................................................................................... 12

   A.   Steps to Ensure that NYPD Officers Complete UF-250 Forms When Appropriate......... 12

   B.   Supervisory System to Review Completed UF-250s for Outdoor Trespass Stops at TAP Buildings in the Bronx ................................................................................... 13

CONCLUSION.................................................................................................. 16

APPENDIX......................................................................................................... 18

## PRELIMINARY STATEMENT

In accordance with the Court's amended opinion and order, dated February 14, 2013, Plaintiffs submit this brief to set forth their position on the scope and timing of remedial relief the Court should grant in connection with their preliminary injunction motion.  In their revised proposed findings of fact and conclusions of law, Plaintiffs requested that the Court order the NYPD to take certain steps to remedy the practice of unconstitutional trespass stops outside of buildings enrolled in the Trespass Affidavit Program ("TAP") in the Bronx.  Specifically, Plaintiffs proposed numerous remedies concerning NYPD policies and procedures, training, supervision, and monitoring, as well as whatever additional measures the Court deemed necessary and appropriate.  Pls.' Revised Proposed Findings of Fact and Conclusions of Law, dated Nov. 26, 2012, ECF No. 91, at ¶¶ 72-76.

The Court accepted many of Plaintiffs' proposed remedial measures but did not adopt several proposals.  Amended Opinion & Order, dated Feb. 14, 2013 ("Amended Opinion"), at 144-49.[1]  The Court also raised the possibility of the appointment of a monitor.  *See, e.g.*, *id.* at 147 (stating that a draft of new written policy on trespass stops outside TAP buildings "shall be provided to the Court (or a monitor appointed by the Court) for approval prior to distribution, with a copy to plaintiffs' counsel").

Plaintiffs respectfully maintain that all the measures they originally proposed are appropriate given the record before the Court.  Nonetheless, with minor proposed revisions, they accept the remedial steps outlined by the Court as an appropriate set of *initial* measures.  Should

---

[1] The Court declined to accept Plaintiffs' proposals concerning monitoring.  *See* Pls.' Revised Proposed Findings of Fact and Conclusions of Law, at ¶ 75.  The Court also did not adopt Plaintiffs' proposals that the NYPD create training for new recruits that specifically addresses TAP stops, and that the NYPD institute procedures for confirming and reporting to Plaintiffs' counsel that members of the NYPD in the Bronx receive revised training and for assessing individual officers who have received training.  *See id.* ¶ 73(d), (g).

these measures prove insufficient, however, Plaintiffs will seek more aggressive measures, including the appointment of a monitor.

Thus, in accordance with the Court's findings of fact and conclusions of law, Plaintiffs request that the Court enter an order requiring Defendants to undertake the following reforms:

1) Adopt a formal written policy setting forth the limited circumstances under which outdoor trespass stops at TAP buildings are permissible;

2) Distribute the new formal written policy on outdoor trespass stops to all members of the NYPD assigned to Bronx commands, repeated twice at six-month intervals;

3) Using the NYPD's "train the trainer" process, conduct command-based training on the new formal written policy;

4) Revise the Rodman's Neck "refresher course" on stop and frisk practices to incorporate the new formal written policy;

5) Amend the Chief of Patrol's Field Training Unit Guide by incorporating the new formal written policy;

6) Rescind Stop, Question and Frisk Video No. 5 and replace it with a new film that sets forth the correct legal standard for stops;

7) Take steps to ensure that NYPD officers complete UF-250s in all circumstances when they conduct stops;

8) Set up a process by which supervisory personnel conduct quarterly reviews of UF-250s completed in connection with trespass stops outside TAP buildings in the Bronx; and

9) Provide Plaintiffs' counsel with the following: copies of all UF-250s reviewed in the new supervisory review process, complete rosters of all buildings enrolled in TAP in the Bronx since July 2012, and the complete UF-250 database for the Bronx.

In terms of a schedule for the implementation of these remedies,[2] Plaintiffs respectfully suggest that the Court order Defendants to provide proposals for the remedies identified above at nos. 1, 4, 5, 6, and 7 within 30 days of the Court's final order.  Plaintiffs further suggest that the Court order Defendants to implement the remedies identified at nos. 2 and 3 within 60 days of

---

[2] Plaintiffs provide a summary of their proposed schedule for implementation of these remedies in an appendix at the end of this brief.

approving a new formal written policy on outdoor trespass stops.  For the remedies identified at nos. 8 and 9, Plaintiffs suggest that the first supervisory review take place three months after the command-based training is implemented and that Defendants provide Plaintiffs' counsel with the documents identified above within 30 days of each quarterly review.

