UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JAENEAN LIGON, et al.                             :
                                                  :
                                                  :
                      Plaintiffs,                 :
                                                  :          12 Civ. 2274 (SAS)(HBP)
          -versus-                                :
                                                  :
CITY OF NEW YORK, et al.                          :
                                                  :
                                                  :
                      Defendants.                 :
-----------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO POLICE UNIONS' MOTION TO INTERVENE

Mariana Kovel                          Alexis Karteron
Scott Levy                             Christopher Dunn
The Bronx Defenders                    Daniel Mullkoff
860 Courtlandt Avenue                  New York Civil Liberties Union
Bronx, New York 10451                      Foundation
                                       125 Broad Street, 19th Floor
Juan Cartagena                         New York, New York 10004
Foster Maer
Roberto Concepcion, Jr.                John A. Nathanson
LatinoJustice PRLDEF                   Jeffrey Resetarits
99 Hudson Street, 14th Floor           Michael Grunfeld
New York, New York 10013               Shearman & Sterling LLP
                                       599 Lexington Avenue
J. McGregor Smyth, Jr.                 New York, New York 10022
New York Lawyers for the Public Interest
151 West 30th Street, 11th Floor
New York, New York 10001               Counsel for Plaintiffs

Dated:  New York, New York
          October 11, 2013

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 3

    I.   The Police Unions Are Not Entitled to Intervention As of Right ......................... 3

       A.   The Motion is Untimely and Intervention Would Substantially Prejudice Plaintiffs. ..... 4

       B.   The Police Unions Possess No Direct, Legally Protectable Interest in this Action. ........ 6

       C.   The Police Unions Can Protect Any Collateral Interest Through State Law Channels. 11

       D.   Even if the Police Unions Possess an Interest in this Action, Existing Defendants Adequately Represent that Interest. ................................................................. 12

    II.   The Police Unions Are Not Entitled to Permissive Intervention. ....................... 14

    CONCLUSION ....................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Afro Am. Patrolmen's League v. Duck,*
  503 F.2d 294 (6th Cir. 1974) ............................................................................... 13

*Alston v. Coughlin,*
  109 F.R.D. 609 (S.D.N.Y. 1986) ........................................................................ 11

*Am. Nat. Bank & Trust Co. of Chicago v. City of Chicago,*
  865 F.2d 144 (7th Cir. 1989) .............................................................................. 11

*In re Bank of New York Derivative Litig.,*
  320 F.3d 291 (2d Cir. 2003) .................................................................................. 4

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
  250 F.3d 171 (2d Cir. 2001) ............................................................................... 11

*Catanzano v. Wing,*
  103 F.3d 223 (2d Cir.1996) ............................................................................. 3, 6

*CBS, Inc. v. Snyder,*
  798 F. Supp. 1019 (S.D.N.Y. 1992) .................................................................. 10

*City of New York v. MacDonald,*
  607 N.Y.S.2d 24 (1st Dep't. 1994) ....................................................................... 8

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) .............................................................................. 3, 5

*Diamond v. Charles,*
  476 U.S. 54 (1986) ............................................................................................. 13

*Donaldson v. United States,*
  400 U.S. 517 (1971) ....................................................................................... 6, 11

*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1988) ........................................................................... 6, 8

*E.E.O.C. v. A.T.&T. & Co.,*
  506 F.2d 735 (3d Cir. 1974) ................................................................................. 9

*Edwards v. City of Houston,*
  78 F.3d 983 (5th Cir. 1996) ........................................................................ 10, 13

*Eng v. Coughlin*,
  865 F.2d 521 (2d Cir. 1989) ........................................................................... 9, 11

*Hollingsworth v. Perry*,
  133 S. Ct. 2652 (2013) ................................................................................... 13

*In re Holocaust Victim Assets Litig.*,
  225 F.3d 191 (2d Cir. 2000) ....................................................................... 3, 4, 5

*Local No. 93, Int'l Ass'n of Firefighters. v. City of Cleveland*,
  478 U.S. 501 (1986) ........................................................................................ 13

*Patricia Hays Assocs., Inc. v. Cammell Laird Holdings U.K.*,
  339 F.3d 76 (2d Cir. 2003) ............................................................................... 4

