UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAENEAN LIGON, *et al.*, individually and on behalf of a
class of all others similarly situated;

Plaintiffs,

- against -

THE CITY OF NEW YORK, *et al.*;

Defendants.

12 Civ. 2274 (AT)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS, APPROVAL AND DISTRIBUTION OF
NOTICE OF SETTLEMENT, AND APPOINTMENT OF PLAINTIFFS' COUNSEL AS
CLASS COUNSEL**

Christopher Dunn
Jordan Wells
Mariana Kovel
NEW YORK CIVIL
  LIBERTIES UNION
  FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
Telephone: (212) 607-3300
Facsimile: (212) 607-3318

Johanna B. Steinberg
THE BRONX DEFENDERS
360 East 161st Street
Bronx, NY 10451
Telephone: (718) 508-3447
Facsimile: (718) 838-7819

Jeffrey J. Resetarits
SHEARMAN & STERLING
  LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-7116
Facsimile: (646) 848-7116

Foster Maer
LATINOJUSTICE/PRLDEF
99 Hudson Street, 14th Floor
New York, NY 10013
Telephone: (212) 219-3360
Facsimile: (212) 431-4276

J. McGregor Smyth, Jr.
NEW YORK LAWYERS FOR
  THE PUBLIC INTEREST
151 West 30th Street, 11th Floor
New York, NY 10001
Telephone: (212) 244-4664
Facsimile: (212) 244-4570

*Counsel for Plaintiffs*

Dated:  February 2, 2017
       New York, NY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF THE CASE....................................................................................1

THE PROPOSED SETTLEMENT ............................................................................5

ARGUMENT ..............................................................................................................9

   I.   THE COURT SHOULD PRELIMINARILY FIND THE
       SETTLEMENT TO BE FAIR. ...................................................................9

      A.  The Proposed Settlement Is Fair ...............................................................10

      B.  The Negotiation Process Was Fair.............................................................12

  II.  THE COURT SHOULD CONDITIONALLY CERTIFY
       THE CLASS ................................................................................................13

      A.  The Proposed Class Satisfies the Requirements of Rule 23(a)..................14

         1.  The Proposed Class is Sufficiently Numerous that
            Joinder is Impracticable...................................................................14

         2.  Questions of Law and Fact Are Common to the Class........................15

         3.  The Class Representatives' Claims are Typical of
            Those of the Class ............................................................................16

         4.  The Class Representatives Will Fairly and Adequately
            Protect the Class ..............................................................................17

      B.  The Proposed Class is Appropriate Under Rule 23(b)(2)...........................18

 III. THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL
       AS CLASS COUNSEL.................................................................................19

  IV. THE COURT SHOULD APPROVE THE NOTICE TO THE CLASS.............................2

CONCLUSION.........................................................................................................21

# TABLE OF AUTHORITIES

STOP-AND-FRISK CASES

*Davis v. City of New York*, 10 Civ. 569 ...................................................................2, 4

*Floyd v. City of New York*, 08 Civ. 1034 ............................................................ passim

     283 F.R.D. 177 (S.D.N.Y. 2012) .................................................................15, 19

     302 F.R.D. 69 (S.D.N.Y. 2014) ..........................................................................4

     770 F.3d 1051 (2d Cir. 2014)..............................................................................4

     959 F. Supp. 2d 668 (S.D.N.Y 2013)..................................................................4

*Ligon v. City of New York*, 12 Civ. 2274 ............................................................ passim

     925 F. Supp. 2d 478 (S.D.N.Y. 2013)................................................................3

     2013 WL 71800 (S.D.N.Y. Jan. 8, 2013) ..........................................................3

     2013 WL 227654 (S.D.N.Y. Jan. 22, 2013) ......................................................3

     288 F.R.D. 72 (S.D.N.Y. 2013).................................................................. passim

     538 F. App'x. 101 (2d Cir. 2013) .......................................................................4

     743 F.3d 362 (2d Cir. 2014)................................................................................4


ADDITIONAL CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000)...........17

*Bravo v. Palm W. Corp.*, No. 14 CIV 9193 SN, 2015 WL 5826715
     (S.D.N.Y. Sept 30, 2015) .................................................................................10

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)..................................................................15

*Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010) ....................16

*City of Detroit v. Grinell Corp.*, 495 F.2d 448 (2d Cir. 1974).......................................10

*Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994)..............................................................18

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........................14

*Cutler v. Perales*, 128 F.R.D. 39 (S.D.N.Y. 1989) ..................................................16, 17

*DeLeon v. Wells Fargo Bank.*, N.A., No. 12 CIV 4494 RA,
     2015 WL 821751 (S.D.N.Y. Jan. 12, 2015) ....................................................14

*Gatto v. Sentry Servs., Inc.*, No. 13 CIV 5721 RMB, 2014 WL 7338721
(S.D.N.Y. Dec. 19, 2014)..................................................................................................10

