UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/19/17
```

JAENEAN LIGON, *et al.*, individually and on behalf of a
class of all others similarly situated;

Plaintiffs,

- against -

THE CITY OF NEW YORK, *et al.*;

Defendants.

12 Civ. 2274 (AT)

## STIPULATION OF SETTLEMENT AND ORDER

**WHEREAS**, on March 28, 2012, plaintiffs in the above-captioned action filed a Complaint pursuant to 42 U.S.C. § 1983; the Fourth and Fourteenth Amendments to the United States Constitution; the Constitution and laws of the State of New York; and

**WHEREAS**, beginning on October 15, 2012, the Court held a hearing on plaintiffs' motion for a preliminary injunction; and

**WHEREAS**, in a January 8, 2013 Opinion and Order, subsequently amended on February 14, 2013, the Court granted the plaintiffs' motion for a preliminary injunction, proposed entering several forms of preliminary relief, and postponed ordering that relief until after a consolidated remedies hearing could be held in the instant matter and the related case of *Floyd, et al. v. City of New York*, 08 Civ. 1034 (AT); and

**WHEREAS**, on February 11, 2013, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court certified a preliminary injunction class defined as follows: All individuals who have been or are at risk of being stopped outdoors within the vicinity of Bronx apartment buildings enrolled in the NYPD's Trespass Affidavit Program (also referred to as

1

"Operation Clean Halls") without legal justification by NYPD officers on suspicion of trespassing in said buildings; and

**WHEREAS**, in an August 12, 2013 Opinion and Order in the instant matter and the related case of *Floyd, et al. v. City of New York*, 08 Civ. 1034 (AT), the Court imposed a final order of preliminary injunction and ordered several forms of preliminary relief; and

**WHEREAS**, the terms of this Stipulation of Settlement and Order ("Stipulation") were extensively and vigorously negotiated in good faith over a period of several months; and

**WHEREAS**, the negotiations have resulted in this Stipulation which, subject to the approval of the Court, fully resolves this action in the manner and upon the terms set forth below;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned, as follows:

## A. INTRODUCTION

1.     The Parties enter into this Stipulation after arm's length good faith negotiations for the purpose of avoiding the burdens of further litigation and to mutually support vigorous, lawful, and nondiscriminatory enforcement of the law.  Settlement of this action under the terms stated in this Stipulation is in the public interest as it avoids further diversion of private and City resources to adversarial action by the Parties.

2.     Defendants deny any and all liability and deny that they had or have a policy or engaged in or currently engage in a pattern or practice of conduct that deprived persons of rights, privileges, or immunities secured or protected by the Constitution and laws of the United States.

3.     This Stipulation does not, and shall not be deemed to, constitute an admission by Defendants as to the validity or accuracy of any of the allegations, assertions, or claims made by

2

Plaintiffs.  This Stipulation does not constitute an admission, adjudication, or finding on the merits of the above-captioned action.

4.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

## B. DEFINITIONS

1.      "Stipulation" shall mean this Stipulation of Settlement and Order executed by the Parties in the above-captioned action.

2.      "Parties" shall mean Named Plaintiffs and Defendants.

3.      "Plaintiffs" shall mean the Named Plaintiffs and Settlement Class, defined below.

4.      "Named Plaintiffs" shall mean Plaintiffs Jaenean Ligon, Jerron Grant, Fawn Bracy, William Bracy, Jacqueline Yates, Letitia Ledan, Roshea Johnson, Jovan Jefferson, Kieron Johnson, Angel Ortiz, Fernando Moronta, Abdullah Turner, and Charles Bradley.

5.      "Settlement Class" shall mean the class of plaintiffs agreed upon by the Parties, described in Paragraph C (2), *infra*.

6.      "Class Counsel" shall mean the attorneys of record in the above-captioned action.

7.      "Defendants" shall mean the City of New York, William Bratton, Johnny Blasini, Gregory Lomangino, Joseph Koch, Kieron Ramdeen, Joseph Bermudez, Miguel Santiago, and John Does 1-12.

8.      "City" shall mean the City of New York.

9.      "NYPD" shall mean the New York City Police Department.

10.      "TAP Buildings" shall mean any apartment buildings enrolled in a Trespass Affidavit Program.

3

11.     "Trespass Affidavit Program" or "TAP" shall mean any program through which NYPD officers gain permission to patrol in and around privately-owned residential apartment buildings for the purpose of combating criminal activity.

12.     "PG 212-59" shall mean NYPD Patrol Guide 212-59, which instructs NYPD officers on the proper performance of interior patrols in TAP Buildings, defined in Paragraph B (10), above.

13.     "*Floyd/Ligon* Remedial Order" shall mean the joint Opinion and Order in *Floyd v. City of New York*, No. 08 Civ. 1034 and this case, dated August 12, 2013 (ECF 120), as modified by the Order Modifying Remedial Order, dated July 30, 2014 (ECF 198).

14.     "Court-Ordered Monitoring" shall mean the oversight by a monitor appointed by the Court, of the implementation of the standards and remedies described herein, and of remedies that will be developed by such monitor pursuant to Sections I and J of this Stipulation and/or in the Joint Remedial Process described in the *Floyd/Ligon* Remedial Order.

15.     "Substantial Compliance" shall mean both compliance with all material aspects of the reforms pertaining to the above-captioned action arising from the recommendations of the Court-Ordered Monitoring, which shall be measured using milestones to be set in the Court-Ordered Monitoring, and the reforms required by this Stipulation.  Noncompliance with mere technicalities, or temporary failure to comply during a period of otherwise sustained compliance will not constitute a failure of Substantial Compliance.  However, temporary compliance during a period of otherwise sustained non-compliance shall not constitute Substantial Compliance.

16.     "Preliminary Approval Date" shall mean the date on which the Court endorses this Stipulation.

17. "Dismissal Date" shall mean the date on or shortly after the Final Approval Date, defined below, on which the District Court dismisses the case with prejudice.

18. "Effective Date" shall mean (30) days after the "Dismissal Date," following the "Final Approval Date," defined below, and shall also be the date upon which this Stipulation enters into effect, subject to Paragraph N (5).

19. "Final Approval Date" shall mean the date on which this Court approves this Stipulation and Order, following a fairness hearing.

## C. SETTLEMENT CLASS REGARDING ENFORCEMENT PRACTICES IN AND AROUND TAP BUILDINGS

1. On February 11, 2013, pursuant to Rule 23 (b) (2) of the Federal Rules of Civil Procedure, the Court certified a class defined as follows: All individuals who have been or are at risk of being stopped outdoors within the vicinity of Bronx apartment buildings enrolled in the NYPD's Trespass Affidavit Program (commonly referred to as "Operation Clean Halls") without legal justification by NYPD officers on suspicion of trespassing in said buildings.

2. Plaintiffs and the City hereby agree to certification of a Settlement Class which is defined as follows: All individuals who have been or are at risk of being stopped, frisked, arrested, searched, or issued a summons inside or outdoors within the vicinity of apartment buildings enrolled in a Trespass Affidavit Program—defined as any program through which NYPD officers gain permission to patrol in and around privately-owned residential apartment buildings for the purpose of combating criminal activity—without legal justification by NYPD officers on suspicion of trespassing in said buildings.

3. The Named Plaintiffs and the City agree that the Named Plaintiffs shall serve as class representatives of the Settlement Class. The Plaintiffs and the City further agree that Class Counsel shall serve as counsel to the Settlement Class.

4. To effectuate the agreement of the Named Plaintiffs and the City regarding the certification of the Settlement Class, they agree that the Class Counsel will submit to the Court a motion on consent of the Defendants, seeking certification of the Settlement Class at the time this Stipulation is submitted to the Court for approval.

### D. MUTUAL AGREEMENT OF PRINCIPLES

1. The Parties agree that TAP Building residents and their authorized visitors have the same legal rights as the residents and authorized visitors of any other residential building in New York City, and deserve the utmost courtesy and respect during their interactions with NYPD officers.

2. The Parties agree that the further development of cooperative and trusting relationships between NYPD officers and TAP Building residents facilitates effective policing, and that negative interactions between NYPD officers and TAP Building residents and their authorized visitors can have a long-lasting, harmful impact on those relationships.

3. The Parties agree that the secured access of building entryways and effective policing within the building are necessary to maintain the safety and security of TAP Buildings.

4. The Parties agree that in performing patrols in or around TAP Building residences, the NYPD's primary role is to provide a safe and secure living environment for TAP Building residents and their guests.

5. The Parties agree that the proper enforcement of New York State trespass law is an important component of the maintenance and security of TAP Buildings.

6. The Parties agree that the enforcement of New York State trespass law must, at all times, comply with the U.S. Constitution and all other relevant state and federal laws.

7.      The Parties agree that it is imperative to have policies and procedures to prevent TAP Building residents and their authorized guests from being subjected to requests for information without objective credible reasons, accusatory questions without a founded suspicion that criminal activity is afoot, stops or detentions without reasonable suspicion, or arrests or summonses without probable cause.

8.      The Parties agree that proper and sufficient training, supervision, monitoring, and disciplining of NYPD officers are necessary to prevent unlawful stops, arrests and/or summonses in or around TAP Buildings.

