National Office
40 Rector Street, 5th Floor
New York, NY 10006

T 212.965.2200
F 212.226.7592

www.naacpldf.org

LDF
DEFEND EDUCATE EMPOWER

Washington, D.C. Office
700 14th Street N.W., Ste. 600
Washington, D.C. 20005

T 202.682.1300
F 202.682.1312

November 19, 2021

**Via ECF**

Honorable Analisa Torres
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT)
*Floyd, et al. v. City of New York*, 08-CV-1034 (AT)
*Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT)

Dear Judge Torres:

Counsel for plaintiffs in the above-reference matters respectfully submit this letter to raise two issues with the Court.

First, *Floyd*, *Davis*, and *Ligon* plaintiffs write with respect to the anticipated selection of a new Court-Appointed Monitor of the New York City Police Department ("NYPD"). The tragic passing of the long-serving NYPD Monitor, Peter Zimroth—who was at work on the remedial process even in his final days—leaves this monitorship at a critical juncture to ensure the successful continuation of the remedial process. The selection of a new monitor provides an opportunity to reinforce the significance of this process to New Yorkers, address some lingering concerns about community engagement and transparency, and ensure the success of these remedial efforts. Indeed, the United States Department of Justice recently identified "Public Input during Monitor Selection" as the first step to effectuate the core belief that "Monitors must be accountable to the court, the parties, and the public."[1] That is because "monitors hold a position of public trust, not only as agents of the court, but also as drivers of significant change in public institutions that are central to the communities that they serve. Monitorships thus must

---

[1] Associate Attorney General, U.S. Dep't of Justice, Memorandum for the Attorney General, Review of the Use of Monitors in Civil Settlement Agreements and Consent Decrees involving State and Local Governmental Entities (Aug. 13, 2021), at 5, https://www.justice.gov/ag/page/file/1432236/download, *approved by* Attorney General, U.S. Dep't of Justice, Memorandum of Heads of Civil Litigating Components United States Attorneys, Review of the Use of Monitors in Settlement Agreements and Consent Decrees involving State and Local Entities (Sept. 13, 2021), https://www.justice.gov/ag/page/file/1432236/download.

be structured to ensure that monitors are accountable for their work."[2] Accordingly, the Department recommends that the monitor selection process "include[] an opportunity for public input"—"[s]pecifically, they should require that the selection of monitors be informed by a public process, including a publicly-posted request for proposals, public posting of the applicants' proposals, an opportunity for stakeholders to meet and ask questions of the finalists for the monitor position, and a process for the public to provide input to the parties and the court on the selection of the monitor."[3] The Department further states that a "more open and rigorous application and selection process will also ensure a more diverse and representative sample of monitor candidates."[4]

*Floyd*, *Davis*, and *Ligon* plaintiffs likewise maintain that a public and transparent selection process, which follows the spirit of the guidelines set forth by the Department of Justice after a thorough and comprehensive review of monitorships nationwide, is crucial during this critical time of transition. As one of the most high-profile police monitorships in the country, law enforcement agencies across the nation will look to this monitoring process as a possible guide in their own reform and accountability efforts. Most importantly, the work of the NYPD monitorship has a deep and reverberating impact on Black and Latinx communities throughout New York City—communities that have rightly distrusted police and police reform for generations. It is, therefore, imperative that the selection of the next NYPD Monitor be conducted openly and thoughtfully, under the watchful eye of the public, so that the person ultimately selected has legitimacy and community support. Such an open and deliberative selection process would also bolster the Court's own credibility and legitimacy before the public. For these reasons, plaintiffs oppose any selection process that is outside the purview of the public and that does not allow appropriate time for consultation with key community stakeholders. With the understanding that a public, deliberate, and transparent selection process will likely require some time to be conducted correctly, plaintiffs are committed to working collaboratively with the NYPD Deputy Monitor and the monitoring team, the City Law Department, and the NYPD to continue the important work of this monitorship during the interim period.

Second, *Floyd* and *Davis* plaintiffs further write with respect to our Motion to Modify the *Floyd* Remedial Order (*Floyd*, Dkt #840; *Davis*, Dkt #578), which is currently pending before the Court. As detailed in their supporting memoranda of law (*Floyd*, Dkt #841, #864; *Davis*, Dkt #579, #596), *Floyd* and *Davis* plaintiffs urge intervention of this Court to ensure the necessary engagement and involvement of directly impacted community members in the monitoring process. This community engagement and involvement are essential to the success and legitimacy of the monitorship because the Court will otherwise have inaccurate and one-sided information

---

[2] *Id.*
[3] *Id.*
[4] *Id.*



about the NYPD's stop-and-frisk and trespass enforcement activities—which excludes the perspectives, experiences, and expertise of those who have been most harmed by the NYPD's constitutional violations—when assessing substantial compliance. Thus, *Floyd* and *Davis* plaintiffs requested that the Court modify the *Floyd* remedial order to include community surveys, a Community Collaborative Board, and field audits and integrity testing. *Floyd* and *Davis* plaintiffs further requested more proactive community engagement by the monitoring team and regular, public status conferences before the Court to improve public transparency and legitimacy of the monitoring process.

    *Floyd* and *Davis* plaintiffs welcome the opportunity to work collaboratively with the monitoring team and the City to resolve the pending motion, should they choose to do so. However, it is imperative that any resolution include meaningful and concrete involvement of community stakeholders, especially those most directly harmed by the constitutional violations at issue in these cases, in the Monitor's—and ultimately the Court's—assessment of substantial compliance. Without such assurances, *Floyd* and *Davis* plaintiffs maintain the need for modification of the *Floyd* Remedial Order and respectfully request oral argument before the Court's ruling of the pending motion.

Respectfully submitted,

  /s/ Jin Hee Lee
Jin Hee Lee
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street, NW, Suite 600
Washington, DC 20005
(202) 216-5579

Raymond Audain
Kevin Jason
Lauren Johnson
Ashok Chandran
John Cusick
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY  10006
(212) 965-2200



/s/ Corey Stoughton
Corey Stoughton
Steven Wasserman
Molly Griffard
Jennvine Wong
THE LEGAL AID SOCIETY
199 Water Street
New York, NY 10038
(212) 577-3300

*Counsel for* Davis *Plaintiffs*

/s/ Jonathan C. Moore
Jonathan C. Moore
Luna Droubi
Marc Arena
Rebecca Pattiz
Katherine "Q" Adams
BELDOCK, LEVINE &
HOFFMAN, LLP
99 Park Avenue, Penthouse Suite
New York, NY 10016
(212) 490-0400

/s/ Omar Farah
Omar Farah
Samah Sisay
CENTER FOR
CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. (212) 614-6439

*Counsel for* Floyd *Plaintiffs*

/s/ Christopher Dunn
Christopher Dunn
Daniel R. Lambright
Guadalupe V. Aguirre
NEW YORK CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300

/s/ Jenn R. Borchetta
Jenn Rolnick Borchetta
BRONX DEFENDERS
360 E. 161st Street
New York, NY 10451
(718) 838-7878

/s/ Andrew Case
Andrew Case
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 739-7506

*Counsel for* Ligon *Plaintiffs*

cc: All Parties via ECF