With respect to the duration of the proposed remedies, Plaintiffs respectfully submit that the Court should order that the new policy and revised training materials, *i.e.*, those identified at nos. 1 & 3-6 above, be used by the NYPD permanently.  Plaintiffs further submit that the supervisory reforms, *i.e.*, those identified at nos. 7-9 above, be instituted for an initial six-month period.  At the end of that period, Plaintiffs suggest that the Court consider whether this relatively modest set of proposals has substantially reduced unconstitutional trespass stops outside of TAP buildings in the Bronx.

## BACKGROUND

In an extensive opinion and order on Plaintiffs' motion for a preliminary injunction, the Court found that Plaintiffs established that preliminary injunctive relief was necessary to remedy the problem of unconstitutional trespass stops outside of TAP buildings in the Bronx.[3]  In consideration of the testimony and other evidence presented at a seven-day hearing, Plaintiffs demonstrated a clear likelihood of establishing that Defendants had been deliberately indifferent to the practice of NYPD officers making unconstitutional trespass stops outside of TAP buildings in the Bronx; that they are likely to suffer irreparable harm in the absence of a preliminary injunction; that Plaintiffs' interest in not being subjected to unconstitutional stops outside of TAP buildings in the Bronx outweighed the burden on Defendants to revise NYPD

---

[3] The Court entered its opinion and order on January 8, 2013, and subsequently entered an amended opinion and order on February 14, 2013.  All citations to the slip opinion in this memorandum refer to the amended opinion and order.  All citations to exhibits and transcript excerpts refer to evidence admitted at the preliminary injunction hearing in this matter.

policies and training materials; and that preliminary injunctive relief would be in the public

interest.  Slip Op. at 118-41.  Moreover, the Court found that the "the NYPD has failed to take

meaningful action to address the *specific* and narrow problem at issue in this case: the problem of

unconstitutional trespass stops *outside* TAP buildings in the Bronx."  Slip Op. at 121-22.

      Given the NYPD's failure to remedy this ongoing problem, the Court also ordered

immediate injunctive relief and proposed additional relief.  Slip Op. at 142-49.  The immediate

relief was as follows: "The NYPD is ordered immediately to cease performing trespass stops

outside TAP buildings in the Bronx without reasonable suspicion of trespass, in accordance with

the law as set forth and clarified in this Opinion."  Slip Op. at 143.[4]  The Court further ordered

the parties to submit briefs addressing "whether the proposed relief is insufficient or too

burdensome or otherwise inappropriate, as well as regarding the appropriate timeline for relief."

Slip Op. at 145.  All of the Court's proposals are necessary to complete the task the NYPD has

failed to do: to "uproot[] the misconceptions regarding trespass stops outside TAP buildings that

resulted in the constitutional violations in this case."  Slip Op. at 92.  In accordance with the

Court's directive, Plaintiffs set forth below their position on the three areas of proposed

additional relief identified at pages 146-49 of the Amended Opinion: policies and procedures,

training, and supervision.

---

[4] The Court granted Defendants' application for a stay of the immediate relief on January 22,
2013.  In accordance with the Court's opinion issuing the stay, Plaintiffs submit that the
immediate relief should be ordered to take effect when the Court enters a final order on remedial
relief for the preliminary injunction motion.  *See* Opinion & Order, dated Jan. 22, 2013, at 2
("The stay will take effect immediately, will extend through the consolidated remedies hearing in
*Ligon* and *Floyd* ordered in the Opinion, and will end when this Court issues a final decision
regarding the appropriate scope of preliminary injunctive relief in *Ligon*.").

I.       POLICIES AND PROCEDURES

        The Court proposed the following injunctive relief concerning policies and procedures:

        The NYPD is ordered to develop and adopt a formal written policy specifying the limited circumstances in which it is legally permissible to stop a person outside a TAP building on a suspicion of trespass.  The policy must reflect the fact that trespass stops outside TAP buildings are governed not only by New York state law, but by the Fourth Amendment.  Guidance in drafting this policy should be drawn from the legal discussion found in this Opinion.