*Penick v. Columbus Ed. Ass'n*,
  574 F.2d 889 (6th Cir. 1978) .......................................................................... 12

*Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*,
  725 F.2d 871 (2d Cir. 1984) .............................................................................. 6

*Rios v. Enter. Ass'n Steamfitters Local Union No. 638 of U. A.*,
  520 F.2d 352 (2d Cir. 1975) .............................................................................. 4

*Sheppard v. Phoenix*,
  No. 91 Civ. 4148, 1998 WL 397846 (S.D.N.Y. July 16, 1998) ........................... 8, 9

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) .......................................................................... 10

*U.S. Postal Serv. v. Brennan*,
  579 F.2d 188 (2d Cir. 1978) ................................................................... 11, 13, 14

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ............................................................................. 9

*United States v. City of New Orleans*,
  No. 12-cv-1924 (E.D. La. Aug. 31, 2012), *aff'd*, No. 12-30972, 2013 WL 5405502
  (5th Cir. Sept. 27, 2013) ............................................................................... 8, 13

*United States v. City of Portland*,
  No. 3:12-cv-02265 (D. Or. Feb. 19, 2013) ......................................................... 9

*United States v. City of New York*,
  No. 07-CV-2067, 2012 WL 314353 (E.D.N.Y. Feb. 1, 2012), *aff'd in part,
  vacated in part on other grounds*, 717 F.3d 72 (2d Cir. 2013) ........................... 12

*W. Irondequoit Teachers Ass'n v. Helsby*,
  315 N.E.2d 775 (1974) ........................................................................... 9

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990) ................................................................. 4, 6

*Yniguez v. Arizona*,
  939 F.3d 727 (9th Cir. 1991), *rev'd on other grounds sub nom.*
  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 44-45 (1997) .................................... 13

## Rules and Regulations

Fed. R. Civ. P. 1 ................................................................................ 4

Fed. R. Civ. P. 24 ......................................................................... *passim*

N.Y. City Admin. Code § 12-307(b) ...................................................... 7, 8

## Other Authorities

Fed. R. Civ. P. 1 advisory committee's note (1993) ..................................... 4

Wright & Miller, 7C Fed. Prac. & Proc. § 1908 (3d ed.) ............................... 13

Wright & Miller, 7C Fed. Prac. & Proc. § 1916 (3d ed.) ............................... 14

# INTRODUCTION

Plaintiffs oppose intervention by proposed intervenor-defendants Patrolmen's Benevolent Association of the City of New York, Inc., the Detectives' Endowment Association, Inc., the NYPD Captains Endowment Association, and the Lieutenants Benevolent Association of the City of New York, Inc. (collectively, "Movants" or "Police Unions").  For the reasons below, Movants are not entitled to intervene in this action.

As they cannot meet all four of Rule 24(a)(2)'s requirements, Movants are not entitled to intervention as of right.  First, given that the Court granted Plaintiffs' preliminary injunction motion and proposed specific relief related to the motion in January, and that Movants failed to intervene or assert any objection throughout eight months of detailed consideration of remedies, their entry as parties at this late date would unduly delay the resolution of this matter and prejudice Plaintiffs.  Second, Movants fail to demonstrate how this case impairs any significant protectable interest relating to the subject of the litigation.  The contemplated relief addresses changes to policies and procedure, supervision, and training—areas that implicate the City's management prerogatives, which are not subject to collective bargaining.  Third, nothing in the contemplated relief threatens to impair the protection of any collateral interest through the normal channels: collective bargaining and review by New York agencies and courts.  Fourth, Movants have failed to show how any putative interest is not already protected by the City of New York and the police officers named as defendants.  Any one of these reasons constitutes sufficient grounds for denying the motion to intervene as of right.

Nor are Movants entitled to permissive intervention.  They assert no claims or defenses that share a common question of law or fact with the action, and intervention would unduly delay the resolution of this action and prejudice Plaintiffs.