*In re Am. Int'l Grp., Inc., Sec. Litig.*, 689 F.3d 229 (2d Cir. 2012)...............................................13

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................................10, 11, 12

*In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007)............................................9

*In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ................................9

*In re Traffic Exec. Ass'n*, 627 F.2d 631 (2d Cir. 1980) ................................................................10

*Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12 (2d Cir. 1971)................................19

*Marisol a. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997).............................................................16, 18

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009)...............................................9, 20

*Romano v. SLS Residential Inc.*, 246 F.R.D. 432 (S.D.N.Y. 2007).............................................15

*Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012) .......................................15, 16, 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ..............................9, 10, 12

## STATUTES AND REGULATIONS

Fed. R. Civ. P. 23 ................................................................................................................... passim

## PRELIMINARY STATEMENT

The plaintiffs brought this putative class action in 2012, challenging New York City Police Department stop-and-frisk practices in and around private apartment buildings enrolled in the Trespass Affidavit Program ("TAP"), a program through which building owners authorize NYPD officers to enter their buildings and engage in law-enforcement activity. In 2013 the Court certified a preliminary injunction class, granted the plaintiffs' motion for a preliminary injunction enjoining unlawful NYPD enforcement practices outside TAP buildings in the Bronx, and ordered remedies addressing those unlawful practices. The defendants initially appealed the preliminary injunction ruling but later withdrew their appeal and entered into settlement negotiations with the plaintiffs.

After lengthy negotiations, the parties have agreed upon a complete settlement of this action. If approved, that settlement will require changes to NYPD practices, policies, training, supervision, and discipline to protect the rights of TAP building residents and visitors during encounters with NYPD officers; will provide for monitoring of the implementation of the settlement for several years; will pay damages to the named plaintiffs; and will reimburse plaintiffs' counsel to cover reasonable attorneys' fees and costs. The plaintiffs submit this memorandum in support of the parties' joint motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, respectfully requesting that the Court preliminarily approve the settlement, conditionally certify a citywide class, appoint class counsel, direct notice of the proposed settlement to the class, and schedule a fairness hearing.

## STATEMENT OF THE CASE

On March 28, 2012, named plaintiffs Jaenean Ligon, Jerron Grant, Fawn Bracy, William Bracy, Jacqueline Yates, Fernando Moronta, Abdullah Turner, Kieron Johnson, Jovan Jefferson,

Angel Ortiz, Letitia Ledan, Roshea Johnson, and Charles Bradley filed a class action complaint challenging the NYPD's trespass enforcement practices in and around private residential apartment buildings enrolled in its Operation Clean Halls program, also known as the Trespass Affidavit Program ("TAP").[1] *See* Declaration of Jordan Wells ¶ 2. The plaintiffs, on behalf of themselves and a class of similarly situated individuals, sought declaratory and injunctive relief that would end the NYPD's practices of stopping, arresting, issuing summonses to, and searching people in and around TAP buildings without legal justification. *Id.* The plaintiffs claimed that these practices violated the First, Fourth, and Fourteenth Amendments to the United States Constitution, the Fair Housing Act, and New York law.[2] *Id.*

In April 2012 the plaintiffs informed the Court that they intended to seek preliminary injunctive relief enjoining the NYPD from unlawfully stopping people outside of Bronx TAP buildings on suspicion of trespass. Wells Decl. ¶ 3. Following expedited discovery related to the contemplated motion, the plaintiffs moved for a preliminary injunction on September 24, 2012, and the Court held an evidentiary hearing over seven days in October 2012. *Id.*

On January 8, 2013, the Court issued a 157-page opinion and order granting the plaintiffs' preliminary injunction motion and ordering the NYPD to "immediately cease performing trespass stops outside TAP buildings in the Bronx without reasonable suspicion of

---

[1] The Trespass Affidavit Program is administered by the NYPD in the Bronx, Brooklyn, Queens, and Staten Island. The New York County District Attorney's office operates a similar program in Manhattan. This case challenged the NYPD's enforcement practices in all five boroughs' TAP buildings and the NYPD's administration with respect to such buildings in the Bronx, Brooklyn, Queens, and Staten Island.

[2] This case was deemed related to *Davis v. City of New York*, 10 Civ. 569, which challenged similar practices in New York City Housing Authority buildings. Before the same judge at that time was also *Floyd v. City of New York*, 08 Civ. 1034, which challenged NYPD stop-and-frisk practices separate and apart from trespass enforcement.

trespass." 2013 WL 71800 (S.D.N.Y. Jan. 8, 2013) (ECF 96 at 142).[3] On February 14, 2013, the

Court issued an amended opinion and order that corrected a few errors in the January order but

did not alter the analysis or proposed remedies. *See* 925 F. Supp. 2d 478 (S.D.N.Y. 2013) (ECF

105); *see also* ECF 106, dated Feb. 14, 2013 (describing corrections in amended opinion and

order).