### E.  NYPD ENFORCEMENT ACTIVITIES IN AND AROUND TAP BUILDINGS

1.      The NYPD shall develop, adopt and implement the standards regarding enforcement activities in and around TAP Buildings set out below in Paragraphs E (1)(a-m) and shall implement policies and procedures, training, supervision, and monitoring programs sufficient to consistently follow, apply, and use those standards:

   a.      NYPD officers must have at least an "objective credible reason" to approach a person in or around a TAP Building to initiate a Level 1 encounter, as defined in *People v. DeBour*, 40 N.Y.2d 210 (1976), and its progeny.  A person's mere presence in or near, entry into, or exit out of a TAP Building does not constitute an objective credible reason to approach;

   b.      NYPD officers who request information from any person in or around a TAP Building, during a Level 1 encounter, must not question that person in an accusatory manner, or create a situation (either by words or actions) that would cause a reasonable person to believe that s/he cannot terminate the encounter and walk away;

c.   NYPD officers must have a "founded suspicion" to approach a person in or around a TAP Building to engage in a Level 2 encounter, as defined in *People v. DeBour*, 40 N.Y.2d 210 (1976), and its progeny.  A person's mere presence in or near, entry into, or exit out of a TAP Building does not constitute founded suspicion of criminality;

d.   NYPD officers engaged in a Level 2 encounter may ask a person in or around a TAP Building pointed or accusatory questions, but officers may not detain a person or otherwise create a situation (by words or actions) where a reasonable person would believe that s/he cannot terminate the encounter and walk away ;

e.   NYPD officers must have "reasonable suspicion" of a felony or Penal Law misdemeanor to conduct a Level 3 stop within the meaning of *People v. DeBour*, 40 N.Y.2d 210 (1976), and its progeny, or a stop within the meaning of *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, in or around a TAP Building;

f.   The following circumstances, or any combinations thereof, are insufficient to constitute "reasonable suspicion:"

   i.   a person's mere presence in or near, entry into, or exit out of a TAP Building;

   ii.   a person's silence or refusal to provide information or identification when questioned by the police; or

   iii.   a person's passing through a door of a TAP Building that has a broken lock or that has been propped open;

g.   NYPD officers must complete a standardized form to document every Level 3 stop conducted in or around a TAP Building.  For as long as the NYPD requires

officers to complete the Stop Report, PD 383-151 (03-16), under Docket Entry No. 247, attached as Exhibit A, or its electronic equivalent, to document the circumstances of stops, NYPD officers must complete that form for every Level 3 stop conducted in or around a TAP Building;

h.  If the NYPD adopts a different written report documenting the circumstances of stops, NYPD officers must complete a report for every Level 3 stop conducted in or around a TAP building, or its electronic equivalent, that records basic information, including the following: whether the stop occurred inside or outside the TAP building; the crime suspected by the officer when the stop was initiated; the stop location; the time and duration of the stop; the length of any prior observation of the stopped individual, if any; the factors that contributed to suspicion of the stopped person; actions taken to stop and/or detain the person prior to arrest; whether the stopped individual was ultimately frisked, searched, summonsed or arrested; whether other individuals were stopped during the same investigative encounter; whether the reason for the stop was explained to the stopped individual; demographic information about the individual stopped, including race, sex, and age; the identification produced by the stopped individual, if any was provided; information about any contraband or weapons recovered during the stop; and identifying information regarding the officer who conducted the stop.  This report must also include a narrative section where the officer must record, in sum and substance, in his/her own words, the basis for the stop, and separately explain in sum and substance, why a pat down, frisk or search

was performed, if those actions occurred, and the basis for believing the person was armed and dangerous.

i.    NYPD officers must have "probable cause" of criminal activity in order to make an arrest of any person in or around a TAP Building and NYPD officers must have "probable cause" of non-criminal violations committed in their presence or of criminal activity in order to issue a summons to any person in or around a TAP Building;

j.    NYPD officers must complete a Trespass Crimes Fact Sheet (PD 351-144), under Docket Entry No. 249, attached as Exhibit B, or its electronic equivalent, for every trespass arrest made in or around a TAP Building prior to the arraignment of the defendant in the criminal case in order to document the circumstances leading to the officer's encounter with the defendant, the officer's investigation into the defendant's authority to be present in the building, any statements made by the defendant, the basis of the officer's belief that the defendant did not have authority to be present in the building, and any arrest evidence or contraband recovered by the officer;

k.    With the exception of consent frisks, no NYPD officer shall conduct a frisk of a person encountered in or around a TAP Building, unless the officer reasonably suspects that the person encountered is armed and dangerous, and such frisk extends no further than is necessary for the discovery of suspected weapons;

l.    With the exception of consent searches, no NYPD officer shall conduct a search extending beyond a frisk of a person, encountered in or around a TAP Building, unless the officer is conducting a search incident to arrest, or a search of an area

that was frisked by an officer, and that frisk revealed an object that the officer reasonably believed to be a weapon;

m.     If NYPD officers establish posts inside or near the entrances of TAP buildings, they may conduct investigative encounters of the vast majority of the persons who enter or exit such buildings, only if the officers have an objective credible reason for each person the officer engages in a Level 1 encounter, or founded suspicion for each person the officer engages in a Level 2 encounter, or reasonable suspicion for each person the officer engages in a Level 3 encounter.

### F. REVISIONS TO NYPD PATROL GUIDE

1.     Plaintiffs and the City have extensively negotiated the terms of Section 212-59 of the NYPD's Patrol Guide and have agreed to revisions that will promote constitutional interactions between NYPD officers and persons encountered during interior patrols in TAP Buildings.  The revised provisions are as specified in the 5-20-16 PG 212-59 AND PG 208-03 Draft Interim Order approved by the Court, under Docket Entry No. 249, and attached as Exhibit C to this Stipulation.

2.     If it has not already done so, the NYPD shall promulgate the revised version of PG 212-59 within 30 days of the Final Approval Date.  The revised version of PG 212-59 shall take effect upon promulgation.

3.     With the exception of formatting changes that are non-substantive, if the NYPD wishes to amend PG 212-59 or to replace it entirely with a different written policy during the Court-Ordered Monitoring period, it shall first submit any such revision or alternative policy to Class Counsel and the Monitor, and provide them 14 days to comment.  After the Court-Ordered Monitoring period concludes, but before this Court's jurisdiction in this matter terminates, with

the exception of formatting changes that are non-substantive, if the NYPD wishes to amend PG 212-59 or to replace it entirely with a different written policy, it shall first submit any such revision or alternative policy to Class Counsel and provide them 14 days to comment.  If the NYPD makes formatting changes that are non-substantive to PG 212-59, it must provide a copy of the revised version of PG 212-59 to Class Counsel within 14 days.  Any amended policy or substitute policy must comply with the principles and standards set forth in Section E of this Stipulation.

### G. FORMS/REVISIONS TO TRESPASS CRIMES FACT SHEET

1.      When NYPD officers effect an arrest for trespass in or around a TAP building, the officers shall complete NYPD's Trespass Crimes Fact Sheet, or its electronic equivalent, prior to the arraignment of the defendant in the criminal case.

2.      The revised version of the Trespass Crimes Fact Sheet, to which both Plaintiffs and the City agree, is attached to this Stipulation as Exhibit B.

3.      If it has not already done so, the NYPD shall promulgate and begin using the Trespass Crimes Fact Sheet within 30 days of the Final Approval Date.

4.      With the exception of formatting changes that are non-substantive, if the NYPD wishes to amend the Trespass Crimes Fact Sheet or to replace it entirely with a different form during the Court-Ordered Monitoring period, it shall first submit any such revisions or alternative form to Class Counsel and the Monitor and provide them 14 days to comment.  After the Court-Ordered Monitoring period concludes, but before this Court's jurisdiction in this matter terminates, with the exception of formatting changes that are non-substantive, if the NYPD wishes to amend the Trespass Crimes Fact Sheet or to replace it entirely with a different form, it shall first submit any such revision or alternative form to Class Counsel and provide

them 14 days to comment.  If the NYPD makes formatting changes that are non-substantive to the Trespass Crimes Fact Sheet, it must provide a copy of the revised version of the Trespass Crimes Fact Sheet to Class Counsel within 14 days.  Any amended form must comply with the principles and standards set forth in Paragraph E(1)(j) of this Stipulation.

5.      With the exception of formatting changes that are non-substantive, if the NYPD wishes to amend the Stop, Question and Frisk Worksheet, which may also be referred to as a Stop Report or "UF 250," or replace it entirely with a different form during the Court-Ordered Monitoring period, it shall first submit any such revision or alternative form to the Class Counsel and the Monitor and provide them with 14 days to comment.   After the Court-Ordered Monitoring period concludes, but before this Court's jurisdiction in this matter terminates, with the exception of formatting changes that are non-substantive, if the NYPD wishes to amend the report used to document stops in or around TAP Buildings with a different form, it shall first submit any such revision or alternative form to Class Counsel and provide them with 14 days to comment.  If the NYPD makes formatting changes that are non-substantive to the report used to document stops, it must provide a copy of the revised version of such report to Class Counsel within 14 days.  Any amended or substitute form must satisfy the requirements of Paragraph E (1)(g).

## H.  REVISIONS TO NYPD ADMINISTRATIVE GUIDE PROCEDURE 303-27, "TRESPASS AFFIDAVIT PROGRAM"

1.      Plaintiffs and the City have extensively negotiated the terms of the NYPD Administrative Guide Procedure 303-27, entitled "Trespass Affidavit Program" and have agreed to revisions to ensure proper administration of TAP.  The revised version of the NYPD Administrative Guide Procedure 303-27 entitled "Trespass Affidavit Program", to which both

Plaintiffs and the City agree, is as specified in the 8-4-16 Draft Interim Order attached as Exhibit D to this Stipulation.