        A draft of the written policy governing trespass stops outside TAP buildings shall be provided to the Court (or a monitor appointed by the Court) for approval prior to distribution, with a copy to plaintiffs' counsel.

Slip Op. at 146-47.

        In light of the Court's finding that the NYPD has no written policy that specifically addresses the legal standards that apply to stops by NYPD officers outside of TAP buildings,[5] this portion of the Court's proposed preliminary injunctive relief is clearly warranted.  Such a written policy will serve as a resource to all members of the Police Department and reinforce that the official policy of the NYPD is that stops outside of TAP buildings should not take place without reasonable suspicion.  Specifically, the new formal written policy should explicitly instruct NYPD officers that merely exiting or entering a TAP building does not constitute reasonable suspicion of criminal trespassing.

        Plaintiffs suggest that the Court order Defendants to draft a formal written policy on trespass stops outside TAP buildings and submit it simultaneously to the Court and to Plaintiffs' counsel within 30 days of the Court's order on preliminary injunctive relief.  Plaintiffs request

_____

[5] *See* Slip Op. at 83 ("Defendants were unable to produce a single written policy or procedure governing any aspect of TAP between the program's origins in the early 1990s and the issuance of two orders in 2012 . . . ." (footnote omitted)); Slip Op. at 87 ("As plaintiffs correctly note . . . [Interim Order] 22 of 2012 makes no reference to stops *outside* TAP buildings.  It does not explicitly state that stops outside TAP buildings require reasonable suspicion, and that merely exiting a TAP building is insufficient to establish reasonable suspicion, even in a high crime area." (footnotes omitted)).

5

that they be allowed to comment on the proposed policy within 10 days of Defendants' submission.  Once approved, Plaintiffs propose that the policy be distributed in accordance with the guidelines described below in the section addressing the Court's proposed training remedies.

## II.   TRAINING

The Court made four proposals regarding improved training for NYPD officers in the Amended Opinion: (1) that the new formal written policy concerning trespass stops outside TAP buildings be distributed to each Bronx NYPD member, and then redistributed two additional times at six-month intervals, Slip Op. at 148; (2) that the stop and frisk refresher course at Rodman's Neck "be altered to incorporate instruction specifically targeting the problem of unconstitutional trespass stops *outside* TAP buildings," Slip Op. at 148; (3) that Chapter 16 of the Chief of Patrol Field Training Guide be revised to reflect the new formal written policy regarding trespass stops outside TAP buildings, Slip Op. 148; and (4) that SQF Training Video No. 5 be revised to conform with the law, Slip Op. 148.  The Court's extensive findings on the problematic nature of the NYPD's training materials make clear that each of these proposals is necessary to remedy the widespread problem of unconstitutional trespass stops outside of TAP buildings in the Bronx.[6]

In consideration of the evidence presented at the hearing, the Court concluded that "plaintiffs have shown a clear likelihood of proving that city policymakers should have known that their inadequate training and supervision regarding trespass stops outside TAP buildings in the Bronx was so likely to result in the violation of constitutional rights, that their failure to train constituted deliberate indifference."  Slip Op. at 120 (internal quotation marks and footnote omitted).  In particular, it is noteworthy that the Court found that "many of the training materials

---

[6] *See* Slip Op. at 122-34 (describing deficiencies of NYPD training materials in detail).

introduced by defendants may serve to further entrench the problem of these unconstitutional stops." Slip Op. at 123. Further, "[e]ven defendants seemed to recognize that the similarities among the stops described in this case support the conclusion that officers' behaviors were the result of uniform training." Slip Op. at 121. In light of these findings and conclusions, the Court's proposed reforms to the NYPD's training materials and programs are necessary to remedy the problem of unconstitutional trespass stops outside TAP buildings in the Bronx.