1

**BACKGROUND**

Plaintiffs brought this lawsuit in March 2012, challenging the NYPD's practice of stopping, questioning, frisking, summonsing, and arresting people on suspicion of trespass without any lawful basis in and around buildings enrolled in the Trespass Affidavit Program ("TAP").  The following month, Plaintiffs informed the Court that they would move for a preliminary injunction to remedy the problem of unconstitutional trespass stops outside of TAP buildings in the Bronx.  The parties then engaged in expedited discovery and briefing, culminating in October in a seven-day evidentiary hearing.  In January 2013, the Court issued a widely publicized 157-page ruling granting the preliminary injunction motion, ordering immediate relief, and proposing additional relief.  Opinion & Order, Jan. 8, 2013.  The City promptly filed a notice of appeal.

In an amended opinion, the Court ordered the NYPD "immediately to cease performing trespass stops outside TAP buildings in the Bronx without reasonable suspicion of trespass" Amended Opinion & Order at 143, Feb. 14, 2013 ("Amended P.I. Op."), but noted that it had stayed this relief, *id.* at 150.  The Court also proposed additional specific remedial provisions regarding policies and procedures, supervision, and training, as to which it ordered the parties to submit briefs addressing "whether the proposed relief is insufficient or too burdensome or otherwise inappropriate," *Id.* at 145.

Following the ruling, the parties submitted detailed proposals and counterproposals aimed at fine tuning the Court's proposed relief.  *See* Pls.' Post-Hearing Br. on Proposed Remedial Relief, dated Mar. 4, 2013 (ECF 108); Defs.' Br. on Proposed Remedial Relief, dated Apr. 11, 2013 (ECF 109).  In July and August, the parties completed another round of briefing regarding the Court's remedial proposals.  *See* Defs.' Proposed Remedial Relief, dated July 8,

2

2013 (ECF 112); Pls.' Br. Concerning Def's' Remedial Proposals, dated July 24, 2013 (ECF 117); Defs.' Reply Mem. on Proposed Remedial Relief, dated Aug. 2, 2013 (ECF 118).

In August, the Court imposed another order concerning preliminary injunctive relief, delegating to the Monitor oversight over the proposed relief from the Amended P.I. Opinion. *See* Opinion & Order, Aug. 12, 2013 at 33 ("Remedies Op.").[1]  At no time during this litigation—whether during consideration of the motion for preliminary injunction or during the months-long exchange of proposals regarding the court's proposed additional relief—did the Police Unions seek to weigh in to protect the purported interests they now assert.

## ARGUMENT

### I.      The Police Unions Are Not Entitled to Intervention As of Right.

Under Federal Rule of Civil Procedure 24(a)(2), intervention as of right is permitted only if the putative intervenor meets its burden of making all of the following showings: (1) its motion for intervention is timely; (2) it has an interest relating to the property or transaction which is the subject of the litigation; (3) its interest would be impaired by the outcome of the litigation; and (4) its interest is not adequately protected by the existing parties.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001); *see also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000) (citing *Catanzano v. Wing,* 103 F.3d 223, 232 (2d Cir. 1996)). Denial of the motion to intervene is proper if the proposed intervenor fails to prove any of these requirements.

---

[1]      In 2012, the NYPD made other changes to policies and training related to TAP that were not ordered by the Court.  Soon after the initiation of this lawsuit, the NYPD promulgated Interim Orders 22 and 23, which instruct officers on TAP enforcement and administration. Amended P.I. Op. at 82-93.  In addition, in the spring of 2012, the NYPD instituted a "refresher" course on stop, question, and frisk practices.  The program includes all members of the NYPD with the rank of police officer; over 8,000 had attended the course as of August 12, 2013.  Decl. of James O'Keefe, dated Sept. 13, 2013, at ¶ 9, attached as Exhibit A to the Declaration of Alexis Karteron, dated Oct. 11, 2013.  As the Court has already found, however, these measures failed to address unlawful outdoor TAP stops.  Amended P.I. Op. at 90.