On February 11, 2013, the Court also granted the plaintiffs' motion to certify a

preliminary injunction class to "ensure that any relief ordered in connection with the preliminary

injunction motion w[ould] benefit all persons at risk of being subjected to the challenged

practice." 288 F.R.D. 72, 76 (S.D.N.Y. 2013) (ECF 104 at 4). The Court certified the following

class:

> All individuals who have been or are at risk of being stopped outdoors within the
> vicinity of Bronx apartment buildings enrolled in the NYPD's Trespass Affidavit
> Program (commonly referred to as "Operation Clean Halls") without legal
> justification by NYPD officers on suspicion of trespassing in said buildings.

*Id.* at 83 (ECF 104 at 22-23) (emphasis omitted).

In its February 2013 preliminary injunction decision the Court outlined proposed reforms

to NYPD policies, training, and supervision to effectuate its order and ensure that unjustified

stops would not occur. *See* 925 F. Supp. 2d at 542-44. It ordered the consolidation of the

remedial proceedings in *Ligon* with those in *Floyd v. City of New York*, 08-CV-1034, and

instructed the *Ligon* parties to make additional submissions to the Court regarding the proposed

remedies. *Id.* at 543-44. The *Ligon* parties submitted a series of proposals (ECF 108, 109, 112,

117, 118) and, following the conclusion of the trial in *Floyd*, participated in a hearing on

remedial relief in both the *Floyd* and *Ligon* matters on May 20, 2013. Wells Decl. ¶ 7.

---

[3] On January 22, 2013, the Court stayed the preliminary injunction "pending a final decision
regarding the appropriate scope of preliminary injunctive relief in *Ligon*." 2013 WL 227654, at
*5 (S.D.N.Y. Jan. 22, 2013) (ECF 99 at 18).

On August 12, 2013, the Court ruled in favor of the *Floyd* plaintiffs following their trial and issued a joint remedial order that specified remedies with respect to the preliminary injunction in this case as well as broader remedies with respect to permanent injunctive relief in *Floyd*. *See* 959 F. Supp. 2d 668 (S.D.N.Y. 2013) (ECF 120). With respect to *Ligon*, the Court ordered that the NYPD policy governing enforcement actions in and around TAP buildings be amended to specify that "mere presence near, entry into, or exit out of a building enrolled in [TAP], without more, is not sufficient to establish reasonable suspicion for a stop on suspicion of trespass." *Id.* at 689. The Court further ordered that Peter Zimroth, an independent monitor, oversee the development of the additional reforms identified in the preliminary injunction order. *Id.* at 689-90.

Since the resolution of the appeals in this case and in *Floyd*[4] and the intervening settlement of *Davis*, counsel for the parties in this case have been working with the monitor, who was appointed in all three cases, to implement the preliminary-injunction remedies outlined in the August 2013 joint remedial order. Wells Decl. ¶ 11. The monitor has recommended, and the Court has ordered, several important measures that are specific to the *Ligon* case, including the distribution of an NYPD "FINEST" message concerning TAP, ECF 209, dated Feb. 6, 2015; the adoption of Patrol Guide 212-59, a new NYPD Patrol Guide policy governing patrol of TAP buildings that clarifies the Fourth Amendment and state common law standards governing

---

[4] The City sought a stay of the remedial order, a request that the Court denied on September 17, 2013. 959 F. Supp. 2d 691, 692 (S.D.N.Y. 2013) (ECF 143). On October 31, 2013, the Second Circuit granted the defendants' motion for a stay and ordered that the *Floyd* and *Ligon* cases be reassigned to a different district court judge. 538 F. App'x 101, 103 (2d Cir. 2013). In January 2014, the defendants agreed to resolve both cases. The parties submitted a joint motion to the Second Circuit to remand the cases to the district court for the purpose of reaching a settlement, a request the Court granted on February 21, 2014. 743 F.3d 362, 364 (2d Cir. 2014). On July 30, 2014, this Court denied the intervention motions of several police unions 302 F.R.D. 69 (S.D.N.Y. 2014) (ECF 197), an order the Second Circuit affirmed on October 31, 2014, 770 F.3d 1051 (2d Cir. 2014).

enforcement inside and around these building, ECF 249, dated June 2, 2016; the implementation of a new program to increase supervisory review and auditing of stops conducted on suspicion of trespass in and around TAP buildings in the Bronx, *id.*; and the adoption of a new form to be completed every time an officer makes an arrest for trespass in or around a TAP building, *id.* The plaintiffs' counsel and the defendants currently are working on plans for the NYPD to implement these changes and on revisions to NYPD training materials to reflect these reforms. Wells Decl. ¶ 11.