2.      Pursuant to the revisions to the NYPD Administrative Guide procedure 303-27 entitled "Trespass Affidavit Program," the NYPD agrees to consistently follow, apply, and use the following standards:

a.      The NYPD shall not initially enroll a building in TAP, unless there have been recent incidents, including but not limited to, criminal activity and/or complaints at or near a residential multiple dwelling building in the preceding 12 months, and the building's owner or owner's authorized agent indicates in substance, the following: that he or she will conspicuously post signs indicating that trespassing is prohibited and that only residents and invited guests are authorized to be inside the building, and that the building's owner or owner's authorized agent will communicate to all tenants and management personnel that police officers will be periodically entering and patrolling the building;

b.      Before the expiration of a building's first six months in TAP, the precinct Crime Prevention Officer, or another Member of Service designated by the Commanding Officer, will evaluate whether to renew a building's participation in the program for another six months, based on recent incidents, including but not limited to criminal activity and complaints in the preceding six months;

c.      Before the expiration of a building's second consecutive six months in TAP, the precinct Commanding Officer will determine whether to renew a building's participation in the program for another six months, based on recent incidents,

including but not limited to criminal activity and complaints in the preceding six months.

d.   The Office of the Borough Commander must be notified when it has been determined that there is a need for a building to remain in TAP beyond one year. If the Borough Commander determines that a building should remain in TAP beyond one year, the Borough Commander shall make a recommendation to the Office of the Chief of Patrol, which will issue final approval for the renewal.

3.   The NYPD shall promulgate the revised version of the NYPD Administrative Guide Procedure 303-27 entitled "Trespass Affidavit Program" within 30 days of the Final Approval Date.

4.   With the exception of formatting changes that are non-substantive, if the NYPD wishes to amend NYPD Administrative Guide Procedure 303-27 or the TAP Owner's Affidavit Form 651-51 or to replace either document entirely with a different written policy or form, during the Court-Ordered Monitoring period, it shall first submit any such revision or alternative policy to Class Counsel and the Monitor and provide them with 14 days to comment. After the Court-Ordered Monitoring period concludes, but before this Court's jurisdiction in this matter terminates, with the exception of formatting changes that are non-substantive, if the NYPD wishes to amend NYPD Administrative Guide Procedure 303-27 or the TAP Owner's Affidavit, or replace either document entirely, it shall first submit any such revision or alternative policy or form to Class Counsel and provide them 14 days to comment. If the NYPD makes formatting changes that are non-substantive to NYPD Administrative Guide Procedure 303-27 or the TAP Owner's Affidavit Form 651-51, it must provide a copy of the revised version of the document to

Class Counsel within 14 days. Any amended policy, substitute policy, or form must comply with the standards identified in Paragraphs 2(a) – (d) of this section.

## I. TRAINING

1.       The NYPD will ensure that every member of the NYPD who engages in enforcement activity in or around TAP Buildings receives training in the standards identified in Section E of this Stipulation.   This training and a timeline for its implementation will be developed through the Court-Ordered Monitoring process and will incorporate various forms of training content into the NYPD's recruit, in-service, and promotional training programs.   Such training may include written material, role play scenarios, video programs, and other appropriate methods that reflect the standards identified in Section E of this Stipulation.

2.       The NYPD will ensure that every member of the NYPD who is involved in the administration of TAP is trained on the standards identified in Section H of this Stipulation.   This training, and a timeline for its implementation, will be developed through the Court-Ordered Monitoring process.

3.       Following promulgation of the revised training materials discussed in Paragraphs I(1) and (2), if the NYPD wishes to amend the training or to replace it entirely during the Court-Ordered Monitoring period, it shall first submit any such revisions or alternative materials to Class Counsel and the Monitor, and provide them 14 days to comment.   After the Court-Ordered Monitoring period concludes, but before this Court's jurisdiction in this matter terminates, if the NYPD wishes to amend or to replace entirely, any of the revised training materials discussed in Paragraphs I(1) and (2), it shall first submit any such revision or alternative materials to Class Counsel and provide them 14 days to comment.   Any such revised training materials must reflect the standards identified in Section E of this Stipulation.

## J.  ADDITIONAL REFORMS AND COURT-ORDERED MONITORING

1.      Plaintiffs and the City stipulate that changes to the NYPD's training, supervision, auditing, monitoring, and discipline of officers, regarding stops and arrests made on suspicion of trespassing in TAP Buildings, summonses issued on suspicion of trespassing in TAP Buildings, and compliance with procedures for TAP Administration, identified in Section H, will be addressed as part of the Court-Ordered Monitoring ordered by the Court in the Floyd/Ligon Remedial Order, through the development of reforms, in addition to those specified in this Stipulation.  However, the parties agree that with regard to compliance with the procedures for TAP Administration, the duration of the monitoring will conclude 1 year after the Effective Date provided the NYPD is in substantial compliance.  The Monitor shall not have the authority to recommend changes to Exhibits C and D, which will be promulgated by the NYPD pursuant to Sections F and H above, unless those changes concern training, supervision, monitoring, and discipline of officers.

2.      The terms and provisions of the Floyd/Ligon Remedial Order, including but not limited to, the provisions specifying the Monitor's role and functions and the duration of the Court-Ordered Monitoring, are incorporated in full into the above-captioned case for the purpose of enforcing this Stipulation as it pertains to reforms to the NYPD's policies and practices regarding trespass enforcement in or around TAP Buildings, including training, supervision, auditing, monitoring, and discipline of officers. The Parties stipulate that, for the purposes of resolving Plaintiffs' claims in the above-captioned action, the Court-Ordered Monitoring in this action shall end when the Court-Ordered Monitoring ends in the *Floyd* action, assuming substantial compliance in this action as defined in section B (15) of this Stipulation.

3.      After the termination of Court-Ordered Monitoring, a second remedial phase of this action shall commence. During the second remedial phase of this action, Class Counsel shall review compliance with this Stipulation. During the second remedial phase of this action, the City shall provide to Class Counsel, the NYPD documents, data, and records described in section M(1) of this Stipulation. Any information, documents, data and records provided pursuant to this agreement, not otherwise publically available, shall not be used by Class Counsel to aid or commence the prosecution of any other litigation and shall not otherwise be publicly disclosed except in court filings in this action. The Defendants do not waive or limit in any manner, any rights, privileges or defenses relating to their production of documents, data, and information. The second remedial phase of this action shall continue until the Court's jurisdiction terminates, for the purposes of reviewing, enforcing and ensuring compliance with this Stipulation, with the understanding that any pending fee motion or any other ancillary matter pending before the Court shall not be deemed to extend the City's obligation to produce information, documents, data, or records under this section. Any dispute regarding document production under this section shall be resolved by the Court.

4.      All orders issued by the Court in connection with the Floyd/Ligon Remedial Order related to trespass enforcement, have full force and effect in the above-captioned action. The orders of the Court concerning the process by which the Court addresses the Monitor's final recommendations, including the orders dated February 3, 2015 (ECF 206) and April 27, 2015 (ECF 231), also have full force and effect in the above-captioned action.

## K.      INDIVIDUAL DAMAGES

1.      The City has agreed to pay damages to the Named Plaintiffs totaling two-hundred thirty-five thousand dollars ($235,000), to settle their individual claims.

2.      The Plaintiffs and City agree that each Named Plaintiff will sign and execute a Release and an Affidavit Regarding Status of Liens.  The failure of an individual plaintiff to execute any of the aforementioned documents will result in non-payment of damages to that Named Plaintiff, but will not otherwise affect the operation of this Stipulation or the rights of any other Named Plaintiff or member of the Settlement Class.

## L.  ATTORNEYS' FEES AND COSTS

1.      The City has agreed to pay attorneys' fees totaling two-million, five-hundred eighty-five thousand, one-hundred and one dollars ($2,585,101) and costs and expenses totaling fifty-five thousand, four-hundred thirty-two dollars ($55,432) for attorney time and expenses incurred through June 30, 2016. Class Counsel represents that they are authorized to receive payment on behalf of the Plaintiffs in full satisfaction of all claims for attorney's fees, costs and expenses, in, arising from, or in connection with this action, from the beginning of time through and until June 30, 2016.  Class Counsel agree that payment shall be made by a single check made to New York Civil Liberties Union Foundation.

2.      The City shall also pay reasonable attorneys' fees and costs to Class Counsel for time and expenses incurred in this matter, from July 1, 2016, until Court jurisdiction in this matter terminates. During this period, Class Counsel agrees to submit to the City for reimbursement a single joint application for all fees, costs, and expenses for all attorneys and paralegals incurred between January 1 and June 30 and between July 1 and December 30, with the submissions being made by July 15 for the first half of the year and by February 15 for the second half. Class Counsel agrees to engage in good-faith discussions and negotiations, if applicable, concerning the associated fees and costs, and further agrees to provide the City with additional information and/or documentation upon request, concerning the associated fees and

expenses that would reasonably assist the City in its review process. After the City has received the requisite documents and information, has had sixty (60) days to review and engage in any necessary good-faith negotiations, the Class Counsel may then submit the associated fee demand to the Court if a dispute remains between the parties. Any dispute over fees and costs shall be adjudicated by the Court. The City reserves its right to object to any application for such fees and costs. Alternatively, if the parties are able to resolve a request for fees and costs by Class Counsel, the parties shall submit a stipulation regarding the request to the Court for approval.

## M.  NYPD DOCUMENT MAINTENANCE AND DISCLOSURE

1.      During the duration of this Stipulation, including both the Court-Ordered Monitoring phase and the second remedial phase of review (as described in Section J(3) of this Stipulation), the NYPD shall maintain all records, including but not limited to documents and data, that document its compliance or non-compliance with all remedies specified directly by or incorporated into this Stipulation.  In addition, for the duration of this Stipulation, the NYPD shall maintain all records regarding any investigation of misconduct relating to any complaint pertaining to a stop, summons, and/or arrest for suspicion of trespass on TAP Buildings, as well as disciplinary files maintained in conjunction therewith.