### A.      Distribution of New Formal Written Policy on Trespass Stops Outside TAP Buildings

Distribution of the new formal written policy on trespass stops outside TAP buildings is necessary to ensure that all NYPD officers who may conduct such stops are aware of the policy. The NYPD's usual process for training on new interim orders should apply to distribution of the new policy. Specifically, the same "train the trainer" process that the NYPD used to roll out Interim Orders 22 and 23 of 2012—through which precinct-based training sergeants and special operations lieutenants receive training on new policies, and in turn train uniformed officers at the precincts—should apply to the new formal written policy.[7] By utilizing the NYPD's "train the trainer" process, NYPD officers will receive effective instruction on the new policy concerning outdoor trespass stops at TAP buildings.

Plaintiffs submit that all uniformed officers at Bronx precincts should receive training on the new formal written policy within 60 days of its issuance. Plaintiffs further suggest that the

---

[7] Defendants described the "train the trainer" process used for IOs 22 and 23 as follows: "Training personnel, including training sergeants and special operations lieutenants from each precinct, were instructed on Interim Orders 22 and 23 of 2012, with Legal Bureau personnel present for instruction on legal issues, and said training personnel were to train uniformed members at the precinct level on the new procedures." Defs.' Proposed Findings of Fact and Conclusions of Law, dated Nov. 20, 2012, ECF No. 88, at ¶ 32. At the preliminary injunction hearing, Chief Shea explained that training sergeants receive training at the Police Academy on a monthly basis, during which they learn about new policies, such as interim orders. Shea Test., Tr. at 884:24-885:4.

policy should be redistributed twice more: six months after the precinct-based training is completed and again six months later.

### B.    Revisions to Stop, Question, Frisk Training at Rodman's Neck

Revisions to the stop and frisk refresher course at Rodman's Neck are necessary to ensure that NYPD officers are aware of the legal standards that apply to trespass stops conducted outside of TAP buildings in the Bronx.  As the Court found, "the only piece of instruction that has been provided to officers on a systematic basis and that specifically targets the problem at issue in this case is a single bullet point in a single slide show during a single part of the Rodman's Neck training."  Slip Op. at 122 (footnote omitted).  Additional coverage of the legal standards that apply to trespass stops outside of TAP buildings is necessary to ensure that NYPD officers understand those standards.

In the Amended Opinion, the Court suggested that Defendants have an opportunity to devise new portions of the Rodman's Neck training that address the standards for outdoor trespass stops at TAP buildings.[8]  It further noted that drafts of new materials should be provided to the Court for approval prior to use, with a copy to Plaintiffs' counsel.  Slip Op. at 149.

Plaintiffs agree that Defendants should complete an initial draft of proposed revisions to the Rodman's Neck training and suggest that their proposals should be submitted simultaneously to the Court and to Plaintiffs' counsel within 30 days of the Court's order on preliminary injunctive relief.  Plaintiffs request that they be allowed to comment on the proposed revisions within 10 days of Defendants' submission to the Court.  Plaintiffs suggest the Defendants begin using the revised training within 30 days of approval by the Court.  Plaintiffs also respectfully request that if any portion of the new proposed training involves exams completed by officers

---

[8] See Slip Op. at 148 ("Whether the instruction includes additional slides, role-playing, or exams, it must be sufficient to convey to all officers who attend the course that reasonable suspicion of trespass is required before making a trespass stop outside a TAP building.").

who attend the training, Defendants be ordered to provide Plaintiffs' counsel with copies of those documents.

### C.      Revisions to Chief of Patrol's Field Training Unit Guide

Revisions to Chapter 16 of the Chief of Patrol Field Training Guide (the "Training Guide") that reflect the new formal written policy regarding trespass stops outside TAP buildings are necessary.  The Training Guide is primarily used by supervisors assigned to the IMPACT program, through which rookie officers are assigned to certain zones designated throughout the City before they are assigned to precincts.  Hall Test., Tr. at 1221:3-14; 1247:6-10.  IMPACT supervisors have training responsibilities for officers assigned to the program, and one of the purposes of the Training Guide is "to make sure that all of [the covered] topics are reviewed and monitored with the newly assigned uniformed police officers during their training."  McCarthy Test., 698:23-699:1.

The Training Guide includes a chapter that specifically addresses TAP.  *See* Ex. N. at 65 (Bates No. L_NYC006689).  It also addresses stop and frisk policies and procedures.  *See* Ex. N. at 10-24 (Bates Nos. L_NYC006634-48).  The Training Guide does not, however, provide specific guidance on the circumstances under which outdoor trespass stops at TAP buildings are constitutionally permitted.  *See* McCarthy Test., Tr. at 742:5-15; 746:2-6.  Accordingly, incorporating the new formal written policy into the Training Guide is necessary to ensure that all of the NYPD's written guidelines concerning TAP are accurate and consistent.