*See In re Holocaust Victims Assets Litig.*, 225 F.3d at 197; *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990). This Court "is entitled to the full range of reasonable discretion in determining whether these requirements have been met." *Rios v. Enter. Ass'n Steamfitters Local Union No. 638 of U. A.*, 520 F.2d 352, 355 (2d Cir. 1975); *see also Patricia Hays Assocs., Inc. v. Cammell Laird Holdings U.K.*, 339 F.3d 76, 80 (2d Cir. 2003) (holding that denial of intervention will not be reversed absent district court's abuse of discretion). As detailed below, Movants fail to meet any—let alone all—of these requirements.

### A. The Motion is Untimely and Intervention Would Substantially Prejudice Plaintiffs.

Rule 24(a) requires a movant to show that its motion is timely. Whether a movant's application is timely is a determination subject to the Court's discretion. *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003). Relevant considerations include "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.* (internal quotation omitted). Moreover, Rule 24 should be "construed and administered to secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1; *see also* Fed. R. Civ. P. 1 advisory committee's note (1993) ("The purpose of this revision, adding the words 'and administered' to the second sentence, is to recognize the affirmative duty of the court to exercise the authority conferred by these rules <u>to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay</u>.") (emphasis added).

As Movants acknowledge, "[t]he Court's opinions in this matter have generated substantial public notice," Intervenors' Mem. of Law at 11, yet they fail to offer any explanation for why they waited until now to apply for intervention. Movants claim to be "filing this motion

shortly after the Court has issued its Liability and Remedies Opinions for the purpose of participating in the remedial proceedings," Intervenors' Mem. of Law at 9, but as described below, this simply is not true with respect to the *Ligon* preliminary injunction motion.

In January, the Court proposed very specific remedies regarding policies and procedures, supervision, and training, as to which it ordered the parties to submit briefs addressing "whether the proposed relief is insufficient or too burdensome or otherwise inappropriate," Amended P.I. Op. at 145. Over eight months elapsed between the Court's announcement of the relief it contemplated ordering and Movants' application. In the interim, per the Court's orders, the parties sought to reach agreement on the fine points of the remedies, submitting detailed proposals and counterproposals with meticulous attention to the language of the remedial provisions and to the appropriate timeline for their adoption. *See* Remedies Op. at 32. After another round of briefing and argument on remedies, the Court issued another order regarding preliminary injunctive relief, largely adopting the proposed relief from its earlier opinion and delegating to the Monitor oversight of the fine details of implementation. Remedies Op. at 32.

Movants ignore these events and erroneously conflate the procedural posture in *Floyd* with that of this case. Intervenors' Mem. of Law at 9-10. In so doing, they fail to show how their motion is timely in <u>this</u> case, in which their motion is made eight months after the Court found liability. In fact, Movants' entry as parties at this late date would cause significant prejudice to Plaintiffs, in two ways. First, it would threaten to render idle the Court's and parties' careful consideration of, and dialogue concerning, the appropriate remedies. *See D'Amato*, 236 F.3d at 83-84 (upholding denial of intervention where applicant had notice of interest in action and intervention "would potentially derail the settlement and prejudice the existing parties, who had been engaging in settlement negotiations for several months"); *In re*

*Holocaust Victims Assets Litig.*, 225 F.3d at 198-99 (same); *Catanzano v. Wing*, 103 F.3d at 233 (rejecting, as sufficient justification for delay, argument that delay occurred because order triggering need to intervene came as "total surprise," and reasoning that applicants should have known that issue addressed by order had been "clearly present in the litigation from the very beginning"). Second, as the Court found in denying the City's stay request, the inevitable delay in the entry and implementation of relief would result in more unconstitutional trespass stops, causing irreparable harm to Plaintiffs. Opinion & Order at 10, dated Sept. 17, 2013 ("[V]iolation of one's constitutional rights constitutes irreparable harm.").

Finally, Movants would suffer no prejudice if their application is denied, because, as explained below, they have no direct interest to protect in this action. For these reasons, Movants' application to intervene is not timely.

## B. The Police Unions Possess No Direct, Legally Protectable Interest in this Action.

In order to intervene as of right, a movant must demonstrate that it possesses "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). This interest must "be direct, substantial, and legally protectable." *Wash. Elec.*, 922 F.2d at 97 (citations omitted); *accord Donaldson v. United States*, 400 U.S. 517, 531 (1971) (requiring "significantly protectable interest"); *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984) ("[S]uch an interest must be direct, as opposed to remote or contingent."). Thus, no protectable interest exists unless the specific remedy that the plaintiff seeks implicates the potential intervenor's significant interest. *Wash. Elec.*, 922 F.2d at 97 ("An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."); *see also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (holding that "significant

protectable interest" exists only where (1) intervenor asserts interest protected under some law; and (2) there is "relationship" between that interest and plaintiff's claims."