## THE PROPOSED SETTLEMENT

While developing the preliminary injunction remedies relating to stops outside of TAP buildings in the Bronx, the parties also engaged in extensive arms-length negotiations to settle the other claims in the case, which relate to stops, frisks, summonses, and arrests in and around TAP building in all five boroughs. Wells Decl. ¶ 12. The parties have reached a global settlement that mandates important class-wide injunctive relief, implementation monitoring, damages to the named plaintiffs, and payment of attorneys' fees and costs. *See* Stipulation of Settlement (attached as Exhibit A to Wells Decl.).

Starting with class-wide injunctive relief, the proposed stipulation of settlement ("Stipulation") contains specific reforms that the defendants will make to NYPD enforcement activities in and around TAP buildings and to NYPD practices related to the administration of the TAP program. Most significantly, the Stipulation articulates specific standards for stopping, frisking, searching, arresting, and issuing summonses in and around TAP buildings and requires the NYPD to implement and consistently adhere to those standards. Under the proposed Stipulation, the NYPD will take actions that include the following:

1. Implement policies and procedures, training, supervision, and monitoring programs sufficient to apply federal constitutional and state law standards consistently in conducting enforcement activities in and around TAP Buildings. *See* Stipulation § E. The Stipulation specifies such standards. For example, it specifies that a person's "mere presence in or near, entry into, or exit out of" a TAP building does not provide a basis to approach the person, let alone to conduct a stop of that person. *Id.* § E(1)(a), E(1)(f).

2. Adopt and maintain an extensively negotiated policy (that the Court already ordered in June 2016) instructing officers on the legal standards governing their interactions with persons encountered during patrols of TAP buildings. *Id.* § F and Ex. C.

3. Ensure, through recruit, in-service, and promotional training programs, that every member of the NYPD who engages in enforcement activity in or around TAP buildings is trained in the legal standards identified in the Stipulation. These training programs will be developed through the monitoring process. *Id.* § I.

4. Ensure that NYPD officers complete a "Stop Report" or its electronic equivalent each time they conduct a *Terry* stop in or around a TAP building and indicate on such report that the stop was conducted in connection with suspected activity in or around a TAP building. *Id.* § E(1)(g), Ex. B.[5]

5. Ensure that NYPD officers complete a "Trespass Crimes Fact Sheet" form or its electronic equivalent each time they make an arrest for trespass in or around a TAP building. *Id.* § G, Ex. B.

6. Adopt and maintain an extensively negotiated policy regarding standards and procedures for the administration of the TAP program, including the enrollment of buildings in TAP.

---

[5] In November 2016 the Court approved a recommendation by the Monitor regarding the implementation of an electronic Stop Report. *See* ECF 259, dated Nov. 22, 2016.

*Id.* § H, Ex. D. This document instructs precincts to base enrollment decisions on recent criminal activity and complaints and requires an evaluation of enrolled buildings every six months for potential renewal of their enrollment in the program, so that buildings are enrolled for finite periods of time only as needed.

7.  Maintain all records documenting compliance or non-compliance with the Stipulation and disclose such records as reasonably necessary for the monitor and class counsel to assess compliance. *Id.* § M.

In addition to these specific reforms, the Stipulation provides that further reforms will be developed as part of the remedial process described in the August 2013 joint remedial order in *Ligon* and *Floyd*. *Id.* § J. These further reforms will include changes to the NYPD's supervision, auditing, monitoring, and discipline of officers relating to trespass enforcement in and around TAP buildings. *Id.* Together, these reforms will result in systemic reform of NYPD enforcement practices and ensure that the rights of TAP building residents and their visitors are protected.

The monitor also will monitor compliance with the reforms implemented and developed pursuant to the Stipulation. *Id.* § J(2). The monitor's duties will end "when the Court-Ordered Monitoring ends in the *Floyd* action, assuming substantial compliance in [*Ligon*]," *id.*, at which point class counsel will continue to monitor compliance. *Id.* § J(3).[6] After two further consecutive years of substantial compliance, the plaintiffs agree that they will not oppose a motion by the defendants to terminate court jurisdiction. *Id.* § N(3). At any time prior to the termination of the Court's jurisdiction, the Stipulation provides a process for the parties to resolve any issues relating to noncompliance with the Stipulation, including a conferral process prior to seeking this Court's intervention. *Id.* § O.

---

[6] With regard to compliance with the procedures for TAP Administration, the monitoring will conclude after one year of substantial compliance. *See* Stipulation, § J(1).