2.      The City shall disclose to Class Counsel and the Monitor during the Court-Ordered Monitoring any information related to the Court-Ordered Monitoring that the Monitor determines should be disclosed to Class Counsel, and such information shall be disclosed at intervals determined by the Monitor.

## N. PRELIMINARY APPROVAL ORDER, CLASS NOTICE,
## COURT JURISDICTION, AND TERMINATION OF THIS STIPULATION

1.      As soon as practicable after execution of the Stipulation, Class Counsel shall submit to the Court the Stipulation and a motion seeking entry of a preliminary approval order that requests, among other things, the preliminary approval of the settlement set forth in this Stipulation, the approval of the publication of a class notice, and the setting of a date for the fairness hearing.  Reasonable costs of publication of class notice shall be borne by the City.

2.      On or after the Final Approval Date, the Parties will jointly request that the District Court enter this Stipulation as an order and dismiss the above-captioned action with prejudice, while retaining jurisdiction for purposes of review, enforcement, and ensuring compliance with this Stipulation.  The District Court shall also retain jurisdiction over this action for the purpose of adopting any orders resulting from the Court-Ordered Monitoring and enforcing compliance with any other terms and provisions of this Stipulation.

3.      The Parties stipulate that, for the purposes of resolving Plaintiffs' claims in the above-captioned action, the duration of the second remedial phase in this action shall end when the Court's jurisdiction ends in the *Floyd* action, assuming substantial compliance in this action as defined in Section B(15) of this Stipulation.   The Parties also stipulate that if the City continues to establish Substantial Compliance for two consecutive years after Court-Ordered Monitoring ends, the Plaintiffs will not oppose a motion by the City to terminate the Court's jurisdiction.

4.      The dismissal of the above-captioned action shall be with prejudice and without costs, expenses, or fees in excess of the amount authorized by the Court or agreed upon by the Parties in accordance with Section L herein.

5.      The terms of this Stipulation shall be a full, final, and complete resolution of this action.  Notwithstanding the foregoing, in the event that any appeals or petitions are taken or filed regarding the Court's approval of the settlement or entry of a final judgment in this action, any and all obligations required to be undertaken pursuant to this Stipulation by Defendants are stayed pending final determination of any such appeals or petitions.  The Stipulation shall not become effective nor shall the Defendants be required to undertake any obligations in the event that the final determination of any such appeals or petitions results in a rejection of the settlement as set forth in this Stipulation or a reversal of the order dismissing the action.

## O.  ENFORCEMENT AND DISPUTE RESOLUTION

1.      At any time prior to the expiration of this Stipulation, should the Plaintiffs determine that the City has failed to comply with any term(s) of this Stipulation the Plaintiffs agree that the Class Counsel shall promptly provide written notifications of such non-compliance to the Deputy Commissioner of Legal Matters of the NYPD and to the Office of the Corporation Counsel.  During the period of Court-Ordered Monitoring, Class Counsel shall also provide written notice to the Monitor.  All notices submitted pursuant to this section shall contain the phrase "NOTICE OF NON-COMPLIANCE" conspicuously placed on the top of the first page of the notice and in a subject line of any emailed notification.  If notification of non-compliance is served by mail, Plaintiffs will write: "URGENT—TIME SENSITIVE" on any envelopes mailed to the City containing such notice.  The City shall substantively respond in writing to any such notification within forty-five (45) days. The Parties agree to engage in good-faith discussions and/or negotiations concerning the alleged non-compliance.

2.      Should the City agree that it has not complied with a certain term or terms specified in the notification provided by the Class Counsel, the Parties shall attempt to agree on a

date or dates by which the City shall come into compliance.  If the parties can agree on such date or dates, the City shall come into compliance by that date or dates.

3.      Should the City dispute the determination of non-compliance by the Plaintiffs or if the Parties cannot agree on a date or dates by which the City will come into compliance after good-faith negotiations between the Parties, the Class Counsel may apply to the Court for an order directing specific performance of that term or terms. The Plaintiffs cannot make such an application until at least fourteen (14) days after the City's written response, pursuant to section O(1), to the Plaintiffs' initial notification of non-compliance (subject to the Parties having engaged in good-faith discussions and/or negotiations after the Plaintiffs' notification of non-compliance and during the 14-day period), unless the City's alleged noncompliance presents a substantial risk of significant irreparable harm that cannot be remedied after the 45-day period, in which case the Plaintiffs may seek immediate judicial relief. The Plaintiffs agree not to seek contempt in conjunction with any motion for specific performance made under this paragraph.

4.      If the Court issues an order of specific performance pursuant to Paragraph 3 of this section and the Plaintiffs believe that the City has failed to comply with that order, the Class Counsel may seek immediate relief from the Court, including contempt.

5.      The Parties reserve their right to appellate review of the Court's decisions concerning compliance under the Stipulation, as governed by applicable law.

6.      The provisions of this section O are the exclusive means for enforcing the terms of this Stipulation.

## P.  RELEASE

1.      Except as indicated in Paragraph 3 of this section, the Stipulation, as of the Effective Date, resolves in full any and all claims or rights of action against the Defendant and its

predecessors, successors, or assignees together with past, present and future officials, employees, representatives, and agents of the NYPD, and the City of New York (the "Released Persons"), by any Plaintiffs, including all members of the Settlement Class and all Class Representatives, contained in and/or arising from the Complaint in this action, and any other claims or rights of action that Plaintiffs may have based upon or arising from any alleged policy, pattern or practice of unconstitutionality in the trespass stop, question, frisk, arrest, search, and summons practices of the NYPD, that could have been raised at this time in this action and for which the Named Plaintiffs had standing to raise at the time of the Named Plaintiffs' execution of their release in this action, with the exception of the Named Plaintiffs' individual damages claims for which separate stipulations and releases will be required per Paragraph K(2) herein.

2.      Except as indicated in Paragraph 3 of this section and Section L(2) of this Stipulation, as of the Effective Date, Plaintiffs, including all members of the Settlement Class and Class Representatives, hereby release and waive any and all claims and rights to pursue, initiate, prosecute or commence any and all causes of action, claims, damages, awards, equitable, legal and administrative relief, interest, demands or rights, including claims for attorneys' fees, costs and expenses, before any court, administrative agency or other tribunal, or to file any complaint with regard to acts of commission or omission by the Released Persons related to, connected with, arising out of, or based upon, the allegations contained in, or arising from, the Complaint in this action for which the Named Plaintiffs had standing to raise at the time of the Named Plaintiffs' execution of their release in this action, with the exceptions of the Named Plaintiffs' individual damages claims, for which separate stipulations and releases will be completed per Paragraph K(2) herein.

3.      This Stipulation, with the exception of the Named Plaintiffs, does not affect the rights of other individual members of the Settlement Class to bring individual damages claims against Defendant for what they believe is a violation of their rights, including any claims related to, connected with, arising out of, or based upon the allegations contained in or arising from the Complaint in this action.

4.      This release will be, and may be, raised as a complete defense to and will preclude any action or proceeding encompassed by the release of the Released Persons, subject to Paragraph P(3), above.

## Q. APPLICATION AND PARTIES BOUND

1.      This Stipulation applies to, and is binding upon, the Plaintiffs and/or the members of the Settlement Class, including the Named Plaintiffs, Class Counsel, Defendants, and the City's officers, agents, employees, successors, and assigns. This Stipulation is enforceable only by the Plaintiffs and/or a member of the Settlement Class, including the Named Plaintiffs and Defendants. The undersigned representatives of the Plaintiffs and/or the Settlement Class, including the Named Plaintiffs, certify that they are authorized to enter into and consent to the terms and conditions of the Stipulation and to execute and legally bind the Plaintiffs and/or the members of the Settlement Class, including the Named Plaintiffs, to it. The undersigned representatives of the Defendants certify that they are authorized to enter into and consent to the terms and conditions of the Stipulation and to execute and legally bind the Defendants to it.

## R. MODIFICATION OF THE SETTLEMENT STIPULATION AND ORDER

1.      This Stipulation represents the entire agreement among the Parties, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and

conditions contained herein, or to determine the meaning of any provisions herein. This Stipulation can be modified only on the written consent of the Named Plaintiffs and the City, or upon order of the Court.

### S.  NOTIFICATION OF PARTIES UNDER THE SETTLEMENT STIPULATION AND ORDER

1.      All notices contemplated by this Stipulation, other than notice to the Settlement Class pursuant to Section N, shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand delivery and by email, and shall be addressed as follows:

FOR THE PLAINTIFF CLASS:

Christopher Dunn
Molly Kovel
Jordan Wells
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
Tel. (212) 607-3300
cdunn@nyclu.org
mkovel@nyclu.org
jwells@nyclu.org

Johanna Steinberg
Bronx Defenders
360 East 161st Street
Bronx, NY 10451
johannas@bronxdefenders.org

Jeffrey J. Resetarits
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022
jeffrey.resetarits@shearman.com

FOR DEFENDANTS:

Thomas Giovanni
Amatullah K. Booth
New York City Law Department
Office of the Corporation Counsel

100 Church Street
New York, NY 10007
Tel. (212) 356-3500
Tel. (212) 356-3534
tgiovann@law.nyc.gov
abooth@law.nyc.gov

Deputy Commissioner for Legal Matters
New York City Police Department
1 Police Plaza
New York, NY 10038

2.      In the event that any substitution in counsel designated to receive communications under this Stipulation is made, all counsel shall be promptly informed, and the name and contact information for such substitute counsel shall be promptly provided.