Plaintiffs suggest that the Court order Defendants to draft revisions of Chapter 16 of the Training Guide and submit it simultaneously to the Court and to Plaintiffs' counsel within 30 days of the Court's order on preliminary injunctive relief.  Plaintiffs request that they be allowed to comment on the proposed revisions within 10 days of Defendants' submission.  Once approved, Plaintiffs propose that the revised version of Chapter 16 be distributed to IMPACT

supervisors within 14 days of approval.  Plaintiffs further propose that the revised version of Chapter 16 be incorporated into a new version of the Training Guide whenever it is next compiled.

**D.     Rescission and Replacement of SQF Training Video No. 5**

Rescission and replacement of SQF Training Video No. 5 are necessary to remedy the problem of unconstitutional trespass stops outside of TAP buildings by reducing confusion among NYPD officers about the definition of a stop.  For the reasons explained by the Court in great detail, SQF Training Video No. 5, "which has now been seen by nearly every officer in the patrol bureau, . . . trains officers that it is acceptable to engage in conduct that amounts to a *Terry* stop without reasonable suspicion."  Slip Op. at 128.  The need to correct the inaccurate information about the legal standard that applies to stops is necessary for two reasons.

First, a replacement for SQF Training Video No. 5 that informs officers of the actual legal standard for stops should improve compliance with that standard.  Second, because SQF Training Video No. 5 teaches officers the incorrect standard for a stop, officers have been instructed— in conflict with NYPD policy—that they do not need to complete UF-250s for encounters that constitute stops.[9]  This training therefore results in underreporting of all stops, necessarily including outdoor trespass stops at TAP buildings.

---

[9] Patrol Guide Section 212.11 and Interim Order 21 of 2010 set forth the NYPD policy on the completion of UF-250s.  *See* Exs. K & CC.  NYPD recruits and officers receive training on the content of those policies.  *See* Shea Test., Tr. at 842:9-17; Tr. at 881:1-13; 971:1-19.  Further, Defendants cited the NYPD's directives to officers to complete UF-250s throughout their post-hearing proposed findings of facts and conclusions of law.  *See* Defs.' Proposed Findings of Fact and Conclusions of Law, ¶ 28 (noting that Interim Order 22 of 2012 requires officers to complete UF-250s when they conduct stops inside TAP buildings); *id.* ¶ 30 ("UF 250 Stop, Question and Frisk worksheets continue to be required if a stop is made upon reasonable suspicion."); *id.* ¶ 40 (noting that the Rodman's Neck training "includes a lesson on the proper preparation of a Stop, Question and Frisk UF 250 worksheet").

Taking steps to correct this underreporting by providing clear instruction to officers that they must complete UF-250s whenever a stop occurs is particularly important.  UF-250s provide the only systematic documentation of stop activity by NYPD officers.  As Chief James Shea explained, "The UF-250 form serves a variety of purposes for the police department.  The first and most important is, it documents that this stop occurred . . . ." Tr. at 847:1-3.  There is simply no reliable way to measure stop activity if officers do not complete UF-250s in the circumstances required by NYPD policy.[10]  Further, if NYPD officers do not receive correct instructions on the circumstances under which they conduct stops and thus are required to complete a UF-250, the Court and the parties will have no reliable way to evaluate trespass stop activity outside TAP buildings.  Thus, replacement of SQF Training Video No. 5 is critically important to ensure that the Court and the parties are able to evaluate whether the reforms ordered by the Court have substantially reduced stops of this kind.

The Court noted that drafts of new training materials should be provided to the Court for approval prior to use, with a copy to Plaintiffs' counsel.  Slip Op. at 149.  Plaintiffs agree that Defendants should complete an initial draft of a script for a new SQF Training Video and suggest that their proposals should be submitted simultaneously to the Court and to Plaintiffs' counsel within 30 days of the Court's order on preliminary injunctive relief.  Plaintiffs request that they be allowed to comment on the proposed script within 10 days of Defendants' submission.