Movants possess no "direct, substantial, and legally protectable" interest in this litigation. Their claimed interest rests on the requirement that the City negotiate with them regarding matters within the scope of collective bargaining, and the prohibition against the City making unilateral changes "as to any term and condition of employment established in prior contract, during a period of negotiations," Intervenors' Mem. of Law at 5 (internal quotation marks and citation omitted). Both of these arguments must fail: None of the ordered relief would infringe on Movants' bargaining rights because none is within the scope of bargaining under New York law. Further, Movants fail to cite any section of a collective bargaining agreement that would conflict with the contemplated remedies. As such, they have no "direct, substantial, and legally protectable" interest in this litigation.

Movants selectively quote the New York City Collective Bargaining Law for the proposition that they have the right to bargain with the City over "all matters within the scope of collective bargaining," *id.*, but that law is fatal to their claim. Under that law, management enjoys broad rights, including *inter alia*, the power to "determine the standards of services to be offered;" "direct its employees;" "take disciplinary action;" "maintain the efficiency of governmental operations;" "determine the methods, means and personnel by which government operations are to be conducted;" "determine the content of job classifications;" and "exercise complete control and discretion over its organization." N.Y. City Admin. Code § 12-307(b). As such, the "[d]ecisions of the city or any other public employer on those matters are not within the scope of collective bargaining," *id.*

In this case, the remedial provisions contemplate improvements in policies and procedure, supervision, and training—management prerogatives that are not within the scope of collective bargaining. *See Sheppard v. Phoenix*, No. 91 Civ. 4148, 1998 WL 397846 (S.D.N.Y. July 16, 1998) (denying union's application for intervention where settlement provisions were covered by management rights provisions of N.Y. City Admin. Code § 12-307(b)); *accord United States v. City of New Orleans*, No. 12-cv-1924, at *18-19 (E.D. La. Aug. 31, 2012) (denying intervention where consent decree did not impact or impair employment rights guaranteed under civil service system),[2] *aff'd*, No. 12-30972, 2013 WL 5405502 (5th Cir. Sept. 27, 2013). Therefore, the City could impose the relief contemplated by the Court and the Police Unions would have no say in the matter. *See, e.g.*, *City of New York v. MacDonald*, 607 N.Y.S.2d 24, 25 (1st Dep't. 1994) (holding that police discipline, "including the right to determine guilt or innocence of breach of disciplinary rules and the penalty to be imposed upon conviction," is committed to NYPD Commissioner and that City cannot be forced to bargain on this subject). This is evident from the fact that the Police Unions do not claim to have presented any grievance or otherwise to have objected to the steps taken by the NYPD after this lawsuit was filed to reform TAP and train officers, and from the absence in their submissions of any citation to the provisions of their collective bargaining agreements.

Further, while the Police Unions may be permitted to bargain over the "practical impact" of managerial decisions on terms and conditions of employment, the decisions themselves are exclusively within the City's managerial prerogative. *See* N.Y. Admin. Code § 12-307(b) (unions entitled to bargain about "the practical impact that decisions on [certain matters of policy] have on terms and conditions of employment"). Thus, in the education setting, the fixing

---

[2]     The decision is attached as Exhibit B to the Karteron Declaration.