In addition to the injunctive relief, the Stipulation provides damages to the named plaintiffs totaling $235,000, in the following amounts:

- o  Jaenean Ligon - $2,500
- o  Jerron Grant – $20,000
- o  Fawn Bracy - $2,500
- o  William Bracy - $10,000
- o  Jacqueline Yates - $2,500
- o  Fernando Moronta - $40,000
- o  Abdullah Turner - $40,000
- o  Kieron Johnson - $35,000
- o  Jovan Jefferson - $10,000
- o  Angel Ortiz - $15,000
- o  Letitia Ledan - $7,500
- o  Roshea Johnson - $12,500
- o  Charles Bradley - $37,500

*Id.* § K; Wells Decl. ¶ 15. The Stipulation also provides for payment by the City in the amounts of $2,585,101 to cover attorneys' fees and $55,432 to cover costs for the plaintiffs' counsel's time and expenses incurred through June 30, 2016. Stipulation § L; Wells Decl. ¶ 16 . The Stipulation further provides that the City will pay reasonable attorneys' fees and costs for time and expenses that the plaintiffs' counsel incurs from July 1, 2016, until court jurisdiction in this matter terminates. *Id.*

**ARGUMENT**

To safeguard the rights of proposed class members in situations where the parties seek class certification in conjunction with approval of a proposed settlement, courts employ a three-step process: preliminary approval of the proposed settlement and conditional certification of a settlement class; dissemination of notice of the settlement to class members; and a hearing during which class members may be heard regarding the settlement and during which arguments concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *See generally* Fed. R. Civ. P. 23(e); *see also, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The plaintiffs request that the Court take the first of these three steps and set the other two in motion by so-ordering the proposed order attached as an exhibit to their motion.

## I.     THE COURT SHOULD PRELIMINARILY FIND THE SETTLEMENT TO BE FAIR.

A court may approve a class action settlement "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). The standards governing district court review of proposed class-action settlements are well-established. As the Second Circuit has explained,

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009) (applying standard articulated in *Wal-Mart* to Rule 23(b)(2) class action settlement).

Preliminary approval of a class action settlement should be granted if there is "'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness." *Bravo v. Palm W. Corp.*, No. 14 CIV. 9193 SN, 2015 WL 5826715, at *1 (S.D.N.Y. Sept. 30, 2015) (quoting *In re Traffic Exec. Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980)). If the proposed settlement "falls within the range of possible approval, the court should order that the class members receive notice [of the] settlement." *Gatto v. Sentry Servs., Inc.*, No. 13 CIV. 5721 RMB, 2014 WL 7338721, at *1 (S.D.N.Y. Dec. 19, 2014) (citation omitted). The plaintiffs respectfully submit that the settlement, which was the product of extended arms-length negotiations, is plainly fair and therefore that the Court should approve it preliminarily.

## A. <u>The Proposed Settlement Is Fair.</u>

The proposed Stipulation, described *supra*, pp. 5-8, requires that the NYPD reform its policies, practices, training, supervision, and disciplinary system related to enforcement activities in and around TAP buildings. It provides for monitoring of compliance with these requirements for at least five years. Its terms are fair to the proposed plaintiff class.

The Second Circuit has identified nine factors to consider in assessing the fairness of a proposed settlement. *See Wal-Mart Stores*, 396 F.3d at 117 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). As this (b)(2) class settlement does not seek damages for the class, the following factors are relevant here: (1) the complexity, expense, and likely duration of the litigation, (2) the stage of the proceedings and the amount of discovery completed, (3) the risks of establishing liability, (4) the risks of maintaining the class action through trial, and (5) the reaction of the class to the settlement. *Cf. In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) ("All nine factors need not be satisfied; the court must look at the totality of these factors in light of the

specific circumstances involved.") (citation omitted). Each of the first four factors supports preliminary approval of the settlement, and the fifth will be evaluated during the fairness hearing.

Complexity, expense, and likely duration of the litigation - This case involves complex, fact-intensive federal and state constitutional, statutory, and common-law claims. Had this case continued on a litigation track, the defendants likely would have vigorously defended against the plaintiffs' claims. The discovery necessary to establish a pattern or practice of unlawful enforcement activity by the NYPD in and around TAP buildings citywide alone would consume a tremendous amount of resources. Furthermore, the inevitable expert costs, motion practice, appeals, and potential trial would consume extensive attorney time and resources. The proposed settlement ensures timely class relief without the expense of lengthy, complex litigation.

Stage of the proceedings and the amount of discovery completed - Filed nearly five years ago, this case easily has progressed to the point where the plaintiffs are able to "intelligently evaluate the merits of [their] claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Hi-Crush Partners*, 2014 WL 7323417, at *3-11 (citation and internal quotations omitted). Before filing this case, the plaintiffs' counsel gathered a substantial amount of information concerning NYPD enforcement policies and practices related to TAP, as reflected in the Complaint. Declaration of Christopher T. Dunn ¶ 9. After filing, they moved for a preliminary injunction and sought expedited discovery related to that motion. Wells Decl. ¶ 3. They retained Dr. Jeffrey Fagan, a criminologist specializing in statistics, who extensively analyzed data produced by the NYPD and prepared an expert report on the frequency of unlawful trespass stops outside TAP buildings in the Bronx. Dunn Decl. ¶ 9. They also received and reviewed thousands of pages of NYPD records related to NYPD enforcement activities in TAP buildings. *Id.* The plaintiffs also deposed

11

numerous individuals in connection with this action, including high-level NYPD officials about those enforcement activities. *Id.* It is with the benefit of having all of this information about TAP that the plaintiffs entered into negotiations that led to the proposed settlement.