## T.  NULLIFICATION

1.      In the event the Court does not approve this Stipulation, the parties shall meet and confer in good faith to determine whether to agree upon a modified Stipulation.  If they are unable to do so, this Stipulation shall become null and void, and this case shall be restored to the active docket so the plaintiffs can proceed with the litigation.

Christopher Dunn
Mariana Kovel
Jordan Wells
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
Tel. (212)607-3300
cdunn@nyclu.org
mkovel@nyclu.org
jwells@nyclu.org

Zachary W. Carter
Corporation Counsel of the City of New York
Amatullah Booth
NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
Tel. (212) 356-3534
abooth@law.nyc.gov

*Attorney for Defendants*

Johanna B. Steinberg
BRONX DEFENDERS
360 East 161st Street
Bronx, NY 10451
johannas@bronxdefenders.org

Foster Maer
LATINOJUSTICE/PRLDEF
99 Hudson Street, 14th Floor
New York, NY 10013

Jeffrey A. Resetarits
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022

J. McGregor Smyth, Jr.
NEW YORK LAWYERS FOR THE
PUBLIC INTEREST
151 West 30th Street, 11th Floor
New York, NY 10001
Tel. (212) 224-4664

*Attorneys for Plaintiffs*

Dated: New York, New York
       January 18, 2017

SO ORDERED

Dated: New York, New York
      July 19, 2017

**ANALISA TORRES**
**United States District Judge**

# EXHIBIT A

**(COMPLETE ALL CAPTIONS)**

**STOP REPORT**
PD 383-151 (03-16)

| Pct. Serial No. | ICAD No. |
|---|---|
| Date of Occ. | Pct. Of Occ. |

| Time Of Stop | Period Of Observation Prior To Stop | Duration Of Stop |
|---|---|---|

Address/Intersection Or Cross Streets Of Stop

☐ Inside  ☐ Transit  ☐ Housing       Type Of Location (Describe:)
☐ Outside  ☐ Trespass Affidavit Program

Stop Was:  ☐ Self-Initiated  ☐ Based on Radio Run  ☐ Based on C/W on Scene

Officer in Uniform?   If no, how Identified?   ☐ Shield   ☐ I.D. Card
☐ Yes   ☐ No                                  ☐ Verbal

Crime Suspected *(e.g., Robbery, Burglary, Criminal Trespass, etc.)*

**Check All Factors That Led to Stop and Explain in the Narrative Section**

☐ Concealing or Possessing a Weapon     ☐ Casing Victim or Location
☐ Engaging in a Drug Transaction        ☐ Matches a Specific Suspect Description
☐ Acting as a Lookout                   ☐ Proximity to the Scene of a Crime
☐ Identified Crime Pattern *(Pattern No.____)*  ☐ Other *(Describe in "Narrative" Section)*

| Name Of Person Stopped | Nickname/Alias/Preferred Name | Date Of Birth |
|---|---|---|

| Address | | Apt. No. | Tel. No. |
|---|---|---|---|

Identification:  ☐ Verbal   ☐ Photo I.D.   ☐ Refused
☐ Other *(Describe)*

Sex: ☐ Male   Race: ☐ White  ☐ Black  ☐ Hispanic White  ☐ Hispanic Black
☐ Female   ☐ Asian/Pacific Islander  ☐ American Indian/Alaskan Native
☐ Middle Eastern/Southwest Asian

| Age | Height | Weight | Hair | Eyes | Build |
|---|---|---|---|---|---|

Other *(Scars, Tattoos, Outer Garments, Etc.)*

Did Officer Explain Reason For Stop?   Information Card Given to Person Stopped?
☐ Yes   ☐ No                           ☐ Yes   ☐ No
If You Answered No to Either of the Previous Two Questions, Explain the Reasons in the Narrative Section on the Rear Side.

Were Other Persons Stopped? ☐ Yes   Total No. Stopped   Pct. Serial Nos.
Questioned/Frisked?        ☐ No

Did a Body-Worn Camera (BWC) Capture  ☐ Yes   Body-Worn Camera was Worn by:
the Event in Whole or in Part         ☐ No   ☐ Reporting Officer  ☐ Another MOS

Body-Worn Camera Serial Number

Actions Taken to Stop and/or Detain Prior to Arrest  ☐ Verbal Command/Instruction
☐ Impact Weapon   ☐ Drawing/Pointing Firearm   ☐ Physical Force/Restraint
☐ Handcuff Suspect   ☐ O.C. Spray   ☐ CEW   ☐ Other *(Describe)*

Was Suspect Arrested?   Offense                     Arrest No.
☐ Yes   ☐ No

Was Summons Issued?   Offense                       Summons No.
☐ Yes   ☐ No

Demeanor of Person After Being Stopped   Remarks Made by Person Stopped

Narrative *(Describe the Circumstances That Led to the Stop):*

Was Person Frisked? ☐ Yes ☐ No  IF YES, INDICATE BASIS FOR FRISK:
☐ Statement by Suspect  ☐ Suspect Known to Carry Weapons  ☐ Object Observed Suspected of Being a Weapon  ☐ Violent Crime  ☐ Other *(Describe Below)*

Was Person Searched? ☐ Yes ☐ No  IF YES, INDICATE BASIS FOR SEARCH:
☐ Admission Of Weapons Possession  ☐ Outline of Weapon  ☐ Hard Object Resembling Weapon  ☐ Search Incident to an Arrest  ☐ Consent to Search  ☐ Other *(Describe Below)*

Was Weapon Found? ☐ Yes, Specify: ☐ Firearm ☐ Knife/Cutting Instrument ☐ Other *(Describe)*
☐ Yes ☐ No

Was Other Contraband Found? ☐ Yes ☐ No  *(If Yes, Describe Contraband and Location*

Narrative *(Describe the Circumstances That Led to the Frisk and/or Search, If Conducted. Include Area Searched):*

| Reporting MOS *(Rank, Name Printed)* | Signature | Tax No. | Command | Date |
|---|---|---|---|---|

Supervisory Action *(Must Complete):* Supervisor on Scene During Stop? ☐ Yes ☐ No
Encounter Reviewed With Officer? . . . ☐ Yes ☐ No    Sufficient Basis for Stop? ☐ Yes ☐ No ☐ N/A
Report Accurate and Complete? . . . ☐ Yes ☐ No    Sufficient Basis for Frisk? ☐ Yes ☐ No ☐ N/A
Corresponding Activity Log Entry Reviewed? ☐ Yes ☐ No  Sufficient Basis for Search? ☐ Yes ☐ No ☐ N/A

Follow-Up Action *(If Appropriate):*
Report Corrected. . . . ☐    Training. . . . . . . . . ☐
Instruction . . . . . . . . . ☐    Disciplinary Action . . ☐

| Reviewing Supervisor *(Rank, Name Printed)* | | Tax No. | Command |
|---|---|---|---|

| Signature | Pct. Serial No. | Date | Time |
|---|---|---|---|

# EXHIBIT B



**TRESPASS CRIMES – FACT SHEET
AND SUPPORTING DEPOSITION**
PD 351-144 (Rev. 03-16)

**NOTE:** This Form Must be Completed by the Officer Who Made the Observations that Led to the Defendant's Arrest.

Defendant's Name: _____   Arrest No.: _____

I, _____, Shield No. _____, a New York City Police Officer/Detective

assigned to the _____ (*command*), deposes and swears as follows:

On _____(*date*), at _____ (*time*), at _____ (*location*),

while on patrol inside this dwelling, an apartment building where people reside, I observed the defendant inside this

location as described below.

1. At this time, a sign stating in substance:
   - ☐ No trespassing          ☐ Tenants and their guests only
   - ☐ No loitering            ☐ Anyone who remains unlawfully upon these premises will be prosecuted
   - ☐ Other: _____

   was posted at/on (*Indicate location of sign*) _____
   **For NYCHA arrests only:** If the defendant was arrested for presence in a restricted area (e.g. the roof), was there a
   conspicuously posted sign at that location that prohibited entry in that specific restricted area?  ☐ Yes  ☐ No

   IF YES, where was that sign? _____


2. I ☐ DID  ☐ DID NOT  observe the defendant entering the apartment building. IF YOU DID:

   a) How did the defendant gain access to the building? _____

   _____

   b) Did you observe the door to be locked? ☐ Yes  ☐ No

3. How long did you observe the defendant before you approached him or her? _____

4. Where was the defendant when he/she was first approached?
   ☐ Lobby  ☐ Stairwell  ☐ Roof  ☐ Roof Landing  ☐ Basement  ☐ Hallway

   ☐ Outdoors (describe) _____ ☐ Other _____

5. Describe the factors that led you to approach and question the defendant:

   _____

   _____

   _____

   _____

   _____

   _____


6. Was the defendant asked any of the following questions? If yes, please provide the substance of the defendant's
   response(s) below. *
   a) Do you live in the building? ☐ Yes  ☐ No  IF ASKED, response: _____
   b) Do you have identification? ☐ Yes  ☐ No  IF ASKED, response : _____
   c) Are you visiting someone in the building? ☐ Yes  ☐ No  IF ASKED, response: _____
   d) Did the defendant provide a name of the person he or she was visiting? ☐ Yes  ☐ No  IF YES, response:

   _____

   e) Did the defendant provide an apartment number? ☐ Yes  ☐ No  IF YES, Apt No. _____
      IF YES, did you go to the apartment the defendant indicated? ☐ Yes  ☐ No  IF Yes, what happened?