Once approved, Plaintiffs submit that the NYPD should ensure that all officers assigned to Bronx commands view the new training video within 60 days of its approval, in accordance

---

[10] The only way in which NYPD officers are trained to document stop activity besides UF-250s is by making entries in their activity logs.  *See* Shea Testimony, Tr. 879:17-880:5.

with the process by which officers viewed SQF Training Video No. 5.[11]  Plaintiffs further

suggest that officers be required to view the new video two additional times at six-month

intervals.

## III.    SUPERVISION

The Court made two proposals regarding supervisory practices in the Amended Opinion:

(1) that the City "take all necessary steps to ensure that UF-250s are completed for *every* trespass

stop outside a TAP building in the Bronx," Slip Op. at 147; and (2) that the City "implement a

system of review modeled on the one ordered by Chief Hall in paragraph 3 of Exhibit E."  Slip

Op. at 147.  To ensure that the new formal written policy regarding the proper basis for outdoor

trespass stops at TAP buildings and the training about that policy is effective in beginning to

bring an end to unlawful outdoor trespass stops, Plaintiffs submit that both of the Court's

proposed remedies regarding supervisory practices are necessary.  Plaintiffs' position on each

proposal is detailed below.[12]

### A.    Steps to Ensure that NYPD Officers Complete UF-250 Forms When
###          Appropriate

As the Court found in the Amended Opinion, NYPD officers frequently fail to complete

UF-250 forms in connection with trespass stops outside TAP buildings in the Bronx.  For

---

[11] *See* Defs.' Proposed Findings of Fact and Conclusions of Law, at ¶ 42 ("All police officers have been required to view all five parts of the video series, usually at the precinct."); Shea Test. Tr. at 902:20-903:11 (describing distribution of SQF Training Video No. 5 to training sergeants).

[12] The Court also concluded that supervisory deficiencies constituted an independent basis for finding that the NYPD's outdoor trespass stop practices at TAP buildings in the Bronx was unconstitutional.  *See* Slip Op. at 120 ("[P]laintiffs have shown a clear likelihood of proving that there was a sufficiently widespread practice among police officers of unlawful trespass stops outside TAP buildings to support reasonably the conclusion that such abuse was the custom of the officers, and that supervisory personnel must have been aware of it but took no adequate corrective or preventive measures." (internal quotation marks, footnote, and citation omitted)).  This conclusion alone provides a sufficient basis for the Court to order the NYPD to implement the two supervisory practices described in the Amended Opinion.

example, no UF-250s were completed for the stops that the plaintiffs testified about, including two that led to arrests.[13]  For the reasons described above in the discussion of why rescission and replacement of SQF Training Video No. 5 are necessary, ensuring completion of UF-250s for all trespass stops conducted by NYPD officers outside of TAP buildings in the Bronx is critical. *See* pp. 10-11, *supra*.  As the NYPD requires the completion of UF-250s whenever a stop occurs and the NYPD trains all recruits and officers on the completion of UF-250s,[14] Defendants can have no reasonable objection to this proposal.

Plaintiffs suggest that the Court order Defendants to propose specific steps they will take to ensure that officers complete UF-250s for every stop.  Plaintiffs further suggest that Defendants submit such a proposal simultaneously to the Court and to Plaintiffs' counsel within 30 days of the Court's order on preliminary injunctive relief.  Plaintiffs request that they be allowed to comment on Defendants' proposal within 10 days of its submission to the Court.

**B.    Supervisory System to Review Completed UF-250s for Outdoor Trespass Stops at TAP Buildings in the Bronx**

Plaintiffs also agree that the City should "implement a system of review modeled on the one ordered by Chief Hall in paragraph 3 of Exhibit E."[15]  More specifically, the Court proposed as follows:

---

[13] *See* Slip Op. at 40 ("Officer Santiago failed to complete the UF-250 form he was required to fill out for Bradley's stop."); Slip Op. at 46 n.144 ("Like Officer Santiago after Bradley's stop, Officer Ramdeen also failed to complete the required UF-250 form for his stop of Turner."); Slip Op. at 132 ("The NYPD's training failures may also help to explain why no UF-250s were located for any of the plaintiffs in the instant case.")

[14] *See* p. 10 & n.9, *supra*.