8

of class size falls within managerial prerogative, but because it impacts teacher workload, the

impact on the teachers (*e.g.*, whether compensation should vary according to class size) is

subject to negotiation. *In re: W. Irondequoit Teachers Ass'n v. Helsby*, 315 N.E.2d 775, 776-77

(1974). So too here:  The unions have no right to bargain over changes to the policies,

procedures, supervision, and training—as those are decisions committed to managerial

prerogative—but they may have a right bargain over follow-on issues related to workload that

may result from such decisions.  Any such right is not implicated in this action.[3]

Movants cite a few cases for the proposition that "federal courts routinely grant

intervention by unions" where "collective bargaining may be undermined," Intervenors' Mem. of

Law at 12, but those cases are inapposite.  In *United States v. City of Los Angeles*, 288 F.3d 391

(9th Cir. 2002), *United States v. City of Portland*, No. 3:12-cv-02265 (D. Or. Feb. 19, 2013),[4]

and *E.E.O.C. v. A.T.&T. Co.*, 506 F.2d 735 (3d Cir. 1974), it was undisputed that implementation

---

[3]      Moreover, even if Movants' collective bargaining rights were at issue—and they are
not—"the circumstances presented here also raise the issue of public policy transcending the
general statutory collective bargaining scheme[.]" *Sheppard*, 1998 WL 397846, at *7.  New
York courts have historically denied parties the right to negotiate subjects that would be contrary
to public policy. *Id.* (citing cases limiting the rights of parties to collectively bargain).  As one
district court held in denying a correctional officer union's motion to intervene: "There is no
more compelling public policy than compliance with the mandates of the United States
Constitution.  It is self-evident that if, as a matter of public policy [other issues fall outside
collective bargaining rights], then clearly the responsibilities conferred upon the City of New
York. . ., by the federal courts, for safeguarding the constitutional rights of [persons stopped and
frisked] cannot be delegated, abnegated or surrendered through collective bargaining."  *Id.*, at *8.
*See also Eng v. Coughlin,* 865 F.2d 521, 526 (2d Cir. 1989) ("If part of the relief fashioned by
the court directs changes in the state's practices regarding staffing and training in the SHU, the
constitutional necessity of effecting those changes will outweigh any burdens imposed on the
collective bargaining agreement that such changes might require.  The fact that the contract
provides methods for the hiring, training and safety of the guards does not justify the continuance
of any constitutional violations.").

[4]      The Court's opinion and order in *City of Portland* is attached as Exhibit C to the Karteron
Declaration.

9

of the consent decree would affect the state statutory and contractual rights of the intervening

unions.  Moreover, in each case, the intervening union set out the specific statutory and/or

contractual provisions that would be affected.  *See, e.g.*, Br. of Intervenor-Appellant Los Angeles

Police Protective League, *City of Los Angeles*, 2001 WL 34093539, at *20 (filed May 8, 2001)

(explaining that consent decree conflicted with several specific provisions of collective

bargaining agreement and would trigger "meet and consult" requirements under California law,

and citing two declarations describing, on a section-by-section basis, key inconsistencies

between collective bargaining agreement and consent decree); Br. of Intervenor-Def. Portland

Police Ass'n, *City of Portland*, at 12-26 (filed Dec. 18, 2012) (explaining that proposed consent

decree conflicted with numerous sections of the collective bargaining agreement).[5]  Unlike those

cases, here, the original parties never have suggested that the contemplated remedies implicate

the Police Unions' bargaining rights.  Moreover, Movants have made no such showing.  And, as

discussed above, the remedies in fact will not interfere with those rights.[6]

In sum, Movants have no plausible claim that the remedies at issue in this action interfere

with their bargaining rights.  Accordingly, they have no direct, legally protectable interest in this

action that entitles them to intervene.

---

[5]     A relevant excerpt of the Portland Police Association's brief in *City of Portland* is
attached as Exhibit D to the Karteron Declaration.

[6]     The other cases Movants cite in this regard are factually inapposite.  In *Stallworth v.
Monsanto Co.*, the putative intervenors were not unions but individual employees forced into
lower paying jobs. 558 F.2d 257, 262 (5th Cir. 1977).  In *CBS, Inc. v. Snyder*, CBS managers
sought a stay of arbitration proceedings initiated by Snyder pursuant to a collective bargaining
agreement between CBS and the union. 798 F. Supp. 1019, 1021 (S.D.N.Y. 1992) (permitting
intervention where "interpretation and/or enforceability of the arbitration provisions" was central
to the case).  In *Edwards v. City of Houston*, the consent decree in a Title VII employment
discrimination lawsuit reserved a specific number of promotions to African American and
Hispanic-American officers.  78 F.3d 983, 991-92 (5th Cir. 1996).  Citing the preclusive effect of
the decree on the intervenors' rights under Title VII, the court allowed groups of white, Asian-
American, and female officers to intervene.  *Id.* at 989.