Risks of establishing liability - Establishing municipal liability in police pattern-and-practice cases is a legally and factually complicated enterprise, as evidenced by the twists and turns in this case and in *Floyd*. Moreover, there are considerable risks attendant to complex class actions. *See In re Hi-Crush Partners*, 2014 WL 7323417, at *3 ("[C]ourts have long recognized that [complex class action] litigation is notably difficult and notoriously uncertain, and that compromise is particularly appropriate.") (citation and internal quotations omitted). While the plaintiffs are confident they would have prevailed were this case not being settled, cases of this type are by their nature risky and particularly appropriate for settlement.

Risks of maintaining a class through trial - The defendants vigorously, though ultimately unsuccessfully, opposed the plaintiffs' motion for certification of a preliminary injunction class in 2012. Were the parties to litigate this case, the defendants would likely oppose a class certification motion and might later move to decertify the class. Although the plaintiffs believe that they would be able to maintain a class through trial, the proposed settlement eliminates any risk on this front, and all parties avoid spending the substantial amount of resources required to maintain class certification through a trial.

### B.  The Negotiation Process Was Fair.

A settlement is entitled to a presumption of fairness, adequacy, and reasonableness if the settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (citations and internal quotations omitted). The negotiations in this case readily meet this standard.

All parties were represented by counsel with extensive experience litigating police reform cases, with the plaintiffs being represented by the New York Civil Liberties Union, The Bronx Defenders, Latino Justice PRLDEF, New York Lawyers for the Public Interest, and Shearman & Sterling LLP, and the defendants by the New York City Law Department. Dunn Decl. ¶¶ 1-8, 12. For nearly two years, counsel conducted monthly and sometimes weekly negotiations, both in person and by phone, and exchanged numerous drafts of the proposed Stipulation and the various NYPD forms, policies, and procedures, attached as exhibits thereto. Wells Decl. ¶ 12. These negotiations were informed by the preliminary injunction proceedings and the extensive discovery that took place in conjunction with those proceedings, including substantial data and document productions, expert data analyses, depositions of NYPD officials and the parties, and input from class representatives and putative class members. *Id.* The proposed settlement is the product of those lengthy and fully-informed negotiations. *Id.*

## II.     THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS.

Prior to approving a class settlement, a court "must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (citation omitted). The parties' joint motion seeks conditional certification of the following class under Federal Rule of Civil Procedure 23(b)(2) pending notice and a fairness hearing:

> All individuals who have been or are at risk of being stopped, frisked, arrested, searched, or issued a summons inside or outdoors within the vicinity of apartment buildings enrolled in a Trespass Affidavit Program—defined as any program though which NYPD officers gain permission to patrol in and around privately owned residential apartment buildings for the purpose of combating criminal activity—without legal justification by NYPD officers on suspicion of trespassing in said buildings.

*See* Stipulation § C(2). Conditional certification will "avoid[] the costs of litigating class status while facilitating a global settlement, ensur[e] notification of all class members of the terms of the proposed Settlement Agreement, and set[] the date and time of the final approval hearing." *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 CIV. 4494 RA, 2015 WL 821751, at *2 (S.D.N.Y. Jan. 12, 2015) (citations omitted).

### A.   The Proposed Class Satisfies the Requirements of Rule 23(a).

There are four prerequisites to maintaining a class action: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).   The proposed class readily meets these requirements.

### 1.   The Proposed Class is Sufficiently Numerous that Joinder is Impracticable.

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, there is a presumption that the numerosity element is satisfied if there are at least forty class members. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

The proposed class includes many thousands of people. In certifying the preliminary injunction class, which was limited to individuals at risk of being stopped outside of TAP buildings located in only one borough, the Court found that it was clearly established that "the number of class members will run into the hundreds, if not thousands." 288 F.R.D. at 82 (ECF 104 at 20). Here, the proposed class includes residents and visitors of TAP buildings in all five boroughs. Wells Decl. ¶ 18. To take just one of the more than seventy-five NYPD precincts as an example, the 66th precinct in Brooklyn had forty-five buildings enrolled in TAP as of December

2015. *Id.*, Exhibit C. The residents and visitors of the TAP buildings in that precinct alone undoubtedly number at least in the hundreds, if not the thousands. The numerosity requirement is readily satisfied here.