   _____

   _____

   _____

   _____

\* CPL § 710.30 notice is served for defendant's statement(s) which was/were made at or about the time of the above incident

OVER

f) Do you have business in the building? ☐ Yes  ☐ No  IF ASKED, response: _____

_____

g) Did the defendant make any other statements not indicated in No. 6(a) - 6(f) above? ☐ Yes   ☐ No   IF Yes,

the defendant also stated in substance: _____

_____

_____

_____

**NOTE:** If you were unable to verify that the defendant was a tenant or an authorized guest, did you direct the
defendant to leave before the arrest?    ☐ Yes  ☐ No

7.  The statements provided in No. 6 were made at approximately _____ *(time)* at _____

_____ *(location)* on _____ *(date)*.
I was present for the statements provided in No. 6 above. ☐ Yes  ☐ No   *If you were not present, provide the*
*information of at least one officer who was present for such statements:*

Name: _____    Shield No. _____

8.  Were there any other facts beyond the statements listed in No. 6 that caused you to believe that the defendant was
not a tenant, guest or on business in the building prior to arrest?

_____

_____

9.  The defendant did not have permission or authority to be inside the dwelling based on information and belief the
source of which is as follows: *(you must choose one)*
    ☐ I observed the defendant trespass inside a New York City Housing Authority building. I am a member of the
    New York City Police Department and as such I am an agent of this dwelling and defendant did not have
    permission and authority to enter or remain in the area he/she was found.
    ☐ The attached owner's/managing agent's affidavit, which was signed within the last six months, authorizes
    members of the NYPD to act as an agent of the owner/managing agent of said dwelling pursuant to the
    Trespass Affidavit Program (TAP). *(Attach owner/managing agent affidavit.)*

10. Was arrest evidence or contraband recovered from the defendant? ☐ Yes  ☐ No
    a) If YES, describe the evidence and EXACTLY where the evidence was recovered. If it was recovered from the
    defendant's person indicate where on their person:

_____

_____

    b) Did you recover the evidence? ☐ Yes ☐ No. If NO, did you observe the recovery of the evidence? ☐ Yes ☐ No.
    c) Indicate officer who recovered evidence:

Rank/Name _____ Shield No. _____ Tax No. _____
    d) Describe WHEN the evidence was recovered *(e.g. before the arrest, during a frisk, incident to arrest)*:

_____

_____

    e) At what location was the evidence recovered *(e.g. at the scene, in the precinct/command)*

_____

_____

**False statements made herein by Deponent are punishable as a class A misdemeanor pursuant to section**
**210.45 of the Penal Law.**

_____
Deponent/Officer's Signature                                    Date

_____
Print Rank/Full Name                       Tax No.              Command
**Verification by Desk Officer:**

_____
Desk Officer's Signature                                        Date

_____
Print Rank/Full Name                       Tax No.              Command

# EXHIBIT C



## DRAFT INTERIM ORDER

| SUBJECT: | **REVISION TO PATROL GUIDE 212-59, "INTERIOR PATROL" AND PATROL GUIDE 208-03, ARRESTS – "GENERAL PROCESSING"** | |
|---|---|---|
| DATE ISSUED: | REFERENCE: | NUMBER: |
| **05-20-16** | **\*P.G. 212-59 AND P.G. 208-03** | **DRAFT 11** |

1.      In order to enhance the interior patrol of multiple dwelling buildings enrolled in the Trespass Affidavit Program, Patrol Guide 212-59, "Interior Patrol" has been revised.

2.      Therefore, effective immediately, Patrol Guide 212-59, "Interior Patrol" is **SUSPENDED** and the following new procedure entitled, "Interior Patrol of Multiple Dwelling Buildings Enrolled in the Trespass Affidavit Program" will be complied with:

| | |
|---|---|
| **PURPOSE** | To prevent, detect and take necessary enforcement action regarding illegal activity occurring in lobbies, stairwells, interior hallways, rooftops, basements and other common areas of multiple dwelling buildings enrolled in the Trespass Affidavit Program (TAP) that are <u>not</u> owned by the New York City Housing Authority, in a manner that respects the rights of TAP building residents and guests. |
| **SCOPE** | Authorization for interior patrol, the tactically planned patrol of the common areas of multiple dwelling buildings, is obtained through the Trespass Affidavit Program. Members of the service shall conduct all inquiries, interactions, and enforcement activities in Trespass Affidavit Program buildings with the courtesy, professionalism, and respect to which all persons are entitled in their own homes. This procedure must be applied consistent with *Patrol Guide 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops." Patrol Guide 212-11* and the corresponding training materials establish the parameters for all investigative encounters irrespective of location of occurrence. |
| **PROCEDURE** | To conduct interior patrols in residential multiple dwelling buildings enrolled in the Trespass Affidavit Program: |
| **PLATOON COMMANDER/ PATROL SUPERVISOR/ ASSIGNED SUPERVISOR** | 1.   Ensure **TRESPASS CRIMES – OWNER'S AFFIDAVIT(S) (PD651-051)** or New York County District Attorney's Supporting Affidavit(s) for the scheduled locations(s) were signed by the Owner/Managing Agent within the last six months.<br><br>2.   Assign teams of two or more uniformed members of the service to conduct interior patrol at designated times and locations.<br>    a.   Schedule interior patrols based on times when illegal activities are prevalent.<br><br>3.   Consider the appropriate number of teams necessary to perform a particular interior patrol.<br>    a.   The number of uniformed members that are required to conduct a particular interior patrol assignment should be based on the size of the building, the number and location of exits, and the nature of the crimes being addressed. |

| **PLATOON COMMANDER/ PATROL SUPERVISOR/ ASSIGNED SUPERVISOR (continued)** | 4. | Instruct uniformed members performing interior patrol that, absent exigent circumstances, two or more uniformed members must remain together at all times. |
| | 5. | Ensure all interior patrols are conducted in an appropriate manner with special attention to: |

    a.    Proper tactics
    b.    Required equipment (e.g., serviceable flashlight, O.C. spray, etc.)
    c.    Radio transmissions
    d.    Proper documentation (e.g., **ACTIVITY LOG [PD112-145]** entry, **STOP REPORT [PD383-151], WHAT IS A STOP? [PD383-153]** informational card, etc.).

| **UNIFORMED MEMBER OF THE SERVICE** | 6. | Respond to location at designated time and coordinate activities with other assigned uniformed members. |
| | 7. | Notify Communications Section radio dispatcher utilizing radio code 10-75I, and make an **ACTIVITY LOG** entry of the time and street address upon entering the building. |
| | 8. | Inspect front, rear and other exterior doors, and the interior of the lobby. |

    a.    Determine whether doors are secured.

9.    Document in **ACTIVITY LOG** whether signs prohibiting trespassing are legible and prominently displayed in areas where persons entering the building can readily see them.

    a.    If signs are missing, illegible or defaced, notify the crime prevention officer.

10.    Proceed to top floor of building by elevator, if operable, otherwise by using the stairs.

    a.    Patrol the roof, roof landing, elevator rooms, and any other accessible installations.
    b.    Patrol each floor, staircase and hallway within the building from the top floor to the ground floor
    c.    Patrol all accessible basement areas.

11.    Be alert for persons who may be engaged in criminal activity.

    a.    Conduct all investigative encounters in accordance with *P.G. 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops,"* and, if applicable, with the procedures for trespass investigations as set forth in step "12," below.
    b.    If a person is stopped, a **STOP REPORT** shall be prepared pursuant to *P.G. 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops,"* and an **ACTIVITY LOG** entry shall be made to document the encounter.
        (1)    Check the appropriate box indicating the stop is related to a Trespass Affidavit Program building.

**INTERIM ORDER NO.  DRAFT 11**

**UNIFORMED MEMBER OF THE SERVICE (continued)**

    c.    Take police action pursuant to *P.G. 208-01, "Law of Arrest"* or *Patrol Guide Series 209, "Summonses,"* only if there is probable cause to believe that a person has committed a felony or misdemeanor, or the person committed a violation in the officer's presence.

**NOTE**

*Mere presence in or near a building enrolled in the Trespass Affidavit Program does not provide a basis to approach and conduct an investigative encounter, nor does it establish reasonable suspicion for a stop. When approaching a person based only on an objective credible reason (Level 1 Request for Information), members are prohibited from requesting consent to search the person.*

    12.    Trespass Investigation: Be alert for persons who may be engaged in Criminal Trespass.

        a.    Level 1 Request for Information: If there is an objective credible reason to approach such a person based on observed behavior or other credible information, a member of the service may approach and ask in a non – threatening and non – accusatory manner:

            (1)    If he or she lives in the building

            (2)    If he or she is visiting someone in the building

            (3)    If he or she has business in the building.

        b.    Level 2 Common Law Right of Inquiry: If, based on the answers to questions in the initial encounter and/or observed behavior, there is a founded suspicion of Criminal Trespass, take reasonable measures to verify the person's authorization to be in the building.