[15] Paragraph 3 of Exhibit E, a memorandum from the Chief of the Patrol Services Bureau to the commanding officers of all Patrol Boroughs, provides as follows:

> Platoon Commanders will critique (P.G. 202-13) all situations where either an
> interior or exterior street encounter occurred and required a Stop Question and

> Supervisory personnel in each Bronx precinct must review, on a quarterly basis, each UF-250 completed for a trespass stop outside a TAP building in the Bronx. To the extent that such review reveals nonconformity with the formal written policy described above, the City will take specific steps to retrain the officer. The results of these reviews and any retraining will be periodically reported to the relevant precinct commander, a designated member of the Bronx Borough Command, a designated member of the Chief of Patrol's Office, and plaintiffs' counsel. Copies of all reviewed UF-250s shall be provided to plaintiffs' counsel.

Slip Op. at 146.

Plaintiffs agree that these steps are necessary to improve the supervision of NYPD officers who conduct stops outside of TAP buildings.[16] Plaintiffs submit, however, that along with copies of the UF-250s actually reviewed on a quarterly basis, Defendants should be required to provide Plaintiffs with certain additional information concerning stop activity to ensure that all outdoor trespass stops at TAP buildings in the Bronx have been reviewed.[17]

As of July 2012, over 3,200 buildings were enrolled in TAP in the Bronx. McCarthy Testimony, Tr. at 775:7-8. Before then, there was no complete count of TAP buildings. *Id.* at 775:13-14 ("Before [July 2012], we did not have an accounting of the FTAP buildings citywide

---

> Frisk Report Worksheet to be prepared (Uf-250). In addition, Platoon Commanders *MUST* ensure that any encounters based on *Reasonable Suspicion* are carried out in accordance with **P.G. 212-11 and I/O #22s12.**

(Emphases in original.)

[16] At the preliminary injunction hearing, the City presented no evidence that the supervisory review described in paragraph 3 of Exhibit E had actually been implemented in Bronx precincts. *See* McCarthy Test., Tr. at 759:6-15 (Executive Officer of the Patrol Services Bureau testified that he had no personal knowledge of whether supervisors were reviewing and critiquing stops in accordance with paragraph 3 of Exhibit E).

[17] Plaintiffs proposed that supervisory personnel in each Bronx precinct be required to conduct routine reviews of UF-250s completed in connections with outdoor trespass stops at TAP buildings in the Bronx. Pls.' Proposed Findings of Fact and Conclusions of Law, at ¶ 74. While Plaintiffs would prefer that such reviews take place more often than on a quarterly basis, Plaintiffs accept that quarterly reviews are sufficiently frequent for the initial six-month period for which the Court will determine whether the initial remedial relief has been effective.

that I am aware of.").[18]  Now, pursuant to Interim Order 23 of 2012, once a building has been

enrolled in TAP for six months, the Crime Prevention Officer in each precinct is required to

confer with the precinct commanding officer and evaluate whether the building should remain in

the program.  *See* Ex. B at 2.  An additional review must take place once a building has been

enrolled for one year.  *Id.*  In accordance with these new reviews, the roster of buildings enrolled

in TAP can be expected to change regularly.  In short, significant changes to administration of

TAP have occurred in the last year.

　　　Plaintiffs submit that Defendants should submit additional information about stop activity

besides copies of the UF-250s reviewed in order to ensure that the quarterly reviews encompass

all stops at buildings that are actually enrolled in the program.  Specifically, Plaintiffs suggest

that the City should also be ordered to provide Plaintiffs' counsel with updated rosters of

buildings enrolled in TAP and the entire UF-250 database for the Bronx on a quarterly basis.

　　　With copies of the UF-250s actually reviewed, access to the entire UF-250 database, and

the most recent rosters of TAP buildings, Plaintiffs will be able to determine whether the UF-

250s reviewed by supervisory personnel actually comprised the entire universe of UF-250s that

should have been reviewed.  That is, with the entire database and the rosters, Plaintiffs will be

able to identify which UF-250s they believe should have been reviewed, and compare them to

those actually reviewed.

　　　Plaintiffs submit that the City should be required to conduct the proposed reviews and

provide the additional information identified above for at least two quarters following

implementation of the new formal written policy on trespass stops outside TAP buildings.