**C.  The Police Unions Can Protect Any Collateral Interest Through State Law Channels.**

A movant next must show that it is "so situated that disposing of the action may as a practical matter impair or impede" its ability to protect its putative interest. Fed. R. Civ. P. 24(a)(2).  Thus, even if a lawsuit may affect a proposed intervenor's interests, those interests are not practically impaired—and thus intervention is unwarranted—if the proposed intervenor has other means of protecting their interest.  Impairment exists where "a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Am. Nat. Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 147-48 (7th Cir. 1989) (internal quotation omitted) (denying intervention where union could protect its members through contract negotiations).

Here, Movants have no direct interest in the case and can protect any collateral interest through the normal channels:  collective bargaining and resort to New York courts.  *See Eng*, 865 F.2d at 526 (in case seeking injunctive relief to protect inmates' constitutional rights, holding that there would be "ample opportunity later . . . to negotiate those alterations to ensure that the guards' interests are not unduly compromised"); *see also Alston v. Coughlin*, 109 F.R.D. 609, 613 (S.D.N.Y. 1986) (denying intervention to correction officers union in prison overcrowding case, where impairment of union's ability to protect its interest in seniority staffing was "too remote to justify its intervention"); *accord Donaldson*, 400 U.S. at 530-31 (denying intervention to taxpayer in IRS summons proceeding against taxpayer's employer and accountant, finding that taxpayer "may always assert that interest or that claim in due course at its proper place in any subsequent trial").  On this point, it is notable that the City has never—whether in conferences with the court; negotiations with Plaintiffs, or in its papers—indicated that its ability to implement the contemplated relief was constrained by municipal labor law or the Police

11

Unions' collective bargaining agreements.  *See* Defs.' Br. on Proposed Remedial Relief, dated

Apr. 11, 2013 (ECF 109); Defs.' Proposed Remedial Relief, dated July 8, 2013 (ECF 112);

Defs.' Reply Mem. on Proposed Remedial Relief, dated Aug. 2, 2013 (ECF 118).

**D.  Even if the Police Unions Possess an Interest in this Action, Existing Defendants Adequately Represent that Interest.**

Even where a lawsuit may impair a movant's direct, legally protectable interest,

intervention is not warranted unless a movant meets its burden of showing that "existing parties

[do not] adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  At a minimum, a movant

must "overcome the presumption of adequate representation that arises when it has the same

ultimate objective as a party to the existing suit."  *U.S. Postal Serv. v. Brennan*, 579 F.2d 188,

191 (2d Cir. 1978); *see also Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 180 (2d

Cir. 2001) (holding that putative intervenor's burden is "more rigorous" if existing party shares

"same ultimate objective.").  Movants do not overcome that presumption here.

The City has been a tireless adversary, litigating this case to the hilt.  Movants do not

dispute this fact, and have no new arguments or evidence to offer in this case—except for their

erroneous claim that the remedies will intrude on their collective bargaining rights.  Movants fail

to present *any* specific difference of opinion with the City that might indicate that it inadequately

represents their interests.  Their vague claim that "unions and their employers do not, as a

general matter, have an identity of interests," Intervenors' Mem. of Law at 13, fails to show

concretely how the City's interests in this case depart from theirs.  *See, e.g.*, *United States v. City*

*of New York*, No. 07-CV-2067, 2012 WL 314353, at *2-3 (E.D.N.Y. Feb. 1, 2012)

(distinguishing union's interest in firefighter safety—which city adequately represents—from

interest in priority hiring, which city might not), *aff'd in part, vacated in part on other grounds*,

717 F.3d 72 (2d Cir. 2013); *Penick v. Columbus Educ. Ass'n*, 574 F.2d 889, 890-91 (6th Cir.

1978) (upholding denial of intervention where teachers union "provided no specific example" to suggest that the board of education had not represented the interests of school teachers); *City of New Orleans*, No. 12-cv-1924 (E.D. La.), Op. & Order at *21-22 (denying intervention to police associations even though government and associations "may differ on some aspects of implementation" of consent decree, where disagreements were "for the most part . . . [un]articulated"); *cf. Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (permitting intervention due to "sharp disalignment" between police department and unions).  Moreover, Movants make no showing whatsoever as to how the existing police-officer Defendants have failed to adequately represent their fellow union members' interests.  *See Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (denying police unions intervention where 15 patrolmen were parties on the side on which unions sought to intervene).