### 2. Questions of Law and Fact Are Common to the Class.

As the Court explained in certifying a preliminary injunction class, commonality requires that "the class members have suffered the same injury . . . [and] that the claims asserted must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 288 F.R.D. at 79 (citation and internal quotations omitted). Where "a plaintiff alleges injury from a common policy, the commonality requirement is met." *Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 444 (S.D.N.Y. 2007).

As the Court previously found, the commonality requirement is readily met here. 288 F.R.D. at 81-82. The proposed class members all are at risk of the same injury of being stopped, questioned, frisked, arrested, searched, or issued a summons by the NYPD without lawful basis in or near TAP buildings. Moreover, that injury is redressable on a class-wide basis through reforms to discrete NYPD policies and practices related to TAP. *See, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 468 (2d Cir. 2010) ("[W]here plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited." (internal quotation marks and citation omitted)); *Floyd v. City of New York*, 283 F.R.D. 153, 172-75 (S.D.N.Y. 2012) (finding commonality given NYPD's single stop-and-frisk program); *Stinson v. City of New York*, 282 F.R.D. 360, 370 (S.D.N.Y. 2012) (finding commonality where challenged summonses allegedly

resulted from single NYPD practice of "issu[ing] summonses without probable cause in order to meet a summons quota"). The requirement of commonality among the class members' claims therefore is readily met here.

### 3. The Class Representatives' Claims are Typical of Those of the Class.

Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks and citation omitted). In the context of a (b)(2) class, "where plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them . . . [there is] no need for *individualized* determinations of the propriety of injunctive relief." *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 232 (S.D.N.Y. 2010) (citation and quotation marks omitted) (alteration and emphasis in original).

As the Court previously found in certifying the preliminary injunction class, 288 F.R.D. at 81-82, the claims of the named plaintiffs are typical of those of all class members. During the preliminary injunction hearing, eight plaintiffs testified about being subjected to unjustified stops and arrests on suspicion of trespassing in TAP buildings. Wells Decl. ¶ 4. The named plaintiffs' claims are typical of the claims of the proposed class because they arise from the "same course of events" as those of the class—the application of generally applicable NYPD policies and practices related to TAP—and rely on "similar legal arguments"—that these policies and practices violate the federal Constitution, the federal Fair Housing Act, and New York law. *See Marisol A.*, 126 F.3d at 376. For these reasons and because "all members of the putative class would benefit by the success of the named plaintiff[s]," typicality is met here. *See Cutler v.*

*Perales*, 128 F.R.D. 39, 45 (S.D.N.Y. 1989) (finding typicality met where success of Medicaid-recipient named plaintiffs' claim would result in systemic changes to defendant-agency practices that would ensure timely distribution of benefits to class of Medicaid recipients).

**4.   The Class Representatives Will Fairly and Adequately Protect the Class.**

Adequacy of representation requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The court examines whether the plaintiffs' interests "are antagonistic to the interest of other members of the class" and whether their attorneys "are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). This "serves to uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), and ensures that the plaintiffs' attorneys are "qualified, experienced and able to conduct the litigation," *Baffa*, 222 F.3d at 60.

In certifying the preliminary injunction class, the Court found that the named plaintiffs satisfied the adequacy requirement because their "claims arise from the same practice and same general set of facts as do the claims of the putative class members." 288 F.R.D. at 83. The named plaintiffs satisfy the adequacy requirement for this reason but also because of their commitment to reforming NYPD policies and practices to protect the rights of TAP building residents and visitors. This is evident from their decision to bring this case, to testify at the preliminary injunction hearing over four years ago, and to remain engaged with their counsel during the ensuing years about the injunctive relief. Wells Decl. ¶¶ 2-4, 13. As individuals who have suffered the consequences of unlawful NYPD policies and practices related to TAP, they are well-positioned to represent the interests of others who are at risk of unlawful enforcement actions by NYPD officers in or near TAP buildings. *See Stinson*, 282 F.R.D. at 371 (finding

17

adequacy requirement met because plaintiffs' interests were "identical to those of the putative class, as all plaintiffs have been allegedly injured by the same unconstitutional actions on the part of Defendants"). The named plaintiffs have protected and will continue to protect the interests of the class.

Further, the plaintiffs' counsel will adequately represent the class. The New York Civil Liberties Union, The Bronx Defenders, LatinoJustice PRLDEF, New York Lawyers for the Public Interest, and Shearman & Sterling LLP, have extensive experience litigating class actions and civil rights cases. *See* Dunn Decl. ¶¶ 1-8. Their able representation of the class is evidenced by their having secured a preliminary injunction and having negotiated the proposed settlement.

## B.   The Proposed Class is Appropriate Under Rule 23(b)(2).

A class action is maintainable pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). These requirements are satisfied if the "plaintiffs seek injunctive relief and they predicate the lawsuit on the defendants' acts and omissions." *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994). The challenged conduct must be premised on a ground that is applicable to the entire class, such that the proposed relief would benefit the entire class. *See Marisol A.*, 126 F.3d at 378 (affirming class certification because alleged harms "stem[med] from central and systemic failures").