**NOTE**

*Do not use a tone or take steps that would create a situation where a reasonable person would not feel free to leave when there is less than reasonable suspicion that the person is a trespasser.*

        c.    Level 3 Terry Stop: Stop a person in accordance with *P.G. 212-11, "Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops,"* and take reasonable measures to investigate only if there is reasonable suspicion to believe that the person has committed, is committing, or is about to commit Criminal Trespass. Such measures include, but are not limited to, the following:

            (1)    Temporarily detaining the person while another uniformed member visits the building resident whom the person claims to be visiting; and/or

            (2)    Requiring the person to accompany uniformed member to the apartment of the building resident whom the person claims to be visiting.

**NOTE**

*Merely passing through a door that has a broken lock or that has been propped open does not, alone, constitute reasonable suspicion of criminal activity.*

**INTERIM ORDER NO.  DRAFT 11**

**UNIFORMED**
**MEMBER OF**
**THE SERVICE**
**(continued)**

d.   Take police action pursuant to *P.G. 208-01, "Law of Arrest"* or *Patrol Guide Series 209, "Summonses,"* only if there is probable cause to believe that the person committed Trespass. A reasonable investigation is ordinarily necessary to determine whether probable cause exists.

    (1)   Make **ACTIVITY LOG** entry describing the details of arrest/summons.

    (2)   Document investigative steps taken prior to making the arrest or issuing the summons including the factors used to determine that the person knowingly entered or remained unlawfully particularly if signs are not present or visible.

    (3)   Utilize Department-issued smartphone to photograph sign(s) prohibiting trespassing or document the warning and the location in **ACTIVITY LOG**.

*NOTE*

*Even if there is probable cause to arrest a person for trespassing, officers may exercise their discretion to refrain from arresting that person, and instead instruct that person to leave under appropriate circumstances.*

    e.   In all cases when an arrest is made for Criminal Trespass, the arresting officer must:

        (1)   Prepare a **TRESPASS CRIMES – FACT SHEET (PD351-144)** and submit to the Desk Officer for review

        (2)   Prepare a **STOP REPORT**, if appropriate

        (3)   Submit the **TRESPASS CRIMES – OWNER'S AFFIDAVIT** or New York County District Attorney's Supporting Affidavit, as appropriate, for the building to the desk officer.

13.   Notify Communications Section radio dispatcher upon exiting the building and make an **ACTIVITY LOG** entry indicating the time the interior patrol was completed and any conditions noted.

**DESK OFFICER**   14.   Ensure that the completed **TRESPASS CRIMES – FACT SHEET** and the **TRESPASS CRIMES – OWNER'S AFFIDAVIT** or New York County District Attorney's Supporting Affidavit, as appropriate, are included in the arrest package for all arrests that include a charge of Criminal Trespass.

15.   Review the **TRESPASS CRIMES – FACT SHEET** for accuracy and completeness and endorse in the appropriate space on the form.

    a.   Have **TRESPASS CRIMES – FACT SHEET** photocopied.

    b.   Return original **TRESPASS CRIMES – FACT SHEET** to the arresting officer for inclusion in the arrest package.

16.   Have photocopies of **TRESPASS CRIMES – FACT SHEETS** placed in chronological order in a binder and maintained at the desk.

**INTERIM ORDER NO.   DRAFT 11**

**ADDITIONAL DATA**

*During the course of an interior patrol, members of the service are likely to encounter other persons in the building. While detecting trespassers inside buildings enrolled in the Trespass Affidavit Program is an important public safety function, it is equally critical that members of the service treat residents and their guests with courtesy, professionalism and respect at all times.*

*If a member of the service has reason to seek to determine if a person is authorized to be in the building, the member may ask for the person's voluntary cooperation. When feasible and consistent with safety, advise the person that the purpose of the interior patrol is to keep the building safe and ensure that only tenants and their invited guests are within the building, and advise the person that he or she is free to leave (unless the person is under arrest or detained in a Level 3 stop). A person's refusal or inability to produce identification or provide information does not elevate the level of the encounter. However, if the individual refuses or is unable to explain his or her presence in the building, the member may instruct the person that he or she must leave the building or be subject to arrest for Trespass.*

*The **TRESPASS CRIMES – OWNER'S AFFIDAVIT (PD651-051)** will be utilized for Department Trespass Affidavit Program buildings in the Bronx, Brooklyn, Staten Island and Queens. The New York County District Attorney's Office manages a Trespass Affidavit Program in Manhattan and utilizes its own supporting affidavits.*

*The **TRESPASS CRIMES – FACT SHEET (PD351-144)** will be prepared in every instance, including Manhattan, where a uniformed member of the service effects a Trespass arrest in a building participating in a Trespass Affidavit Program.*

**RELATED PROCEDURES**

*Law of Arrest (P.G. 208-01)*
*Arrests – General Processing (P.G. 208-03)*
*Investigative Encounters: Requests for Information, Common Law Right of Inquiry and Level 3 Stops (P.G. 212-11)*
*Interior Patrol of Housing Authority Buildings (P.G. 212-60)*
*Trespass Affidavit Program (A.G. 303-27)*
*Summonses (P.G. 209 Series)*

**FORMS AND REPORTS**

**ACTIVITY LOG (PD112-145)**
**STOP REPORT (PD383-151)**
**WHAT IS A STOP? (PD383-153)**
**TRESPASS CRIMES – OWNER'S AFFIDAVIT (PD651-051)**
**TRESPASS CRIMES – FACT SHEET (PD351-144)**

3.    Patrol Guide 208-03, "Arrests – General Processing" is amended as follows:

    a.    **ADD** new subdivision "**h.**" following step "**23.**," opposite actor "ARRESTING OFFICER," on page "**6**" to read:

"ARRESTING OFFICER    **h.**    <u>TRESPASS CRIMES – FACT SHEET (PD351-144), if appropriate.</u>
           <u>(1)</u>    <u>Prepare the form if the arrest includes a charge for Trespass or Criminal Trespass.</u>"

INTERIM ORDER NO.  <b>DRAFT 11</b>

    b.    **REVISE** *"FORMS AND REPORTS"* on page "**13**" to read:

| *"FORMS AND REPORTS* | *ACTIVITY LOG (PD112-145)* |
|---|---|
| | *ARREST REPORT - SUPPLEMENT (PD244-157)* |
| | *ARREST DOCUMENTATION CHECKLIST (PD240-010)* |
| | *COMPLAINT REPORT WORKSHEET (PD313-152A)* |
| | *DAT ARREST PACKAGE (PD260-123)* |
| | *DESK APPEARANCE TICKET INVESTIGATION (PD360-081)* |
| | *JUVENILE ARREST INVESTIGATION/PROBATION INTAKE REPORT WORKSHEET (PD277-151A)* |
| | *MEDICAL TREATMENT OF PRISONER (PD244-150)* |
| | *MIRANDA WARNINGS FOR JUVENILE INTERROGATIONS (PD244-1413)* |
| | *MISSING – UNIDENTIFIED PERSON REPORT (PD336-151)* |
| | *ON-LINE BOOKING SYSTEM ARREST WORKSHEET (PD244-159)* |
| | *PRISONER PEDIGREE CARD (PD244-092)* |
| | *PRISONER TRANSPORT DISPATCH (PD171-132)* |
| | *PROPERTY CLERK INVOICE (PD521-141)* |
| | *PROPERTY CLERK INVOICE WORKSHEET (PD521-141A)* |
| | *REQUEST FOR LABORATORY EXAMINATION REPORT (PD521-168)* |
| | *SUPPORTING DEPOSITION (PD244-060)* |
| | *TRESPASS CRIMES – FACT SHEET (PD351-144)* |
| | *UNUSUAL OCCURRENCE REPORT (PD370-152)* |
| | *Omniform Complaint Revision"* |

    4.    **REVISE** references to Patrol Guide 212-59, "Interior Patrol" in Patrol Guide 212-11, 212-60, Administrative Guide 303-27 and wherever else it appears in the Department Manual to read:

> **"Patrol Guide 212-59, 'Interior Patrol of Multiple Dwelling Buildings Enrolled in the Trespass Affidavit Program"**

    5.    Upon publication, this Interim Order has been incorporated into the On-Line Patrol Guide and the On-Line Administrative Guide.

    6.    Any provisions of the Department Manual or other Department directive in conflict with the contents of this Order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All Commands**

INTERIM ORDER NO.  **DRAFT 11**

# EXHIBIT D



## DRAFT INTERIM ORDER

| SUBJECT: | **REVISION TO ADMINISTRATIVE GUIDE 303-27, "TRESPASS AFFIDAVIT PROGRAM" AND PATROL GUIDE 202-26, "CRIME PREVENTION OFFICER"** | |
|---|---|---|
| DATE ISSUED: | REFERENCE: | NUMBER: |
| **08-04-16** | ***A.G. 303-27 AND P.G. 202-26** | **DRAFT 3** |

1.       In order to enhance the effectiveness and documentation of interior patrols conducted in multiple dwelling buildings that participate in the Department's Trespass Affidavit Program (TAP), Administrative Guide 303-27, "Trespass Affidavit Program" has been revised.  In addition, the **TRESPASS CRIMES - FACT SHEET (PD351-144)** has been revised and retitled, "**TRESPASS CRIMES – FACT SHEET AND SUPPORTING DEPOSITION (PD351-144)**" and will be prepared in every instance where a uniformed member of the service effects an arrest for trespass in or around any building participating in the Trespass Affidavit Program.  Uniformed members are reminded that the **TRESPASS CRIMES - OWNER'S AFFIDAVIT (PD651-051)** will continue to be utilized for TAP buildings in the Bronx, Brooklyn, Staten Island and Queens (the New York County District Attorney's Office manages a Trespass Affidavit Program in Manhattan and utilizes its own supporting affidavits). Commands may not alter the content of these forms for any purpose and may not use any form other than **TRESPASS CRIMES - OWNER'S AFFIDAVIT** to enroll a building in the Trespass Affidavit Program.  Any request from a District Attorney's Office to make changes to either of these forms must first be referred to the Legal Bureau.