---

[18] Interim Order 23 of 2012 ("IO 23 of 2012), which was issued in May 2012, was the first
NYPD policy to provide uniform standards and procedures for enrolling buildings in TAP.  *See*
Slip Op. at 86 ("IO 23 of 2012 addresses various administrative issues relating to TAP, including
procedures for enrolling buildings in the program.").

15

Plaintiffs suggest that at the end of those two quarters, the Court and the parties will be able to evaluate whether this relatively modest set of remedies has begun to end the practice of unconstitutional outdoor trespass stops at TAP buildings in the Bronx.  If it has not, Plaintiffs will urge the Court to consider requiring the NYPD to implement additional supervisory measures.

With respect to timing, Plaintiffs suggest that the first review take place three months after the command-based training has been completed.  Plaintiffs further propose that Defendants provide Plaintiffs' counsel with copies of all UF-250s reviewed, rosters of any and all buildings enrolled in TAP in the Bronx since July 2012, and the complete UF-250 database for the Bronx within 30 days of the review being completed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court implement the remedial relief proposed in the Amended Opinion.  A summary of the proposed relief and a proposed schedule for its implementation is summarized in an appendix to this brief.

Respectfully submitted,


   s/  Alexis Karteron
Alexis Karteron
Christopher Dunn
Daniel Mullkoff
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, New York 10004
(212) 607-3300
akarteron@nyclu.org

Mariana Kovel
The Bronx Defenders
860 Courtlandt Avenue
Bronx, New York 10451

Juan Cartagena
Foster Maer
Roberto Concepcion, Jr.
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, New York 10013

J. McGregor Smyth, Jr.
New York Lawyers for the Public Interest
151 West 30th Street, 11th Floor
New York, New York 10001

John A. Nathanson
Tiana Peterson
Michael Grunfeld
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

**APPENDIX**

| Remedial Measure | Proposed Schedule |
|---|---|
| 1) Adopt a formal written policy setting forth the limited circumstances under which outdoor trespass stops at TAP buildings are permissible | • Defendants submit draft to Court within 30 days of order on preliminary relief<br>• Plaintiffs comment on proposal within 10 days |
| 2) Distribute the new formal written policy on outdoor trespass stops to all members of the NYPD assigned to Bronx commands | • Defendants distribute new formal written policy within 60 days of Court's approval<br>• Repeat distribution twice at six-month intervals |
| 3) Using the NYPD's "train the trainer" process, conduct command-based training on the new formal written policy | • Defendants ensure training completed within 60 days of Court's approval of new formal written policy |
| 4) Revise the Rodman's Neck "refresher course" on stop and frisk practices to incorporate the new formal written policy | • Defendants submit draft revisions to Court within 30 days of order on preliminary relief<br>• Plaintiffs comment on proposal within 10 days<br>• Defendants begin implementation within 30 days of Court's approval |
| 5) Amend the Chief of Patrol's Field Training Unit Guide by incorporating the new formal written policy | • Defendants submit draft revisions to Court within 30 days of order on preliminary relief<br>• Plaintiffs comment on proposal within 10 days<br>• Defendants distribute revised section to IMPACT supervisors within 14 days of Court's approval |
| 6) Rescind Stop, Question and Frisk Video No. 5 and replace it with a new film that sets forth the correct legal standard for stops | • Defendants submit proposed replacement to Court within 30 days of order on preliminary relief<br>• Plaintiffs comment on proposal within 10 days<br>• Defendants ensure viewing by officers within 60 days of approval and two additional times at six-month intervals |
| 7) Take steps to ensure that NYPD officers complete UF-250s in all circumstances when they conduct stops | • Defendants submit proposal to Court within 30 days of order on preliminary relief<br>• Plaintiffs comment on proposal within 10 days |
| 8) Set up a process by which supervisory personnel conduct quarterly reviews of UF-250s completed in connection with trespass stops outside TAP buildings in the Bronx | • First review to commence three months after command-based training<br>• Repeat review three months after initial review |
| 9) Following each supervisory review of UF-250s, provide Plaintiffs' counsel with the following: copies of all UF-250s reviewed in the new supervisory review process, complete rosters of all buildings enrolled in TAP in the Bronx since July 2012, and the complete UF-250 database for the Bronx | • Defendants make production within 30 days of completion of each review |