Finally, Movants make passing reference to the possibility of the Defendants dropping their appeal or settling this case.  Intervenors' Mem. of Law at 14.  In either event, it is long settled that to continue litigating the case, the Police Unions would have to establish standing independent of the Defendants.  *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659, 2661 (2013) ("Article III demands that an actual controversy persist throughout all stages of litigation[,] . . . mean[ing] that standing must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.") (internal citations omitted); *Diamond v. Charles*, 476 U.S. 54, 55, 64 (1986); Wright & Miller 7C Fed. Prac. & Proc. § 1908 (3d ed.); *see also Local No. 93, Int'l Ass'n of Firefighters. v. City of Cleveland*, 478 U.S. 501, 528-29 (1986) ("[W]hile an intervenor is entitled to present evidence and have its objections heard at the

hearings on whether to approve a consent decree, it does not have power to block the decree.").[7] Movants offer no argument that they have standing, and given that they have no direct interest in this case, no facts suggest that they could establish standing.

## II.   The Police Unions Are Not Entitled to Permissive Intervention.

Movants also argue that, if they are not entitled to intervene as of right, the Court should grant them permissive intervention.  Intervenors' Mem. of Law at 14-15.  Permissive intervention is appropriate where a movant's motion is timely and the movant proves that it possesses a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1).  Where these requirements are met, permissive intervention is wholly discretionary with the trial court, *Brennan*, 579 F.2d at 191, although the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(2).

Plaintiffs submit that permissive intervention is not warranted.  First, for the reasons set out in Part I.A., Movants' application is untimely.  In this regard, Plaintiffs note that timeliness considerations "apply with even greater force to permissive intervention." Wright & Miller, 7C Fed. Prac. & Proc. § 1916 (3d ed.).  Second, Movants present no claims or defenses that share a common question of law or fact with this action.  At best, they seek to inject unrelated and erroneous arguments about municipal labor law.  Third, intervention would unduly delay the proceedings and cause substantial prejudice to Plaintiffs' rights, and thus should be denied in the

---

[7]      The Sergeants Benevolent Association, which separately seeks to intervene only in *Floyd*, cites *Yniguez v. Arizona* for the proposition that it may intervene for purposes of appeal. *See* SBA Mem. of Law at 19.  That case, however, is also inapposite.  There, the Ninth Circuit explicitly held that, where none of the original parties has chosen to appeal, an intervenor must satisfy Article III standing requirements to pursue the appeal.  939 F.3d 727, 731 (9th Cir. 1991), *rev'd on other grounds sub nom. Arizonans for Official English v. Arizona*, 520 U.S. 43, 44-45 (1997).

Court's equitable discretion.  Finally, Movants have not articulated the presence of any other fact or circumstance that might weigh in favor of permitting intervention.  *Brennan*, 579 F.2d at 191-92.  For these reasons, the Court should deny their application for permissive intervention.

## CONCLUSION

For the foregoing reasons, this Court should deny the Police Unions' motion to intervene.

Respectfully submitted,

  s/  Alexis Karteron
Alexis Karteron
Jordan Wells*
Christopher Dunn
Daniel Mullkoff
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, New York 10004
(212) 607-3300
akarteron@nyclu.org

Mariana Kovel
Scott Levy
The Bronx Defenders
860 Courtlandt Avenue
Bronx, New York 10451

Juan Cartagena
Roberto Concepcion, Jr.
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, New York 10013

J. McGregor Smyth, Jr.
New York Lawyers for the Public Interest
151 West 30th Street, 11th Floor
New York, New York 10001

John A. Nathanson
Jeffrey Resetarits
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

*Not yet admitted to practice

16