The proposed class is precisely the type of class for which certification under Rule 23(b)(2) is appropriate. The generally applicable NYPD policies and practice regarding TAP challenged by the named plaintiffs similarly threaten the entire class. The injunctive remedies outlined in the Stipulation, which are directed at ensuring reform of these NYPD policies and

practices, will protect the rights of both the named plaintiffs and the class as a whole. *See*

*Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 24 (2d Cir. 1971) (reversing denial of

(b)(2) class certification because defendants had "acted or ha[d] failed to act on grounds

generally applicable to the class, making injunctive relief appropriate with respect to the class as

a whole"); *cf. Floyd*, 283 F.R.D. at 177 (observing that "[t]he vast majority of New Yorkers who

are unlawfully stopped will never bring suit to vindicate their rights," and that "[i]t is precisely

for cases such as this that Rule 23(b)(2) was designed").

### III.   THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL.

When deciding whether to appoint proposed class counsel, courts must consider "(i) the

work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in

the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel

will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The plaintiffs request that the

Court appoint the New York Civil Liberties Union (NYCLU), The Bronx Defenders,

LatinoJustice PRLDEF, New York Lawyers for the Public Interest, and Shearman & Sterling

LLP as class counsel.

Collectively, the plaintiffs' counsel have several decades' worth of experience litigating

class actions. Dunn Decl. ¶¶ 3-4. The NYCLU, The Bronx Defenders, LatinoJustice PRLDEF,

and New York Lawyers for the Public Interest have significant experience litigating police

reform cases, and Shearman & Sterling LLP has experience litigating a variety of class action

and *pro bono* cases. *Id.* ¶¶ 2-8. The plaintiffs' counsel have devoted enormous time, effort, and

resources to this litigation, including time spent investigating NYPD practices related to TAP

before filing this class action, analyzing documents and data produced by the defendants, taking

numerous depositions, preparing for and prosecuting the preliminary injunction hearing, defending against the intervention motions of the police unions, and engaging in the court-ordered monitoring process and settlement negotiations to develop the reforms contemplated by the Stipulation. *Id.* ¶¶ 9-11. They stand ready to continue to represent the interests of the class zealously.

### IV.     THE COURT SHOULD APPROVE THE NOTICE TO THE CLASS.

In contrast to the higher standard for (b)(3) classes, for a (b)(2) class Rule 23 provides that "the court may direct appropriate notice." *Compare* Fed. R. Civ. P. 23(c)(2)(A) *with* Fed. R. Civ. P. 23(c)(2)(B) (mandating that, for any (b)(3) class, "the court must direct to class members the best notice that is practicable under the circumstances"); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (observing that, for a (b)(2) class, Rule 23 "does not even oblige the District Court to afford [class members] notice of the action"). Notice of a proposed settlement "must be of such nature as reasonably to convey the required information … and it must afford a reasonable time for those interested to make their appearance." *McReynolds*, 588 F.3d at 804-05 (citation and internal quotations omitted).

The proposed notice, attached as Exhibit A to the Wells Declaration, readily meets these requirements. In plain terms it apprises the class of the key settlement provisions and of the date and location of the fairness hearing. It also instructs class members on how they can review the entire proposed settlement and submit comments to the Court. In order to reach as many class members as practically possible, it will be distributed both through mailings to TAP building landlords and residents and through targeted advertisements. This Court should approve the notice as appropriate for this (b)(2) class.

## CONCLUSION

For all the foregoing reasons, the plaintiffs respectfully request that the Court enter the proposed order and thereby order the following relief:

1. Grant conditional class certification;

2. Preliminarily approve the proposed settlement;

3. Appoint the plaintiffs' counsel as class counsel;

4. Approve the class notice and direct that notice be provided to the class members as specified in the proposed order;

5. Provide the class members with 60 days after the notice is distributed to comment on the proposed settlement as specified in the notice; and

6. Set a date for a fairness hearing for final approval of the settlement.

Respectfully submitted,

_/s/ Christopher Dunn_
Christopher Dunn
Jordan Wells
Mariana Kovel
NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
cdunn@nyclu.org

Johanna B. Steinberg
THE BRONX DEFENDERS
360 East 161st Street
Bronx, NY 10451

Foster Maer
LATINOJUSTICE/PRLDEF
99 Hudson Street, 14th Floor
New York, NY 10013

Jeffrey J. Resetarits
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022

J. McGregor Smyth, Jr.
NEW YORK LAWYERS FOR THE PUBLIC
   INTEREST
151 West 30th Street, 11th Floor
New York, NY 10001

*Counsel for Plaintiffs*

Dated: February 2, 2017
      New York, N.Y.