2.       Therefore, effective immediately, Administrative Guide 303-27, "Trespass Affidavit Program" is **SUSPENDED** and the following procedure will be complied with:

| | |
|---|---|
| **PURPOSE** | To obtain authorization from a multiple dwelling building's owner/authorized agent to conduct interior patrols, in buildings that are not owned by the New York City Housing Authority. |
| **SCOPE** | Authorization for interior patrol, the tactically planned patrol of the interior hallways, stairways and rooftops of multiple dwelling buildings is obtained through the Department's Trespass Affidavit Program. Patrolling multiple dwelling buildings for criminal activity, including trespassing under the Trespass Affidavit Program, is a valuable problem-solving tool, as well as an important component of the Department's crime reduction strategy. |
| **PROCEDURE** | When recent incidents, including but not limited to, criminal activity and/or complaints at or near a residential multiple dwelling building within the last 12 months indicate that the Department's Trespass Affidavit Program would be useful: |

**CRIME PREVENTION OFFICER**

1.       Confer with members of the community and analyze current crime trends to identify multiple dwelling buildings appropriate for the Trespass Affidavit Program.

2.       Confer with the commanding officer to ensure that the buildings enrolled in the Trespass Affidavit Program can be patrolled with sufficient frequency to reduce criminal activity and/or address community complaints at these residential multiple dwelling buildings.

**CRIME**
**PREVENTION**
**OFFICER**
**(continued)**

3.    Obtain authorization, except in Manhattan, from the multiple dwelling building's owner/authorized agent to participate in the Trespass Affidavit Program.

    a.    Have the owner/authorized agent sign a **TRESPASS CRIMES - OWNER'S AFFIDAVIT (PD651-051)** which authorizes the Department to conduct interior patrols for a period of six months.

    b.    Ensure that **TRESPASS CRIMES – OWNER'S AFFIDAVIT(S)** or New York County District Attorney Trespass Affidavits, as appropriate, are properly signed and permit the arrest of persons in the building who are not:

        (1)    Residents; OR

        (2)    Guests; OR

        (3)    Otherwise authorized to be in the building.

    c.    Participating owners/authorized agents must post signs informing all persons entering, in substance, that trespassing is prohibited.

    d.    The signs should be posted in areas where persons entering the building can readily observe them. Suggested locations for these signs include, but are not limited to, the vestibule entrance, vestibule, above the elevator, courtyard, roof, any restricted area and other common areas.

*NOTE*    *The crime prevention officer will notify the building's owner/authorized agent if it is reported that the signs are missing, illegible or defaced.*

    e.    Obtain from the owner/authorized agent the keys to the building.

4.    Prior to the expiration of a building's six-month enrollment in the program, confer with members of the community and analyze current crime trends to determine if the condition has been corrected or if a continuation of interior patrols in the building is warranted.

5.    If additional interior patrols are necessary, recommend to the commanding officer that the building be enrolled for another six-month period.

6.    Evaluate any requests to renew enrollment and determine whether the building would benefit from six more months of interior patrols before the **TRESPASS CRIMES - OWNER'S AFFIDAVIT** or New York County District Attorney Trespass Affidavit, as appropriate, expires.

*NOTE*    *Prior to the expiration of a building's first six months in the program, the command's crime prevention officer or another member of service as designated by the commanding officer, will evaluate whether to renew a building's participation in the program for an additional six months. This determination should be based on recent incidents, including but not limited to, criminal activity and complaints during the preceding six month period.*

**COMMANDING**
**OFFICER**

7.    Prior to the expiration of a building's second consecutive six month enrollment in the Trespass Affidavit Program, determine whether to renew the building's participation in the program for another six months, based on recent incidents, including but not limited to, criminal activity and complaints during the preceding six month period.

**INTERIM ORDER NO.   DRAFT 3**

**COMMANDING OFFICER (continued)**

      a.    Submit a report on **Typed Letterhead** notifying the borough commander whenever a determination is made to continue enrollment beyond one year indicating the basis for the decision.

8.    Direct the crime prevention officer or other designated member of the service to complete the renewal of participation in the Trespass Affidavit Program by fulfilling the requirements of step "3."

9.    Whenever a building is not renewed for participation in the TAP program, have the building owner/authorized agent instructed to notify the residents in writing.

10.    Submit a quarterly report on **Typed Letterhead** to the Chief of Patrol through channels, identifying those buildings that were evaluated and the final determination for each building.

**PATROL BOROUGH COMMANDER**

11.    Review the request to renew enrollment of building in the program beyond one year.

12.    Make a recommendation to the Chief of Patrol.

**CHIEF OF PATROL**

13.    Review requests to renew participation in the Trespass Affidavit Program for any building beyond one year.

**CRIME PREVENTION OFFICER**

14.    Maintain copies of **TRESPASS CRIMES – OWNER'S AFFIDAVIT(S)** or New York Country District Attorney's supporting affidavits, as appropriate.

15.    Maintain a current list of Trespass Affidavit Program buildings containing the following information:

      a.    Address and description of location

      b.    Nature of problem(s) or condition(s)

      c.    Times when illegal activity is prevalent

      d.    The expiration date for the affidavit.

16.    Ensure that the following are accessible to the desk officer at all times:

      a.    **TRESPASS CRIMES – OWNER'S AFFIDAVIT(S)** or New York County District Attorney's supporting affidavits, as appropriate

      b.    **TRESPASS CRIMES - FACT SHEET AND SUPPORTING DEPOSITION(S) (PD351-144)**

      c.    List of current Trespass Affidavit Program buildings.

17.    Contact the Legal Bureau for approval if a District Attorney's Office makes a request to modify either the **TRESPASS CRIMES - OWNER'S AFFIDAVIT** or the **TRESPASS CRIMES - FACT SHEET AND SUPPORTING DEPOSITION**.

***ADDITIONAL DATA***

*Commanding officers may utilize precinct community affairs officers and/or neighborhood coordination officers (NCOs) to assist in identifying buildings that are appropriate for the Trespass Affidavit Program. Special care should be taken to enroll multiple dwelling buildings that have both demonstrated a specific need for interior patrol based on complaints and an owner/authorized agent committed to providing secured access to the building and willing to comply with the requirements of the program.*

**INTERIM ORDER NO.  DRAFT 3**

| | |
|---|---|
| **ADDITIONAL DATA** *(continued)* | *The Community Affairs Bureau, Crime Prevention Division will offer resources (e.g., organize tenant patrol, physical survey of building, etc.) to eradicate existing illegal activity and deterrence from future occurrences.* |
| | *The **TRESPASS CRIMES – OWNER'S AFFIDAVIT (PD651-051)** will be utilized for Department Trespass Affidavit Program buildings in the Bronx, Brooklyn, Staten Island and Queens. The New York County District Attorney's Office manages a Trespass Affidavit Program in Manhattan and utilizes its own supporting affidavits. Therefore, to enroll a multiple dwelling building in Manhattan, members of the service should refer the owner/authorized agent to the New York County District Attorney's Community Affairs Unit.* |
| | *The **TRESPASS CRIMES - FACT SHEET AND SUPPORTING DEPOSITION (PD351-144)** will be prepared in <u>every</u> instance where a uniformed member of the service effects a trespass arrest in or around any building participating in a Trespass Affidavit Program.* |
| | *For Trespass Affidavit Program buildings in New York County, the crime prevention officer will act as liaison to the New York County District Attorney's Community Affairs Unit. All Department and New York County District Attorney Trespass Affidavit Program affidavits expire six months from the date the owner/authorized agent signed affidavit.* |
| **RELATED PROCEDURES** | *Interior Patrol of Multiple Dwelling Buildings Enrolled in the Trespass Affidavit Program (P.G. 212-59)* |
| **FORMS AND REPORTS** | ***TRESPASS CRIMES - OWNER'S AFFIDAVIT (PD651-051)*** <br> ***TRESPASS CRIMES - FACT SHEET AND SUPPORTING DEPOSITION (PD351-144)*** |

3.     Patrol Guide 202-26, Crime Prevention Officer" is amended as follows:

     a.     **ADD** new step "**19**," opposite actor "CRIME PREVENTION OFFICER," on page "**2**" to read:

| | | |
|---|---|---|
| "**CRIME PREVENTION OFFICER** | **19.** | Administer the Trespass Affidavit Program in accordance with Administrative Guide 303-27, 'Trespass Affidavit Program'." |

4.     Commands will requisition the following revised form through the Quartermaster Section using the following information:

| INDEX NUMBER | PD NUMBER | TITLE |
|---|---|---|
| XXXX | PD351-144 [Rev. XX-XX] | TRESPASS CRIMES - FACT SHEET AND SUPPORTING DEPOSITION |

**INTERIM ORDER NO.  DRAFT 3**

5.      Effective immediately, existing copies of the **TRESPASS CRIMES – FACT SHEET (PD351-144)** are OBSOLETE and should be destroyed upon receiving the revised Department form.

6.      Upon publication, this Interim Order has been incorporated into the On-Line Administrative Guide and On-Line Patrol Guide.

7.      Any provisions of the Department Manual or any other Department directive in conflict with the contents of this Order are suspended.

**BY DIRECTION OF THE POLICE COMMISSIONER**

**DISTRIBUTION**
**All Commands**

INTERIM ORDER NO.  **DRAFT 3**